# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CITY OF TAYLOR GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 1:19-cv-00024-PLR-CHS |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) | |
| ASTEC INDUSTRIES, INC., BENJAMIN G. BROCK, DAVID C. SILVIOUS, and MALCOLM SWANSON, | ) ) ) ) | Chief Judge Pamela L. Reeves Mag. Judge Christopher H. Steger |
| Defendants. | ) ) | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     BACKGROUND ............................................................................................... 4

        A.      A Company Founded On Innovation. ................................................... 4

        B.      The Wood Pellet Plant Business. ......................................................... 5

        C.      The Company Kept the Market Informed of Material Issues at Both Plants .......... 6

III.    ARGUMENT AND CITATION TO AUTHORITY ......................................... 9

        A.      Heightened Pleading Standards Govern a Motion to Dismiss a Shareholder
                Securities Class Action. ....................................................................... 9

        B.      The AC Should Be Dismissed Because It Fails to Plead an Actionable
                Misstatement. ..................................................................................... 10

                1.      The AC Has Not Properly Specified Any Alleged Misleading
                        Statements or Any Alleged Falsity With the Requisite Detail. ............... 11

                2.      Protected Forward-Looking Statements, Immaterial Puffery, and
                        Opinion Statements Are Not Actionable. ................................... 13

                        a.      Forward-Looking Statements Are Immune From Liability. ......... 13

                        b.      Corporate "Puffery" Is Not Actionable ....................................... 16

                        c.      Opinions Are Non-Actionable. ................................................... 17

                3.      Alleged Corporate Mismanagement Is Not Actionable Under the
                        Federal Securities Laws. ........................................................ 18

        C.      The AC Fails to Plead the Essential Element of Scienter and Should be
                Dismissed. ......................................................................................... 19

                1.      The AC's Allegations Viewed Holistically Fail to Allege a Strong
                        Inference of Scienter. ............................................................. 20

                2.      Consideration of the *Helwig* Factors Negates Scienter. ........................... 24

IV.     CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)........................................................................9

*Beaver Cty. Ret. Bd. v. LCA-Vision Inc.*,
　1:07-CV-750, 2009 U.S. Dist. LEXIS 31375 (S.D. Ohio Mar. 25,
　2009) ......................................................................................21

*Bondali v. Yum! Brands, Inc.*,
　620 F. App'x 483 (6th Cir. 2015) ...............................................3, 19

*City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*,
　806 F. Supp. 2d 1267 (N.D. Ga. 2011)..........................................11

*Conlee v. WMS Indus.*,
　No. 11 C 3503, 2012 U.S. Dist. LEXIS 103402 (N.D. Ill. July 25,
　2012) ......................................................................................11

*Courie v. Alcoa Wheel & Forged Prods.*,
　577 F.3d 625 (6th Cir. 2009) .......................................................9

*Darby v. Century Bus. Servs., Inc.*,
　96 F. App'x 277 (6th Cir. 2004)............................................3, 4, 9, 21

*Doshi v. Gen. Cable Corp.*,
　823 F.3d 1032 (6th Cir. 2016) ..................................................4, 20

*Grillo v. Tempur-Pedic Int'l, Inc.*,
　553 F. Supp. 2d 809 (E.D. Ky. 2008)..............................................25

*Gruhn v. Tween Brands, Inc.*,
　No. 2:07-cv-925, 2009 U.S. Dist. LEXIS 47853 (S.D. Ohio June 2,
　2009) ......................................................................................23

*Havenick v. Network Express*,
　981 F. Supp. 480 (E.D. Mich. 1997) ........................................12, 13

*Helwig v. Vencor, Inc.*,
　251 F.3d 540 (6th Cir. 2001) ..................................................20, 24

*Hess v. Am. Physicians Capital, Inc*.,
No. 5:04-CV-31, 2005 U.S. Dist. LEXIS 1162 (W.D. Mich. Jan. 11, 2005) ....................................................................................17

*IBEW Local 697 Pension Fund v. Ltd. Brands*,
Inc., 788 F. Supp. 2d 609 (S.D. Ohio 2011) .....................................17

*IBEW Local No. 58 Annuity Fund v. EveryWare Glob., Inc*.,
849 F.3d 325 (6th Cir. 2017) ..............................................................16

*In re Autodesk, Inc. Sec. Litig*.,
132 F. Supp. 2d 833 (N.D. Cal. 2000) ................................................11

*In re Comshare Inc. Sec. Litig*.,
183 F.3d 542 (6th Cir. 1999) ...................................................3, 4, 21

*In re Comshare, Inc. Sec. Litig*.,
No. 96-73711-DT, 1997 U.S. Dist. LEXIS 17262 (E.D. Mich. Sept. 18, 1997) ....................................................................................24

*In re EveryWare Global, Inc. Sec. Litig*.,
175 F. Supp. 3d 837 (S.D. Ohio 2016) ..............................................22

*In re Ferro Corp. Sec. Litig*.,
No. 1:04CV1440, 2007 U.S. Dist. LEXIS 42191 (N.D. Ohio June 11, 2007) ....................................................................................12

*In re Ford Motor Co. Sec. Litig*.,
381 F.3d 563 (6th Cir. 2004) ...................................................9, 10, 16

*In re Goodyear Tire & Rubber Co. Secs. Litig*.,
436 F. Supp. 2d 873 (N.D. Ohio 2006) ...............................12, 22, 25

*In re HomeBanc Corp. Sec. Litig*.,
706 F. Supp. 2d 1336 (N.D. Ga. 2010) ..............................................18

*In re Humana, Inc. Sec. Litig*.,
No. 3:08CV-00162-JHM, 2009 U.S. Dist. LEXIS 53535 (W.D. Ky. June 15, 2009) .....................................................................10

*In re Humphrey Hospitality Tr., Inc. Sec. Litig*.,
219 F. Supp. 2d 675 (D. Md. 2002) ...................................................24

*In re John Alden Fin. Corp. Secs. Litig.*,
   249 F. Supp. 2d 1273 (S.D. Fla. 2003) ...............................................................24

*In re Keithley Instruments, Inc. Sec. Litig.*,
   268 F. Supp. 2d 887 (N.D. Ohio 2002) ...............................................................17

*In re Kindred Healthcare, Inc.*,
   299 F. Supp. 2d 724 (W.D. Ky. 2004)...........................................................16, 21

*In re NVE Corp. Sec. Litig.*,
   551 F. Supp. 2d 871 (D. Minn. 2007)..................................................................23

*In re Omnicare, Inc. Sec. Litig.*,
   769 F.3d 455 (6th Cir. 2014) ......................................................................passim

*In re Royal Caribbean Cruises Ltd. Sec. Litig.*,
   No. 1:11-22855-CIV-WILLIAMS, 2013 U.S. Dist. LEXIS 94156
   (S.D. Fla. Apr. 19, 2013) ....................................................................................23

*In re Sofamor Danek Grp.*,
   123 F.3d 394 (6th Cir. 1997) ..............................................................................13

*In re Travel Agent Comm'n Antitrust Litig.*,
   583 F.3d 896 (6th Cir. 2009) .................................................................................9

*In re Vantive Corp. Secs. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ............................................................................23

*Konkol v. Diebold, Inc.*,
   590 F.3d 390 (6th Cir. 2009) .........................................................................21, 22

*Kuyat v. BioMimetic Therapeutics, Inc.*,
   747 F.3d 435 (6th Cir. 2014) ...................................................................3, 20, 25

*La. Sch. Emples. Ret. Sys. v. Ernst & Young, LLP*,
   622 F.3d 471 (6th Cir. 2010) ...................................................................3, 10, 19

*Lauria v. Biosante Pharms., Inc.*,
   968 F. Supp. 2d 951 (N.D. Ill. 2013)...................................................................11

*Ley v. Visteon Corp.*,
   543 F.3d 801 (6th Cir. 2008) .........................................................................19, 22

*Local 295/Local 851 IBT Emp'r. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp*,
    731 F. Supp. 2d 689 (S.D. Ohio 2010) ......................................................passim

*Lubbers v. Flagstar Bancorp. Inc.*,
    162 F. Supp. 3d 571 (E.D. Mich. 2016) ......................................................9, 10

*Marsh v. Armada Corp.*,
    533 F.2d 978 (6th Cir. 1976) ...................................................................18

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)...................................................................................9

*Miller v. Champion Enters. Inc.*,
    346 F.3d 660 (6th Cir. 2003) ...............................................................3, 15, 20

*Mogensen v. Body Cent. Corp.*,
    15 F. Supp. 3d 1191 (M.D. Fla. 2014)..........................................................23

*Nathenson v. Zonagen Inc.*,
    267 F.3d 400 (5th Cir. 2001) .....................................................................24

*Norfolk Cty. Ret. Sys. v. Tempur-Pedic Int'l, Inc.*,
    22 F. Supp. 3d 669 (E.D. Ky. 2014) .........................................................10, 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund ("Omnicare II")*,
    135 S. Ct. 1321 (2015).........................................................................17, 18

*Pension Fund Grp. v. Tempur-Pedic Int'l, Inc.*,
    614 F. App'x 237 (6th Cir. 2015) .............................................................10, 14

*PR Diamonds, Inc. v. Chandler*,
    364 F.3d 671 (6th Cir. 2004) .....................................................................21

*Ricker v. Zoo Entm't, Inc.*,
    534 F. App'x 495 (6th Cir. 2013).............................................................passim

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) .....................................................................23

*Santa Fe Indus. v. Green*,
    430 U.S. 462 (1977).................................................................................18

*Sarafin v. BioMimetic Therapeutics, Inc.*,
No. 3:11-cv-0653, 2013 U.S. Dist. LEXIS 4909 (M.D. Tenn. Jan.
10, 2013) ....................................................................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................2, 19, 20

*Tripp v. Indymac Fin. Inc.*,
No. 07-1635, 2007 U.S. Dist. LEXIS 95445 (C.D. Cal. Nov. 29,
2007) ..........................................................................................................18

*USM Holdings, Inc. v. Simon*,
No. 15-14251, 2017 U.S. Dist. LEXIS 146913 (E.D. Mich. Sept.
12, 2017) ....................................................................................................18

*Wade v. WellPoint, Inc.*,
740 F. Supp. 2d 994 (S.D. Ind. 2010)..............................................15

## RULES

17 C.F.R. § 240.10b-5 ...............................................................................9

Fed. R. Civ. P. 12(b)(6)...........................................................................9

## STATUTES

15 U.S.C. § 78t(a) ......................................................................................4

15 U.S.C. § 78u-4...............................................................................passim

15 U.S.C. § 78u-5..............................................................................14, 15

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 104-369 (1995).....................................................14

S. Rep. No. 104-98 (1995) ........................................................................3

Defendants Astec Industries, Inc. ("Astec" or the "Company"), Benjamin G. Brock, David C. Silvious, and Malcolm Swanson (collectively, the "Individual Defendants" and with Astec, "Defendants") submit this memorandum of law in support of their Motion to Dismiss Lead Plaintiff Lynn Johnson's ("Plaintiff") Amended Complaint (cited herein as "AC").[1]

## I.   INTRODUCTION

This kneejerk unmeritorious shareholder putative class action improperly criticizes a longtime Chattanooga-based company and certain named executives for pursuing growth through strategic innovation and battling unforeseen challenges related to a new line of business while at the same time endeavoring to provide unparalleled customer service.  But the entrepreneurial setbacks Astec faced—even when associated with stock price declines—hardly constitute securities fraud.  The AC purports to assert claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), but falls well short of satisfying the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("Reform Act")[2] and, therefore, fails as a matter of law.

Astec is a leading manufacturer of equipment for asphalt road building; aggregate processing; oil, gas, and water well drilling; and, wood processing.  Its corporate culture is renowned for innovation and customer service.  Indeed, its creative approach to improve existing equipment and manufacturing processes to increase production and, ultimately, profits for its customers, have led to a steady stream of patents since 1972.[3]

---

[1] The case caption for the AC identifies the City of Taylor General Employees Retirement System as the Plaintiff.  However, Mr. Lynn Johnson has been appointed Lead Plaintiff. Doc. 53.

[2] 15 U.S.C. §§ 78u-4, *et seq.*

[3] *See* ASTEC INDUSTRIES, INC. "ABOUT US," *http://www.astecindustries.com/about-us.html* (last visited Oct. 24, 2019), attached as Exhibit ("Ex.") A to the Declaration of John A. Jordak, Jr. ("Decl.") filed concurrently herewith.  On a motion to dismiss, the Court may consider the full text of documents incorporated into the AC by reference and matters of which the Court may take judicial notice, such as

During the relevant time period, Astec was divided into three primary business segments: the Infrastructure Group, the Aggregate and Mining Group, and the Energy Group. AC ¶2. Starting in 2013, in response to increased demand for biomass fuels from the European Union ("EU"), the Infrastructure Group designed and manufactured two commercial plants that produced dried wood pellets from timber. *Id.* ¶¶3, 4. The wood pellet business was countercyclical to the Company's core asphalt equipment business, and Astec had every reason to believe it was an untapped opportunity for growth that could build on its established strengths in design and manufacturing. *Id.* ¶¶36, 37.

The AC focuses entirely on Astec's wood pellet plant business. Viewed through the lens of the Reform Act, the AC fails to plead required elements of a securities fraud claim against Astec or its executives[4] adequately. Most glaringly, the AC lacks *any* factual allegations supporting even a *single* actionable misstatement or omission. Instead, the AC merely cuts and pastes large swaths of Company press releases, earnings call transcripts, and Company Form 10-Q and Form 10-K filings with the Securities and Exchange Commission ("SEC") on the subject of Astec's wood pellet business. In bald summary fashion, without ever pleading with particularity which of the many quoted statements is allegedly false or misleading, the AC then concludes that, because in hindsight the wood pellet business did not yield the anticipated returns, *virtually every* statement about the pellet business during a two-year period was allegedly false when made. This scattershot-style, hindsight pleading is insufficient as a matter of law to maintain a securities claim.

---

public filings and other public statements. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *In re Omnicare, Inc. Sec. Litig.* ("*Omnicare I*"), 769 F.3d 455, 466 (6th Cir. 2014).

[4] During the relevant time period, Individual Defendant Benjamin Brock served as the CEO of the Company, David Silvious served as the CFO of the Company, and Malcom Swanson served as the President of Astec, Inc. *Id.* ¶¶23-25.

The federal securities laws impose a high burden to state a claim. Indeed, the Reform Act that governs this case was designed to reform shareholder filing practices and curtail lawsuits that are frequently "based on nothing more than a company's announcement of bad news, not evidence of fraud."[5] The Reform Act thus requires that complaints alleging claims under Section 10(b) of the Exchange Act "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter," or an intent to defraud.[6] The Sixth Circuit recently characterized the Reform Act pleading requirements as an "elephant-sized boulder blocking [plaintiff's] suit."[7] These exacting pleading standards were designed to "provide a filter at the earliest stage . . . to screen out lawsuits that have no factual basis."[8] The Sixth Circuit routinely affirms district court dismissals of shareholder securities class actions at the motion to dismiss stage for failure to meet these requirements.[9] The AC should be dismissed with prejudice for the reasons described below.

*First*, the AC fails to allege a single actionable misstatement or omission under Section 10(b) of the Exchange Act. The AC fails to plead particularized facts demonstrating that any of the *forty-three* quoted statements were false or misleading when made. Parroting nearly every statement related to Astec's wood pellet business during a period of more than two years, followed by canned conclusory assertions about why the statement is allegedly false or misleading, does not pass muster under the Reform Act. Moreover, virtually every block-quote contains forward-looking statements immune from liability, immaterial puffery, or inactionable opinion statements.

---

[5] S. Rep. No. 104-98, at 4 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679.
[6] *La. Sch. Emples. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010).
[7] *Omnicare I*, 769 F.3d at 461.
[8] *Miller v. Champion Enters. Inc.*, 346 F.3d 660, 691-92 (6th Cir. 2003).
[9] *See, e.g., Omnicare I*, 769 F.3d at 484; *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 493 (6th Cir. 2015); *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 445 (6th Cir. 2014); *Ricker v. Zoo Entm't, Inc.*, 534 F. App'x 495, 502 (6th Cir. 2013); *Darby v. Century Bus. Servs., Inc.*, 96 F. App'x 277, 287 (6th Cir. 2004); *Miller*, 346 F.3d at 692; *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 554 (6th Cir. 1999).

*Second*, even if the AC properly plead any actionable statements in conformance with the Reform Act, the claims are doomed in any event because the AC does not plead particularized facts supporting a strong inference of scienter (or intent) as required by the federal securities laws. The AC's faulty scienter allegations rely on nothing more than (i) claims about the Individual Defendants' respective positions at Astec and purported access to information to suggest improperly what they should have known about the future of the wood pellet business; (ii) allegations from three unnamed former employees of contractual partner Highland Pellets, LLC ("Highland") who were not affiliated with Astec, who had no meaningful contact, if any, with the Individual Defendants, and who were not even employed on the project during the entire putative class period; and, (iii) stock sales by Mr. Brock, notwithstanding that Messrs. Silvious and Swanson are not alleged to have sold any stock. No inference of scienter is possible from such frail allegations. The far more compelling and reasonable conclusion to be drawn from the allegations is that the Defendants had a reasonable belief the wood pellet business would perform as anticipated.

*Third*, Plaintiff's Section 20(a) claims fail under the Exchange Act.[10]

For these reasons, the AC should be dismissed with prejudice.

## II.  BACKGROUND

### A.  A Company Founded On Innovation.

Headquartered in Chattanooga, Astec was established in 1972 by a group of engineers and inventors whose vision applied state-of-the-art innovative technology and creative approaches to

---

[10] Because the AC fails to allege adequately a primary predicate violation of Section 10(b), the claim for control-person liability under Section 20(a), 15 U.S.C. § 78t(a), must also be dismissed. *See Comshare*, 183 F. 3d at 554 n.11; *Doshi*, 823 F.3d at 1045; *Darby*, 96 F. App'x at 286.

traditionally low-tech industries.  AC ¶¶2, 31.  Founded and led by transportation pioneer and

innovator Dr. J. Don Brock until his death in 2015, Astec has expanded into a family of companies

that engineer, design, manufacture, and market equipment and components used in the building

and restoration of American roads and related construction activities.  *Id*. ¶2.[11]  The Company also

manufactures equipment in other industries for aggregate processing; oil, gas, and water well

drilling; and, wood processing.  *Id*. ¶2.  The Company's three primary business segments

(described *supra* at Section I) collectively hold 93 U.S. patents and 130 foreign patents.  AC ¶2.[12]

Astec's novel products and processes have created numerous technological and engineering

innovations in the industries where it operates.  AC ¶36.[13]

### B.  The Wood Pellet Plant Business.

The Infrastructure Group contracted to build, deliver, and install two wood pellet

production facilities—one in Hazlehurst, Georgia (the "Hazlehurst Plant") and the second in Pine

Bluff, Arkansas (the "Highland Plant").  AC ¶¶5, 31, 37, 42. Consistent with the Company's

culture and vision, Astec's wood pellet plants were designed to transform the wood pellet industry

and capitalize on an economic niche sector that was underserved.  *Id*. ¶¶5, 33, 36.

High demand in the EU prompted Astec to market its pioneering technology to customers

seeking to supply wood pellets to international power utility companies.  *Id*. ¶¶3-4, 36, 51.  During

the putative class period,[14] many EU power companies imported and burned wood pellets from

the U.S. to take advantage of subsidies that required power plants to be fueled with wood burning

boilers as opposed to traditional power generation fuels and methods.  *Id*. ¶33.  The wood pellet

---

[11] *See also Astec Industries Pioneer & Industry Innovator Don Brock Dies,* WASHINGTON NEWSLINE (Mar. 16, 2015), https://newsline.artba.org/2015/03/16/astec-industries-pioneer-industry-innovator-don-brock-dies/ (Decl. Ex. B).
[12] *See also* Astec Form 10-K, dated March 18, 2019, at 2 (Decl. Ex. C).
[13] *See also* Astec Form 10-K, dated March 1, 2017, at 2 (Decl. Ex. D).
[14] The putative class period is July 26, 2016 through October 22, 2018 (the "Class Period").  AC ¶1.

plant business offered Astec a strategic opportunity for countercyclical revenue in its Infrastructure Group when the demand for its road construction equipment slowed. *Id.* ¶37.

Construction of the Hazlehurst Plant began in 2013 pursuant to contracts for a $60 million facility, financed by the Company at 6% interest. *Id.* ¶¶6, 42, 54. Astec did not recognize revenue on the Hazlehurst Plant and, instead, the purchase price was included in its list of orders to be completed, known as backlog, which would be recognized once payment was received at completion in accordance with Generally Accepted Accounting Principles ("GAAP"). *Id.* ¶¶6, 42, 44. The Hazlehurst Plant opened with one line of production in Q4 2013. *Id.* ¶36.[15] Pleased with its performance, the client then ordered two additional production lines, for a total of three. *Id.*

On August 20, 2015, the Highland Plant client contracted with the Company to build, deliver, and install one production line for $30 million. AC ¶62. On March 30, 2016, the Company announced another Highland order for an additional $122.5 million in equipment, for a total project order of $152.5 million. *Id.* ¶¶7, 63.

### C. The Company Kept the Market Informed of Material Issues at Both Plants.

Notwithstanding its best efforts to get both plants running at capacity, Astec encountered unforeseen engineering and operational challenges throughout the Class Period. At every step along the way, however, the Company kept the market informed of material issues. For example, on July 26, 2016, the Company disclosed to the market that while attempting to meet plant emission standards applicable to wood burners, the Hazlehurst Plant had encountered issues with the burners and they would need to be replaced. *Id.* ¶49. Following the burner replacement, poor market conditions and a dip in wood pellet demand caused the Hazlehurst Plant to run at a low-

---

[15] *See also* Astec Form 8-K, dated Feb. 25, 2014 (Decl. Ex. E).

production rate.  *Id.* ¶55.[16]  When market conditions improved, the Company increased production before discovering "significant design issues" distinct from the 2016 burner issues.  On October 2, 2017, the Company disclosed these issues promptly within 45 days of discovery.  AC ¶¶129-131.

The Company also regularly disclosed its reasonable expectation that the $60 million Hazlehurst Plant loan would be repaid.  In February 2017, the Company announced the extension of the loan repayment from July 2017 to December 2018 due to a lull in wood pellet demand, which limited full plant production.  *Id.* ¶¶114, 118, 130.  On May 10, 2018, the Company announced that the Hazlehurst Plant customer "indicated that if they were unable to obtain financing for the plant, they will explore other alternatives for payment to the Company, including possible sale of the plant to a third-party buyer prior to the December 2018 deadline."  *Id.* ¶150.  On July 24, 2018, the Company still anticipated receiving $60 million and disclosed that it was "working collaboratively with the customer in [Hazlehurst,] Georgia" and believed "the plant could be sold at least by December, if not before."  *Id.* ¶154.  When loan repayment became uncertain, the Company provided further clarity to investors on August 9, 2018 by removing the $60 million from its backlog.  *Id.* ¶157.  The Company later announced that "the parties have agreed to jointly market the plant to a new buyer."  *Id.*  After the close of the Class Period, the expected sale of the plant to a third party closed and was disclosed in July 2019.  *Id.* ¶61.  In short, as the Company faced technical challenges and delays on the loan repayment at the Hazlehurst Plant, it timely kept the market apprised of material developments based on its adjusted and evolving expectations.

Likewise, the Company informed the market regarding material updates on the Highland Plant.  On February 20, 2018, the Company disclosed a February 2018 contract amendment

---

[16] *See* Astec Earnings Call Transcript, dated Feb. 21, 2017, at 5 (cited in AC ¶112) (Decl. Ex. F).

"whereby the Company agreed to compensate the customer for production shortfalls caused by the Company and other potential costs . . . from January 1, 2018 – June 25, 2018."[17]   On March 1, 2018 the Company further disclosed that it incurred production shortfalls in January and February 2018.  AC ¶81.  Additionally, pursuant to the contract amendment, the Company disclosed on May 10, 2018 that the client's ultimate acceptance of the Highland Plant, and forfeiture of the client's right to and potential refund of the purchase price, was contingent upon the plant operating at a specific production output and specification during a 30-day test period.  *Id*. ¶150.  At the same time, the Company disclosed that the original June 19, 2018 test period deadline could be extended and, if so, the client may be entitled to additional monetary penalties.  *Id*.  Such disclosures by the Company clearly set forth for investors the dates and parameters for contract completion, as well as any applicable penalties.  On July 24, 2018, the Company disclosed that it ran into a new technical issue that prevented it from meeting the contractual provisions by the required date under the sales contract.[18]   Both Astec and Highland agreed to restructure the contractual terms under which the Company would exit those obligations.  AC ¶152.

As demonstrated above, Astec kept investors informed throughout the Class Period regarding management's expectations as unanticipated challenges arose in both plants.  The Company ultimately determined to exit the wood pellet plant business altogether to improve financial performance and focus on its core business of building equipment for the infrastructure, aggregate, mining, and energy industries.  *Id*. ¶60.[19]

---

[17] Astec Form 10-K, dated March 1, 2018, at A-16 (Decl. Ex. G).

[18] Astec Earnings Call Transcript, dated July 24, 2018, at 6 (cited in AC ¶152) (Decl. Ex. H).

[19] *See also* Astec Form 8-K, dated March 1, 2019 (Decl. Ex. I).

## III.    ARGUMENT AND CITATION TO AUTHORITY

### A.    Heightened Pleading Standards Govern a Motion to Dismiss a Shareholder Securities Class Action.

A Fed. R. Civ. P. 12(b)(6) motion to dismiss tests the legal sufficiency of the claims asserted.  A "complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods*., 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court accepts as true well-pleaded facts alleged in the AC, but the Court "need not accept as true legal conclusions or unwarranted factual inferences . . . [C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig*., 583 F.3d 896, 903 (6th Cir. 2009) (citations omitted); *see also In re Ford Motor Co. Sec. Litig*., 381 F.3d 563, 567 (6th Cir. 2004).

To succeed on a Section 10(b) claim, and corresponding Rule 10b-5, 17 C.F.R. § 240.10b–5, Lead Plaintiff must plead and prove six elements: "(1) a material misrepresentation or omission . . .; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Ricker*, 534 F. App'x at 499 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011)).  The failure to plead ***any one of these elements properly*** is sufficient grounds for dismissal.  *See Darby*, 96 F. App'x at 284, n.3 ("Since we have concluded that plaintiffs did not plead scienter . . . sufficiently, we do not need to decide whether plaintiffs have met the additional pleading requirements of the [Reform Act].''); *Lubbers v. Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 584 (E.D. Mich. 2016) (dismissing complaint because "plaintiff cannot satisfy the first element of his § 10(b) and Rule 10b-5 claim").

Because the AC alleges a Section 10(b) claim, the AC must meet the "more exacting pleading requirements" imposed by the Reform Act in addition to pleading the essential elements of those claims, including stating with particularity each statement alleged to be misleading and why, as well as facts giving rise to a strong inference that the defendant acted with the required state of mind. *Ricker*, 534 F. App'x at 499; *see also* 15 U.S.C. § 78u-4(b). Here, the AC should be dismissed with prejudice because it fails to plead an actionable misstatement or omission and fails to plead a strong inference of scienter in accordance with the Reform Act's heightened pleading requirements.

**B.** **The AC Should Be Dismissed Because It Fails to Plead an Actionable Misstatement.**

The threshold requirement to maintain a claim under Section 10(b) is the identification of a materially false or misleading statement or omission. 15 U.S.C. § 78u-4(b)(1). To comply with the Reform Act and survive a motion to dismiss, a complaint must *specify both* (1) "each statement alleged to have been misleading" *and* (2) the "reason or reasons why the statement is misleading." *Ernst & Young,* 622 F.3d at 478 (emphasis added).

Because the AC fails to plead an actionable misstatement,[20] it warrants dismissal regardless of the AC's allegations concerning the remaining Section 10(b) elements. *Lubbers*, 162 F. Supp. 3d at 584; *see also Pension Fund Grp. v. Tempur-Pedic Int'l, Inc*., 614 F. App'x 237, 242 (6th Cir. 2015) (dismissing for failure to plead an actionable misstatement or omission); *Norfolk Cty. Ret. Sys. v. Tempur-Pedic Int'l, Inc*., 22 F. Supp. 3d 669, 684 (E.D. Ky. 2014) (same); *In re*

---

[20] To the extent the AC is based on an omission theory, it cannot maintain a claim premised on vague allegations about undisclosed minutiae related to Astec's wood pellet investment. Silence, absent a duty to disclose, is not misleading. *In re Ford*, 381 F.3d at 569-70. Uncertain "soft information" that is not objectively verifiable, including predictions and opinions, need not be disclosed. *Id*. Rather, the duty to disclose affirmatively arises only where a person or corporation comes into possession of information that makes a prior statement inaccurate, incomplete, or misleading. *Omnicare I*, 769 F.3d at 471.

*Humana, Inc. Sec. Litig.*, No. 3:08CV-00162-JHM, 2009 U.S. Dist. LEXIS 53535, at *47 (W.D. Ky. June 15, 2009) (same).

          1.     <u>The AC Has Not Properly Specified Any Alleged Misleading Statements or Any Alleged Falsity With the Requisite Detail.</u>

The AC quotes nearly every statement about the Company's wood pellet business generally over the course of almost **twenty-seven** months, but none of these statements individually or cobbled together supports a claim under the Reform Act. Instead of pleading with particularity the specific statements alleged to have been false or misleading, Plaintiff employs the discredited technique of "puzzle pleading." A puzzle plead complaint improperly "places the burden on the Court to sort out the alleged misrepresentations and then match them with the corresponding adverse facts . . . [which] is deficient under the [Reform Act] pleading standards." *Conlee v. WMS Indus.*, No. 11 C 3503, 2012 U.S. Dist. LEXIS 103402, *12 (N.D. Ill. July 25, 2012) (internal quotations omitted).

The bulk of the 70-page, 189-paragraph AC is comprised of long block quotes from the quarterly press releases, earnings calls, or SEC Form 10-Q and Form 10-K filings falling within the over two-year Class Period. Indeed, approximately one-third of the total words in the AC are block-quoted portions of these public filings or statements, and half of those are in either italics, bolding, or both, but with no explanation as to what those typeface markings represent.[21] In

---

[21] It is no response to now say, as we anticipate Lead Plaintiff will in his opposition, that the bolded and italicized portions reflect the purportedly actionable misstatements, and the remainder of the text is provided for context. There are many passages cited in the AC for which no bolded or italicized text is provided. *See, e.g.*, AC ¶¶97, 110, 117, 124, 136, 153, 155. It is utterly unclear whether the AC is attempting to plead securities law violations only as to the emphasized passages or more broadly. In other places, nearly the entire block quote is bolded and italicized. *See, e.g., id.* ¶¶100, 112, 126, 135, 137, 140, 153. This pleading technique runs afoul of the Reform Act's most basic requirement to "specify" the alleged misstatements so that the Court can conduct a statement by statement analysis. *See, e.g., City of Pontiac Gen. Emps. Ret. Sys. v. Schweitzer-Mauduit Int'l, Inc.*, 806 F. Supp. 2d 1267, 1291 (N.D. Ga. 2011) (finding pleading insufficient where "Plaintiffs fail to explain the significance of the emphasized language as compared to the remainder of the quoted material"); *Lauria v. Biosante Pharms., Inc.*, 968 F. Supp. 2d 951, 957-58 (N.D. Ill. 2013) (same); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 840-44 (N.D. Cal. 2000) (same).

structuring the AC this way, Defendants (and, ultimately, the Court) are left to guess which statements are actually at issue. In other words, in contravention of the Reform Act, the AC fails to identify **which** statements within the sometimes pages-long quotations specifically are alleged to be false or misleading.

Moreover, the AC fails to match any of those statements with an explanation of **why** they are purportedly false, beyond merely repasting the same laundry list purporting to explain the supposedly misleading nature of the statements after each series of block-quotes.[22] Lead Plaintiff cannot meet his pleading burden under the Reform Act by merely "compil[ing] several series of statements (each of which contains multiple statements and long block quotes)" and pairing those with "a repetitive series of vague, redundant, and conclusory allegations." *In re Ferro Corp. Sec. Litig.*, No. 1:04CV1440, 2007 U.S. Dist. LEXIS 42191, *57-59 (N.D. Ohio June 11, 2007) (dismissing complaint for failure to plead falsity where plaintiff "le[ft] it up to the Court to match the allegedly false statement(s) with the reason(s) why the statement is false"). The Reform Act "certainly demands more than this" and the AC's failure to match allegedly false statements with particular facts to show why each statement was false or misleading mandates dismissal. *In re Goodyear Tire & Rubber Co. Secs. Litig.*, 436 F. Supp. 2d 873, 904 (N.D. Ohio 2006) (dismissing complaint in part because it failed to meet burden to "plead fraud on a statement-by-statement basis . . . by requiring the Court to try to match the allegedly fraudulent statements to the allegations of wrongdoing"); *Havenick v. Network Express*, 981 F. Supp. 480, 526 (E.D. Mich. 1997) (dismissing complaint that "simply compiled a long list of block quotes" and "line[d] these statements up against a conclusory list of omissions and pronounce[d] that fraud exists").

---

[22] *See, e.g.*, AC ¶¶104, 107, 116, 119, 123, 128, 139, 143, 151, 158.

- 12 -

The superficial and limited allegations regarding Messrs. Swanson and Silvious in particular flunk the Reform Act requirements for pleading falsity and warrant dismissal. With respect to Mr. Swanson, the AC refers solely to a portion of a magazine article quoting him (*see* AC ¶118), but makes no real attempt to satisfy the Reform Act and plead with particularity why or how his statements about Astec's modular design for equipment and work on wood pellet plant proposals were false or misleading when made. Similarly, Mr. Silvious is only alleged to have made one statement. *Id.* ¶112. But the AC fails to set forth any corresponding specific explanation about why Mr. Silvious' statement about the basis for higher than expected *past* revenues was purportedly false or misleading. It is well-established that a claim cannot be premised on disclosure of "accurate historical data . . . even if less favorable results might be predictable by the company in the future." *In re Sofamor Danek Grp.*, 123 F.3d 394, 401 n.3 (6th Cir. 1997). Because the AC fails to "draw a specific nexus between the allegedly fraudulent statements and the facts upon which the allegation of fraud is dependent," the claims against Messrs. Swanson and Silvious should be dismissed with prejudice. *Havenick*, 981 F. Supp. at 526.

2.   Protected Forward-Looking Statements, Immaterial Puffery, and Opinion Statements Are Not Actionable.

The puzzle-like structure of the AC makes it difficult, if not impossible, to discern precisely which statements the AC claims are false or misleading and why. As explained in greater detail *infra*, numerous statements reproduced in the AC are inactionable in any event because they contain forward-looking statements immune from liability, immaterial puffery, or opinion statements.

a.   *Forward-Looking Statements Are Immune From Liability.*

The Reform Act "establishes a safe harbor for forward looking statements to encourage issuers to disseminate relevant information to the market without fear of open-ended liability."

H.R. Conf. Rep. No. 104-369 at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731. Much of

the quoted language in the AC falls squarely within the definition of forward-looking statements

protected by this safe harbor. *See* 15 U.S.C. § 78u-5(i)(1) (defining forward-looking statements

as including projections of (1) revenues and other financial metrics; (2) plans and objectives of

management for future operations, including those relating to the products or services of the issuer;

(3) future economic performance; and assumptions underlying or relating to such statements).

Analysis of certain of the presumed alleged misstatements here, set forth in the chart below,

demonstrates that they are all forward-looking as contemplated by the Reform Act because they

are stated in terms of expectations or beliefs about future performance. *Id.*; *see also Tempur-Pedic*,

614 F. App'x at 242.

| Examples of Protected Forward-Looking Statements[23] | AC(¶) |
|---|---|
| "*[W]e expect* the final [Hazlehurst] payment in 2017. . . *[O]ur plan is to* recognize the $122.5 million [Highland] order . . . during the third quarter *we would anticipate* recognizing about $20 million . . . *[W]e believe* that we will have a new larger order late this year. *We believe* that that order will be in the range of $80 million. . . *[W]e are optimistic* that a new project will happen by the end of this year, it could always be longer than we anticipate." | 98 |
| "1 to 1.5 of these plants in 2017 *is our goal* . . . *our goal would be* in the $100 million to $125 million range of revenue in 2017 with pellet plants." | 100 |
| "*Our goal would be* to get our fair share of [the pellet plants sold in the U.S.]. We will not sell that many. So please don't put that down and say, boy, they are going to sell that many wood pellet plants. . . [B]ut *we would do our best to* get a good fair share of those. . ." | 108 |
| "*We now expect* the final payment [of the Hazlehurst loan] in December 2018. . . *[W]e project* that our pellet plant revenues will be in the range of $40 million to $50 million in 2017 . . . includ[ing] the remaining $15 million to $20 million that *we anticipate* from the Highland Pellets project. . . While *we are optimistic that* a new project will happen in the timeframe mentioned, it always could be longer than we anticipate." | 114-115 |
| "*We expect* the final payment [of the Hazlehurst loan] in December of 2018 . . . *[W]e continue to project* that our pellet plant revenues will be in the range of $40 million to $50 million in 2017. . . While *we are optimistic that* a new project will happen in the timeframe mentioned, it always could be longer than we anticipate." | 121 |
| "*We expect* that final [Hazlehurst loan] payment in December of 2018 . . . *[W]e now* | 125 |

---

[23] The statements shown in the chart are not given the same emphasis as appears in the AC. Instead, the bolding and italicizing herein highlights the forward-looking nature of the statements.

| | |
|---|---|
| *project* that our pellet plant revenues will be in the range of $20 million to $25 million in 2017." | |
| "April 15th is our furthest out date that *we believe* we'd be finished and proving out at Arkansas. . . *[W]e would anticipate* another order sometime in Q2 . . . *We don't plan on* [Hazlehurst plant setbacks] being an effect [on loan repayment]." | 133, 137 |
| "*We* . . . *believe* that our announced charges during 2017 are adequate to cover our commitments to our customers. . . *[W]e still believe* we'll be in position to add an order in time to deliver a complete wood pellet plant in 2019. . . *[W]e expect* to be paid on the pellet plant in Georgia in December[.]" | 142 |
| "The Company *expects* to meet the contract's operational specifications prior to June 15, 2018." | 144 |
| "*We believe* we will be in position to add an order in time to deliver a complete plant . . . *[W]e believe* our second quarter of 2018 revenue will be slightly higher than our first quarter 2018 revenue . . . *we expect* our earnings per share to be slightly better. . ." | 146 |
| "The Company *expects* to meet the contract's production outputs and operational specifications prior to the contractual deadline or an extension thereof." | 150 |

Such forward-looking statements are protected by the Reform Act's safe harbor if *either* (1) accompanied by meaningful cautionary language *or* (2) plaintiff fails to plead a strong inference that the statement at issue was made by the speaker with "actual knowledge" of its falsity. 15 U.S.C. § 78u-5(c)(1)(A)-(B); *Miller,* 346 F.3d at 672, 679. As described in greater detail in Section III.C, *infra*, the Reform Act safe harbor applies to these statements because the AC fails to plead facts supporting the notion that the Defendants had *actual knowledge* that these statements were false or misleading when they were made.[24] *See Local 295/Local 851 IBT Emp'r. Grp. Pension Tr. & Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 709 n.6 (S.D. Ohio 2010) (holding that where complaint failed to establish scienter, it likewise "fail[ed] to allege facts demonstrating that Defendants had actual knowledge of the falsity of [forward-looking] statements"); *Wade v. WellPoint, Inc.*, 740 F. Supp. 2d 994, 1012 (S.D. Ind. 2010) ("Given the deficiencies of Plaintiff's scienter pleadings . . . Plaintiff has clearly failed to create a strong

---

[24] Defendants do not concede that their forward-looking statements lacked corresponding meaningful cautionary language. Indeed, the AC refers to a risk factor from Astec's 2017 Form 10-K directly addressing risks related to its wood pellet business. *See* AC ¶82. Nevertheless, because the AC fails to plead actual knowledge of falsity, the safe harbor applies and no further analysis is necessary.

inference of actual knowledge on the part of Defendants as required for forward-looking statements pursuant to the [Reform Act]"). Here, because the alleged misstatements are forward-looking and the AC fails to allege actual knowledge by the makers that the statements were false or misleading, the Reform Act requires dismissal. *IBEW Local No. 58 Annuity Fund v. EveryWare Glob., Inc.*, 849 F.3d 325, 327 (6th Cir. 2017); *In re Kindred Healthcare, Inc.*, 299 F. Supp. 2d 724, 740 (W.D. Ky. 2004).

### b. Corporate "Puffery" Is Not Actionable.

Many of the statements within the AC's vast block-quoted text are also legally immaterial puffery—*i.e.*, "generalized statements of optimism, that are not capable of objective verification." *Ford*, 381 F.3d at 570-71. For example, the AC appears to challenge statements that there was "continued strong demand for [Astec] products" (AC ¶105); that the Company "remain[ed] very confident in the near-term and long-term outlook for the wood pellet business" (*id.* ¶129); was "confident in [its] ability to" get to full production and "confident in the near term and long term outlook for pellet plants" (*id.* ¶131); was "in a strong leadership position for orders" (*id.*); that the wood pellet investment was a "good one for [the C]ompany" (*id.*); and that Astec "remain[ed] confident in the wood pellet industry's potential over the long-term" (*id.* ¶154). But "[c]ourts everywhere have demonstrated a willingness to find immaterial as a matter of law a certain kind of rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace" including such "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *Ford*, 381 F. 3d at 570-71 (internal quotations omitted).

The above-referenced statements and others like them are just the type of optimistic talk that cannot support a claim. *See, e.g.*, *Norfolk Cty.*, 22 F. Supp. 3d at 684-91 (holding statements

that financial company's performance was "strong" and it saw "a long runway of opportunity" were immaterial); *Hess v. Am. Physicians Capital, Inc.*, No. 5:04-CV-31, 2005 U.S. Dist. LEXIS 1162, *24 (W.D. Mich. Jan. 11, 2005) (holding statements about market being "very favorable" and company's "continued confidence" were examples of "vague self-praises that a reasonable investor would not seriously consider"); *IBEW Local 697 Pension Fund v. Ltd. Brands*, Inc., 788 F. Supp. 2d 609, 634 (S.D. Ohio 2011) (finding statements about future growth opportunities were "the type of subjective, optimistic fluff deemed to be immaterial puffery"); *In re Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp. 2d 887, 905 n.17 (N.D. Ohio 2002) (explaining that statements about projected growth in orders, continued strong demand for products, and company being well-positioned for long-term growth were immaterial).

### c. Opinions Are Non-Actionable.

In addition to the protected forward-looking statements and inactionable puffery, certain statements within the AC's lengthy cut-and-pasted excerpts represent non-actionable opinions. For instance, statements about the Defendants' **beliefs** regarding: (i) future pellet plant orders or pellet plant revenue;[25] (ii) resolution of design flaws at the Hazlehurst and Highland plants and the charges sufficient to cover the same;[26] and (iii) Astec's ability to meet production specifications and sell wood pellet plants[27] are all opinions about the future. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund ("Omnicare II")*, 135 S. Ct. 1321, 1325-26 (2015)

---

[25] *See, e.g.*, AC ¶¶98 ("*[W]e believe* that we will have a new larger order . . . *We believe* that that order will be in the range of $80 million"); 99 ("*We think* [an order] can happen in the next 12 months"); 131 ("*[W]e believe* [wood pellets] is a $100 million per year business"); 142 ("*[W]e still believe* we'll be in position to add an order . . . *[W]e believe* our first quarter 2018 revenue will be slightly higher"); 146 ("*[W]e believe* our second quarter of 2018 revenue will be slightly higher") (emphases added).

[26] *See, e.g.*, *id.* ¶¶131 ("*[W]e believe* [construction related cost issues] are behind us"), 142 ("*[W]e . . . believe* that our announced charges during 2017 are adequate"); 146 ("*[W]e . . . believe* our announced charges during 2017 are adequate") (emphases added).

[27] *See, e.g.*, *id.* ¶¶133 ("April 15 is . . . [when] *we believe* we'd be finished and proving out at [Highland]"); 154 ("*[W]e believe* the plant could be sold, at least, by December") (emphases added).

- 17 -

("belief" statements are statements of opinion). In *Omnicare II*, the Supreme Court held that opinion statements cannot support a claim unless a plaintiff pleads facts demonstrating that the defendants disbelieved the statements ***at the time they were made***. 135 S. Ct. at 1321; *see also USM Holdings, Inc. v. Simon*, No. 15-14251, 2017 U.S. Dist. LEXIS 146913, \*\*11-12 (E.D. Mich. Sept. 12, 2017) (*Omnicare II* standard applied to Section 10(b) claims). The AC comes nowhere close to meeting the exacting *Omnicare II* standard applicable to these opinion statements. Indeed, there are no allegations whatsoever that the Defendants did not actually believe the truth of their statements when they made them.[28] Because the AC did not allege facts supporting any of the Defendants' contemporaneous, subjective disbelief of these opinion statements, they cannot form the basis of a claim.

### 3. Alleged Corporate Mismanagement Is Not Actionable Under the Federal Securities Laws.

The AC repeatedly parrots the same list of vague and conclusory allegations that the pellet plants suffered from "material defects and undisclosed problems" that "prevented them from meeting . . . production capacity" and precluded Astec "from securing additional pellet plant orders." *See* AC¶¶104, 107, 116, 119, 123, 128, 139, 143, 151, 158. To the extent these allegations can be given any weight at all, they amount to nothing more than "corporate mismanagement"[29] of the wood pellet business, which is simply not actionable under the federal securities laws. *Santa Fe Indus. v. Green*, 430 U.S. 462, 479 (1977); *see also Marsh v. Armada Corp.*, 533 F.2d 978, 986

---

[28] The AC's flimsy confidential witness ("CW") allegations regarding Astec's ability to meet the production specifications at Highland (*see e.g.*, AC ¶¶83, 88) do not change the analysis. *See In re HomeBanc Corp. Sec. Litig.*, 706 F. Supp. 2d 1336, 1350 (N.D. Ga. 2010) (no actionable statement where CW disagreed with defendant's public statements and complaint failed to allege that the defendant shared the CW's opinion about the statements); *Tripp v. Indymac Fin. Inc.*, No. 07-1635, 2007 U.S. Dist. LEXIS 95445, \*9 (C.D. Cal. Nov. 29, 2007) (same).

[29] Defendants dispute that there was any corporate mismanagement. For purposes of the Motion to Dismiss, however, Defendants assume the truth of the factual allegations in the AC, as they must.

(6th Cir. 1976) (explaining that "Congress by § 10(b) did not seek to regulate transactions which constitute no more than internal corporate mismanagement"); *Bondali,* 620 F. App'x at 490 (dismissal warranted where allegations about effectiveness of company's internal monitoring system raised claims of "corporate mismanagement, not investor deception"); *Ricker*, 534 F. App'x at 500 (affirming dismissal where "complaint showed at most, that [the company] was financially mismanaged"). Because mismanagement is not a viable theory of liability under the securities laws, the AC should be dismissed.

### C. The AC Fails to Plead the Essential Element of Scienter and Should be Dismissed.

Because we have demonstrated the AC fails to allege an actionable misstatement or omission, the inquiry is complete and the AC should be dismissed. Nevertheless, the AC warrants dismissal for the separate and independent reason that the scienter allegations fall far short of the Reform Act's heightened pleading requirements.

The Reform Act requires that "the complaint shall, with respect to each act or omission alleged . . . , ***state with particularity facts giving rise to a strong inference*** that the defendant acted with the required state of mind."[30] 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). As the Supreme Court explained, the Reform Act's "strong inference" standard "unequivocally raise[d] the bar for pleading scienter." *Tellabs,* 551 U.S. at 321. To clear that steep hurdle, a plaintiff cannot merely plead "facts from which, if true, a reasonable person *could* infer that the defendant acted with the required intent." *Id*. at 323. Rather, the "strong" inference "must be more than merely plausible

---

[30] The requisite state of mind is scienter, defined as a "knowing and deliberate intent to manipulate, deceive, or defraud." *Ley v. Visteon Corp*., 543 F.3d 801, 809 (6th Cir. 2008). Recklessness may also constitute the requisite state of mind, and is similarly demanding. *Ernst & Young*, 622 F.3d at 478 (defining recklessness as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care"). Where, as here, the allegations concern "soft" information, such as predictions or opinions, a complaint must plead facts showing the defendants knowingly misrepresented or omitted facts to deceive, manipulate, or defraud the public. *Omnicare I*, 769 F.3d at 472.

or reasonable—it must be cogent, and ***at least as compelling as any opposing inference of nonfraudulent intent***." *Id.* at 314 (emphasis added); *see also Kuyat,* 747 F.3d at 441-43 (dismissing complaint where inference of scienter was not as strong as the opposing inference); *Ricker*, 534 F. App'x at 500 (same).

In considering whether the facts alleged give rise to a strong inference of scienter, courts in the Sixth Circuit look to the complaint's allegations "holistically," while also considering the nine factors set forth in *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001). *Doshi v. Gen. Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016). The AC fails to allege a strong inference of scienter, and, in any event, any inference of scienter is not as compelling as an opposing, non-fraudulent inference that must be drawn from the allegations.

1.    <u>The AC's Allegations Viewed Holistically Fail to Allege a Strong Inference of Scienter.</u>

The AC does not come close to pleading a strong inference of scienter because it "merely makes general statements and heaps inference upon inference" without alleging "that Person A did Act B at Time C, which is required by the [Reform Act]." *Omnicare I*, 769 F.3d at 482. Consistent with its puzzle-like pleading of the alleged false and misleading statements, the AC's scienter allegations are not "asserted in relation to a statement or omission of a material fact . . . and thus do not allege scienter." *Miller,* 346 F.3d at 674.

The AC attempts to plead scienter in three unavailing ways: (i) asserting that the Individual Defendants should have known the "truth" about the future of the wood pellet business based on their respective positions and access to Company information; (ii) citing vague CW allegations devoid of any material contact with the Individual Defendants; and, (iii) relying on Mr. Brock's

stock sales without alleging sales by Mr. Silvious or Mr. Swanson.[31]

*First*, the AC relies heavily on generic allegations about the Individual Defendants' senior positions at Astec and purported access to information such that they **should have known** the alleged misstatements were false.[32] As a matter of law, these types of allegations are simply not enough. *See, e.g., Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009) ("[g]eneralized facts alleging that the Defendants had access to [Company] financial information . . . do[es] not support a strong inference" of scienter); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 688 (6th Cir. 2004) (explaining "fraudulent intent cannot be inferred merely from the Individual Defendants' positions in the Company and alleged access to information"); *Beaver Cty. Ret. Bd. v. LCA-Vision Inc.*, 1:07-CV-750, 2009 U.S. Dist. LEXIS 31375, *66 (S.D. Ohio Mar. 25, 2009) (allegations premised on defendants' "positions in the Company and access to internal information are insufficient to create a strong inference of scienter"); *Fifth Third Bancorp*, 731 F. Supp. 2d at 726 (scienter "cannot be inferred merely because of the defendants' positions in the company or the fact that they had access to the company's financial information").

Moreover, access to Company information and data "does not mean that Defendants could predict the future or that they knew what they were telling the public was false." *Kindred*, 299 F. Supp. 2d at 740. The AC invites the Court to infer that because the wood pellet business did not

---

[31] The AC also purports to set forth additional scienter allegations in a conclusory two-paragraph section entitled "Additional Allegations of Scienter." The AC alleges what Mr. Brock should have known as a Director based on Astec's corporate governance guidelines and advances the circular argument that Messrs. Brock and Swanson "had intimate knowledge of the flaws" at the plants because of their "extremely detailed statements" about the same. *See* AC ¶¶162-163. But these vague and conclusory allegations cannot be construed as specific scienter allegations and do not contribute to a strong inference of scienter in this Circuit. *Comshare*, 183 F.3d at 553; *Darby*, 96 F. App'x at 284.

[32] *See, e.g., id.* ¶¶162 ("By virtue of his role as a Director, Brock had access to all relevant information . . ."); 177 ("By virtue of their positions at Astec, Defendants had actual knowledge . . ."); 179 ("As the senior managers and/or directors of Astec, the Individual Defendants had knowledge . . . "); 185 ("Because of their senior positions, they knew . . .").

perform as anticipated, the Individual Defendants must have known that their statements were false. This is transparently an "attempt . . . to plead 'fraud by hindsight,' a technique that has been flatly rejected by [the] Sixth Circuit." *Goodyear*, 436 F. Supp. 2d at 903.

*Second*, the AC relies on vague and conclusory CW allegations to plead scienter, which are "properly discounted." *Konkol*, 590 F.3d at 399; *see also Ley*, 543 F.3d at 811. None of the three CWs were Astec employees. Rather, the AC concedes that they were low-level employees at Highland. AC ¶¶39-41. At a minimum, the CWs can offer nothing of substance regarding any of the alleged misstatements or omissions related to the Hazlehurst Plant. As for the Highland Plant, they were not even Highland employees for the entire Class Period—two of them were at Highland for less than six months—and thus allegations related to misstatements or omissions before or after their tenures should be accorded no weight.[33] *See Fifth Third Bancorp*, 731 F. Supp. 2d at 722 (CW information falling outside the class period was "irrelevant"); *Sarafin v. BioMimetic Therapeutics, Inc.*, No. 3:11-cv-0653, 2013 U.S. Dist. LEXIS 4909, at *55 (M.D. Tenn. Jan. 10, 2013) (CWs who were not employed during class period could not know anything about state of mind of the defendant at the time of the alleged misstatement).

In addition, "there are no facts alleged from which it can be inferred that the [CWs] had sufficient contact with any of the Defendants to impute their knowledge" to the Individual Defendants. *Fifth Third Bancorp*, 731 F. Supp. 2d at 721-22. The AC does not allege that any of the CWs ever talked directly to or met with any of the Individual Defendants. *See In re EveryWare Global, Inc. Sec. Litig.*, 175 F. Supp. 3d 837, 853 (S.D. Ohio 2016) (lack of contact between CWs and defendants undercut scienter allegations); *Konkol*, 590 F.3d at 399 (same). The closest the

---

[33] CW 1 was employed by Highland beginning in January 2017. AC ¶39. CW 2 was a consultant for Highland for only four months from April through July 2018. *Id.* ¶40. CW 3's short five-month tenure at Highland was from October 2017 through February 2018. *Id.* ¶41.

AC gets to alleging CW contact with the Individual Defendants is the allegation that CW 2 (who was only at Highland for four months) attended a daily Highland staff meeting that Mr. Brock occasionally joined by phone and, according to CW 1, Mr. Swanson partially attended.  AC ¶70. Mr. Silvious is not even alleged to have participated in these meetings.  In any event, the mere fact there were meetings, without more, does not support scienter.  *See, e.g., Mogensen v. Body Cent. Corp.*, 15 F. Supp. 3d 1191, 1220 (M.D. Fla. 2014) (rejecting confidential witness allegations about internal meetings that failed to specify what was said or the context of the conversations); *In re Royal Caribbean Cruises Ltd. Sec. Litig.*, No. 1:11-22855-CIV-WILLIAMS, 2013 U.S. Dist. LEXIS 94156, at *48 (S.D. Fla. Apr. 19, 2013) (rejecting confidential witness based meeting allegations for failing to articulate "specific facts as to what was discussed, when it was discussed and by whom").  The CW allegations at most support the conclusion, as was repeatedly disclosed, that there were some operational issues at the Highland Plant.  But "[k]nowledge that there were some obstacles . . . [the Company] was working to resolve . . . is not sufficient to show knowledge of falsity."  *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 884 (D. Minn. 2007).

*Third*, the AC attempts to meet its scienter burden through recitations of Mr. Brock's sale of inherited stock, without alleging sales by either Mr. Swanson or Mr. Silvious.  But these stock allegations fail for several reasons.[34]  As an initial matter, the percentage of Mr. Brock's total stock holdings allegedly sold (23%) does not support a strong inference of scienter.  *Gruhn v. Tween Brands, Inc.*, No. 2:07-cv-925, 2009 U.S. Dist. LEXIS 47853, *25 (S.D. Ohio June 2, 2009) (stock sales totaling 17% and 32% of the individual's total holdings did not support a strong inference of fraud); *see also In re Vantive Corp. Secs. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002) (aggregate

---

[34] The AC alleges that the Individual Defendants were "motivated to make false statements . . . in order to personally benefit from the sale of Astec securities from their personal portfolios."  AC ¶178.  However, there are no allegations of stock sales by anyone other than Mr. Brock, who sold only a minority portion of his total holdings.  *See id.* ¶¶92-93.

sale of 38% of defendants' stock holdings did not raise a strong inference of fraud); *Ronconi v. Larkin*, 253 F.3d 423, 435-36 (9th Cir. 2001) (affirming dismissal where there was an aggregate sale of 69% of stock held by seven defendants and 98% of total shares held by another defendant). Moreover, neither Mr. Silvious nor Mr. Swanson is alleged to have sold stock during the Class Period or otherwise profited from any alleged fraud, which "undermines any suggestion of knowledge on the part of defendants." *In re Comshare, Inc. Sec. Litig.*, No. 96-73711-DT, 1997 U.S. Dist. LEXIS 17262, **28-29 (E.D. Mich. Sept. 18, 1997); *see also In re Humphrey Hospitality Tr., Inc. Sec. Litig.,* 219 F. Supp. 2d 675, 686 (D. Md. 2002); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 420-21 (5th Cir. 2001); *In re John Alden Fin. Corp. Secs. Litig.*, 249 F. Supp. 2d 1273, 1282 (S.D. Fla. 2003). The much more compelling inference to be drawn from the allegations here is that, contrary to the Defendants' expectations, the cutting-edge wood pellet business ran into unforeseen challenges, resulting in financial losses to Astec and necessitating a course change in its wood pellet strategy.

2.     Consideration of the *Helwig* Factors[35] Negates Scienter.

Not only does the AC fail to plead a strong inference of scienter when the allegations are viewed holistically, but it also fails to plead anything in support of the nine *Helwig* factors identified by the Sixth Circuit as being "usually relevant to scienter." 251 F.3d at 552. Here, the AC fails to plead **any** facts related to five of the nine factors (*i.e.,* Factors 4, 5, 7, 8 or 9). For

---

[35] The *Helwig* factors relevant to scienter include: (1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements on the same subject; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and (9) the self-interested motivation of defendants in the form of saving their salaries or jobs. 251 F.3d at 552.

certain other factors (including Factors 1, 2, and 6), the AC's allegations raise compelling *contrary* inferences. For example, as explained above, the allegations about insiders' stock sales (Factor 1) cut the opposite way given that neither Mr. Swanson nor Mr. Silvious is alleged to have sold stock. Likewise, Factors 2 and 6, which concern the disparity between internal information and external statements on the same subject, weigh heavily in Defendants' favor given that the Company timely disclosed adverse information affecting the wood pellet business throughout the Class Period as such issues arose, including information regarding design flaws at the pellet plants, cost overruns, and baghouse issues.[36] *Kuyat,* 747 F.3d at 441. The AC identifies two Highland-generated internal reports that *may* have been circulated to Messrs. Swanson and Brock (*see* AC ¶85), but does not allege what in those reports rendered their statements false or misleading. "Merely stating that the Defendants had access to and receipt of internal . . . reports without any proof of the adverse content of those reports is not a basis for a strong inference of scienter." *Grillo v. Tempur-Pedic Int'l, Inc.*, 553 F. Supp. 2d 809, 819 (E.D. Ky. 2008). Finally, in light of the AC's failure to identify specific alleged misstatements or omissions (*see supra* Section III.B), it offers nothing in support of Factor 3 regarding the temporal proximity between those purported misstatements and the later disclosure of inconsistent information. "[T]he absence of these factors indicates the absence of scienter." *Goodyear*, 436 F. Supp. 2d at 900. Because the AC fails to allege particularized facts that give rise to a strong inference that any Defendant acted with scienter, and because any such inference is not as compelling as non-fraudulent inferences, the AC should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion to Dismiss be granted and that the AC be dismissed with prejudice.

---

[36] *See, e.g.,* AC ¶¶56, 77, 79, 102, 125, 126, 129-134, 142.

This 25th day of October, 2019.

ALSTON & BIRD

/s/ John A. Jordak, Jr.
John A. Jordak, Jr. *(admitted pro hac vice)*
john.jordak@alston.com
Elizabeth Gingold Clark *(admitted pro hac vice)*
elizabeth.clark@alston.com
Courtney E. Quirós *(admitted pro hac vice)*
courtney.quiros@alston.com
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

CHAMBLISS, BAHNER & STOPHEL, P.C.

Richard W. Bethea
rbethea@chamblisslaw.com
John G. Jackson
jjackson@chamblisslaw.com
605 Chestnut Street, Suite 1700
Chattanooga, Tennessee 37450
Telephone: (423) 756-3000

*Attorneys for Defendants Astec Industries, Inc., Benjamin G. Brock, David C. Silvious, and Malcolm Swanson*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2019, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing upon all Counsel of Record.

**ALSTON & BIRD**

By: /s/ John A. Jordak, Jr.

John A. Jordak, Jr. (*admitted pro hac vice*)
Georgia Bar Number 404250