**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| CITY OF TAYLOR GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 1:19-cv-00024-PLR-CHS |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Chief Judge Pamela L. Reeves |
| ASTEC INDUSTRIES, INC., BENJAMIN G. BROCK, DAVID C. SILVIOUS, and MALCOLM SWANSON, | ) ) ) ) | Mag. Judge Christopher H. Steger |
| Defendants. | ) ) | |

## <u>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'</u> <u>MOTION TO DISMISS AMENDED COMPLAINT</u>

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT AND CITATION TO AUTHORITY ........................................... 3

    A.      The AC Should Be Dismissed Because It Fails to Plead an Actionable
        Misstatement or Omission. ...................................................................... 3

        1.      The AC Fails To Identify Any Alleged Misleading Statements Or
               To Allege Falsity With Particularity. .......................................... 3

        2.      The AC Fails to Identify Any Actionable Omissions. ................. 8

        3.      No Forward-Looking Statements, Puffery, or Opinion Statements
               Are Actionable. ......................................................................... 10

               a.      Protected Forward-Looking Statements Are Non-
                        Actionable. ...................................................................... 10

               b.      "Puffery" is Non-Actionable. ......................................... 12

               c.      Opinion Statements Are Non-Actionable. ..................... 13

        4.      Alleged Corporate Mismanagement Does Not State A Claim
               Under the Federal Securities Laws. .......................................... 15

    B.      Because the AC Fails to Plead Scienter, The AC Should Be Dismissed.............. 15

    C.      The Section 20(a) Claim Warrants Dismissal. ....................................... 20

    D.      The Court Should Dismiss The AC With Prejudice. ............................. 20

III.    CONCLUSION .................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

*Albert Fadem Tr. v. Am. Elec. Power Co.*,
    334 F. Supp. 2d 985 (S.D. Ohio 2004) ....................................................................21

*Begala v. PNC Bank, Ohio, N.A.*,
    214 F.3d 776 (6th Cir. 2000) .................................................................................21

*Best v. Portfolio Recovery Assocs., LLC*,
    No. 16-03140, 2019 U.S. Dist. LEXIS 30510 (M.D. Tenn. Feb. 22, 2019) .............................2

*El-Hallani v. Huntington Nat'l Bank*,
    No. 13-cv-12983, 2014 U.S. Dist. LEXIS 72887 (E.D. Mich. May 29, 2014) ......................19

*Gruhn v. Tween Brands, Inc.*,
    No. 2:07-cv-852, 2009 U.S. Dist. LEXIS 47853 (S.D. Ohio June 2, 2009)...........................18

*Havenick v. Network Express*,
    981 F. Supp. 480 (E.D. Mich. 1997).........................................................................5

*Helwig v. Vencor, Inc.*,
    251 F.3d 540 (6th Cir. 2001) .................................................................................16

*Hess v. Am. Physicians Capital, Inc.*,
    No. 5:04-CV-31, 2005 U.S. Dist. LEXIS 1162 (W.D. Mich. Jan. 11, 2005) .........................12

*In re Cardinal Health, Inc. Sec. Litigs.*,
    426 F. Supp. 2d 688 (S.D. Ohio 2006) ......................................................................4

*In re Champion Enters. Sec. Litig.*,
    145 F. Supp. 2d 871 (E.D. Mich. 2001).................................................................1, 20

*In re Comshare Inc. Sec. Litig.*,
    183 F.3d 542 (6th Cir. 1999) ..................................................................................1

*In re Ferro Corp. Sec. Litig.*,
    No. 1:04CV1440, 2007 U.S. Dist. LEXIS 42191 (N.D. Ohio June 11, 2007) .........................6

*In re Ford Motor Co. Sec. Litig.*,
    381 F.3d 563 (6th Cir. 2004) ............................................................................10, 12

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
    436 F. Supp. 2d 873 (N.D. Ohio 2006)................................................................6, 9, 20

*In re HomeBanc Corp. Sec. Litig.*,
706 F. Supp. 2d 1336 (N.D. Ga. 2010) ................................................................14

*In re Huntington Bancshares Sec. Litig.*,
674 F. Supp. 2d 951 (S.D. Ohio 2009) ...............................................................9, 18

*In re Kindred Healthcare, Inc. Sec. Litig.*,
299 F. Supp. 2d 724 (W.D. Ky. 2004)....................................................................18

*In re Regions Morgan Keegan Sec.*,
743 F. Supp. 2d 744 (W.D. Tenn. 2010)...................................................................4

*In re Sofamor Danek Grp., Inc.*,
123 F.3d 394 (6th Cir. 1997) ...............................................................................8, 9

*In re Wet Seal, Inc. Sec. Litig.*,
518 F. Supp. 2d 1148 (CD. Cal. 2007) ...................................................................18

*Kuyat v. BioMimetic Therapeutics, Inc.*,
747 F.3d 435 (6th Cir. 2014) ...................................................................................20

*La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*,
622 F.3d. 471 (6th Cir. 2010) .............................................................................7, 21

*Laporte v. City of Nashville*,
No. 3:18-cv-00282, 2019 U.S. Dist. LEXIS 27679 (M.D. Tenn. Feb. 21, 2019)...............6, 19

*Miller v. Champion Enters. Inc.*,
346 F.3D 660 (6th Cir. 2003)......................................................................1, 20, 21

*Morse v. McWhorter*,
290 F.3d 795 (6th Cir. 2002) ...................................................................................21

*Omnicare, Inc. v. Laborers Dist. Council Indus. Pension Fund*,
135 S. Ct. 1318 (2015)................................................................................13, 14

*Orea Energy Grp., LLC v. E. Tenn. Consultants, Inc.*,
No. 3:09-cv-041, 2009 U.S. Dist. LEXIS 93256 (E.D. Tenn. Oct. 6, 2009) ..................1, 6, 19

*Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*,
No. 1:10-cv-520, 2011 U.S. Dist. LEXIS 72362 (W.D. Mich. July 6, 2011)...........................7

*PR Diamonds, Inc. v. Chandler*,
364 F.3d 671 (6th Cir. 2004) ...................................................................................21

*Ricker v. Zoo Entm't, Inc.*,
534 F. App'x 495 (6th Cir. 2013) .............................................................................1

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010) ................................................................................11

*Tretola v. Tretola*,
    No. 2:13-cv-358, 2013 U.S. Dist. LEXIS 86240 (S.D. Ohio June 19, 2013) ...........................5

*Tripp v. Indymac Fin. Inc.*,
    No. 07-1635, 2007 U.S. Dist. LEXIS 95445 (C.D. Cal. Nov. 29, 2007) ................................15

*U.S. v. Ford Motor Co.*,
    532 F.3d 496 (6th Cir. 2008) ...................................................................................4

*Zaluski v. United Am. Healthcare Corp.*,
    527 F.3d 564 (6th Cir. 2008) ...................................................................................8

## RULES

17 C.F.R. 240.10b-5 ................................................................................................4, 20

Fed. R. Civ. Proc. 9(b) ...............................................................................................4

Fed. R. Civ. Proc. 12(b)(6) ........................................................................................19

Fed. R. Civ. Proc. 15(a) ............................................................................................21

## STATUTES

15 U.S.C. § 78j .......................................................................................................3, 20

15 U.S.C. § 78t-1 ......................................................................................................20

15 U.S.C. § 78u-4 ................................................................................................. passim

15 U.S.C. § 78u-5 .....................................................................................................10

## I.    INTRODUCTION

The Reform Act[1] requires courts to perform a vital gatekeeper function at the motion to dismiss stage and heavily scrutinize putative shareholder class actions like the present one because "frivolous securities fraud litigation unnecessarily . . . chills corporate disclosure, and is often based on nothing more than a company's announcement of bad news, not evidence of fraud." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (internal quotations omitted); *see also In re Champion Enters. Sec. Litig.*, 145 F. Supp. 2d 871, 877 (E.D. Mich. 2001) (Reform Act was adopted "to implement a strategy to stem the flow of baseless strike suits that flooded courtrooms throughout the nation"). Defendants' Brief established that the Court should exercise this statutorily-prescribed duty and dismiss the AC because it abjectly fails to meet the "exacting pleading requirements" of the Reform Act. *Ricker v. Zoo Entm't, Inc.*, 534 F. App'x 495, 499 (6th Cir. 2013).

In conclusory fashion, Plaintiff's response (Doc. 71) ("Response" or "Resp.") asserts the AC should be sustained—only occasionally citing to specific paragraphs from the AC—without demonstrating ***why*** the allegations meet the heightened pleading standards under the Reform Act. But repeated and often unsupported bald assertions that the AC has cleared the "elephant-sized boulder blocking [Plaintiff's] suit"[2] should be disregarded. Furthermore, the various allegations improperly raised for the very first time in the Response do not change the Court's calculus since "it is a basic principle that the [AC] may not be amended by the brief[ ] in opposition to a motion to dismiss." *Orea Energy Grp., LLC v. E. Tenn. Consultants, Inc.*, No. 3:09-cv-041, 2009 U.S. Dist. LEXIS 93256, at *8-9 (E.D. Tenn. Oct. 6, 2009) (internal quotations and citations omitted);

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning set forth in Defendants' Motion to Dismiss Amended Complaint (Doc. 63) and Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint (Doc. 66) (hereinafter "Defendants' Brief" or "Def. Br.").

[2] *Miller v. Champion Enters. Inc.*, 346 F.3D 660, 691-92 (6th Cir. 2003).

*see also Best v. Portfolio Recovery Assocs., LLC*, No. 16-03140, 2019 U.S. Dist. LEXIS 30510, at *7 (M.D. Tenn. Feb. 22, 2019) (refusing to consider allegations raised for the first time in plaintiff's response on a motion to dismiss).

Indeed, what is ***not*** in the Response is more notable than what is included. The Response does ***not*** clarify which statements the AC claims are allegedly misleading nor does it provide a real roadmap (which would be tardy in any event) to interpret the insufficient, puzzle-plead AC.[3] The Response does ***not*** attempt to resuscitate the superficial and paltry allegations as to Messrs. Swanson and Silvious.[4] The Response does ***not*** challenge the vast majority of protected forward-looking statements raised in Defendants' Brief, which are, therefore, tacitly acknowledged as immune from liability under the safe harbor of the Reform Act.[5] The Response does ***not*** rebut that the AC, at bottom, alleges only nonactionable corporate mismanagement.[6] Finally, the Response does ***not*** identify scienter allegations in the AC related to the Hazlehurst plant specifically, nor does it address each of the nine *Helwig* factors negating scienter as to the other statements.[7] Because all these points have been conceded, and for the additional reasons explained in greater detail below, the AC does not state a claim against the Defendants and should be dismissed with prejudice.

---

[3] *See* Def. Br. 11-13; *see also infra* Section II.A.

[4] *See* Def. Br. 13; *see also infra* Sections II.A, B.

[5] *See* Resp. 18; Def. Br. 13-16; *see also infra* Section II.A.3(a). With regard to the four forward-looking statements the Response does address, the Response does ***not*** identify allegations in the AC that the Defendants had actual knowledge that these statements were false or misleading when they were made. *See infra* Section II.A.1.

[6] *See* Def. Br. 18-19; *see also infra* Section II.A.4.

[7] *See* Def. Br. 22, 24-25; *see also infra* Section II.B.

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.    The AC Should Be Dismissed Because It Fails to Plead an Actionable Misstatement or Omission.

As demonstrated in Defendants' Brief, the AC fails to plead a single actionable misstatement or omission under Section 10(b) of the Exchange Act because (1) it fails to identify any alleged misstatements or omissions with the requisite particularity; (2) it fails to plead particularized facts demonstrating that the forty-three block quotes were false or misleading when made; and (3) virtually every one of the long swaths of quotes contains forward-looking statements immune from liability, immaterial corporate puffery, or opinion statements. *See* Def. Br. 10-19. None of the arguments in the Response save the AC from dismissal.

### 1.    The AC Fails To Identify Any Alleged Misleading Statements Or To Allege Falsity With Particularity.

To survive dismissal, the AC must meet the threshold requirement of identifying a materially false or misleading statement or omission by specifying ***both*** "each statement alleged to have been misleading" ***and*** the "reason or reasons why the statement is misleading," often referred to as falsity. *Id*. at 10. Defendants' Brief demonstrated that the puzzle-like AC falls far short of the Reform Act mandate to identify specifically which statements within the block-quoted press releases, earnings call transcripts, and other public filings are alleged to have been false or misleading. *Id*. at 11-12. The Response fails to successfully rebut this threshold basis for dismissal.

As an initial matter, the Response is utterly mute as to the already thin allegations in the AC regarding misstatements or omissions purportedly attributable to Messrs. Swanson and Silvious. Accordingly, the Plaintiff concedes the allegations as to Messrs. Swanson and Silvious should be dismissed with prejudice for the reasons explained in Defendants' Brief. *See id*. at 13.

The Response primarily relies on *U.S. v. Ford Motor Co.*[8] to argue the AC "satisfied the particularity requirements of Rule 9(b)." Resp. 16-17. *Ford* is inapposite, however, because it is not a Reform Act decision, and, therefore, does not address the Reform Act's heightened pleading standard that goes beyond Rule 9(b). As a case cited in the Response[9] acknowledges, it was because "Congress concluded that Rule 9(b) had not prevented the abuse of the securities laws by private litigants. . . [that] Congress passed the [Reform Act]." *In re Cardinal Health, Inc. Sec. Litigs.*, 426 F. Supp. 2d 688, 716 (S.D. Ohio 2006). Accordingly, "[w]hen a plaintiff alleges a violation of [Section] 10(b) and Rule 10b-5, the [Reform Act] mandates a heightened pleading standard greater than that required by Rule 9(b)." *In re Regions Morgan Keegan Sec.*, 743 F. Supp. 2d 744, 754 (W.D. Tenn. 2010). Defendants established the AC fails to meet this heightened pleading requirement, and repeated unsupported assertions in the Response that the AC chins the bar do not make it so.

First, the Response mischaracterizes Defendants' Brief and suggests Defendants "argu[e] that the [AC] is confusing because it alleged too many misstatements over too long of a time period." Resp. 17. While it is true the AC reproduces nearly every statement about the Company's wood pellet business over twenty-seven months, the numerous statements quoted and lengthy time period are not the reasons the AC is deficient. Rather, the AC fails to meet the Reform Act pleading standards because its structure requires Defendants and the Court to undertake the herculean task of extrapolating from years' worth of block-quoted statements exactly what the alleged misstatements are and matching those with any corresponding allegations of falsity. This pleading deficiency warrants dismissal under the Reform Act. *See* Def. Br. 11-12.

---

[8] 532 F.3d 496 (6th Cir. 2008).
[9] *Id*. at 16.

Next, the Response attempts to brush aside this fatal puzzle pleading defect by asserting the AC uses boldface to "identify misstatements" and purportedly "reproduces longer disclosures to provide the reader with the context for the misstatements." Resp. 17. But most of these boldface (and sometimes also italicized) statements appear in massive block quotations that span nearly an entire page of the AC,[10] which is a tell-tale characteristic of improper puzzle pleading. *Havenick v. Network Express*, 981 F. Supp. 480, 526 (E.D. Mich. 1997) (dismissing complaint that "simply compiled a long list of block quotes" and "line[d] these statements up against a conclusory list of omissions and pronounce[d] that fraud exists").

Moreover, the Response does not explain (either in the AC itself or belatedly now for the first time) how the AC's use of emphasis meaningfully clarifies its allegations. There is no explanation for italicization or the boldface in the AC itself. Additionally, the use of emphasis at times is random, calling attention to statements the AC otherwise does not seem to challenge as false or misleading.[11] In any event, even if the Response provided some "key" to identifying the alleged misstatements or omissions in the AC— which it does not—it is "axiomatic that the [AC] may not be amended by the briefs in opposition to a motion to dismiss." *Tretola v. Tretola*, No. 2:13-cv-358, 2013 U.S. Dist. LEXIS 86240, at *5-6 n.1 (S.D. Ohio June 19, 2013). Thus, introduction of any attempted blueprint at this late stage would be improper and should be rejected.

---

[10] *See, e.g.,* AC ¶¶98, 121, 125, 130-134, 142, 146, 154.

[11] *See, e.g.,* AC ¶¶114 (bolding and italicizing, without explanation, the otherwise uncontested phrase: "Given the fact that Hazlehurst has been a good partner"); 152 (bolding and italicizing the otherwise uncontested statements: "Under the terms of the agreement to exit the contract, which was effective on July 20, 2018, the Company agreed to pay $68 million in cash in the aggregate over the course of the next 120 days and forgive approximately $7 million in receivables. In exchange, Highland agreed to release the Company from all contractual obligations related to the Arkansas wood pellet plant. The Company will remain available for onsite and telephonic technical advice."); 154 (bolding and italicizing the otherwise uncontested phrase "continue to offer proven wood pellet plant equipment for sale as equipment suppliers only" and statement "[w]e are working collaboratively with the customer in Georgia, as a potential sale of this plant is being contemplated").

*See Laporte v. City of Nashville*, No. 3:18-cv-00282, 2019 U.S. Dist. LEXIS 27679, at *8-9 (M.D. Tenn. Feb. 21, 2019) (refusing to consider allegations in response briefs on motion to dismiss that were not in the complaint); *Orea Energy Grp.*, 2009 U.S. Dist. LEXIS 93256, at *8-9 (same).  The AC, therefore, fails to identify the alleged misstatements with the requisite particularity under the Reform Act through its sporadic and unexplained use of emphasis.

Finally, instead of addressing the AC's pleading defect head-on, the Response deflects by arguing that the "formatting style of the alleged misstatements is precisely the type of issue this Court's Order Governing Motions to Dismiss is intended to prevent," and claims Defendants should have "rais[ed] their confusion" when the parties met and conferred.  Resp. 17.  Counsel specifically stated on the meet and confer telephone call that Defendants planned to move to dismiss the AC for failure to plead an actionable misstatement or omission in conformance with the Reform Act.  Furthermore, as explained in Defendants' Brief,[12] improper puzzle pleading is hardly just a "formatting" issue that could be subject to confusion.  Rather, the AC's failure to specify each alleged misstatement or omission and match it with specific allegations of falsity is a substantive flaw mandating dismissal under the Reform Act's stringent pleading standards, which was clearly discussed on the meet and confer call.  *See, e.g., In re Ferro Corp. Sec. Litig.*, No. 1:04CV1440, 2007 U.S. Dist. LEXIS 42191, at *57-59 (N.D. Ohio June 11, 2007) (dismissing complaint where plaintiff "le[ft] it up to the Court to match the allegedly false statement(s) with the reason(s) why the statement is false"); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 436 F. Supp. 2d 873, 904 (N.D. Ohio 2006) (dismissing complaint that failed to "plead fraud on a statement-by-statement basis . . . by requiring the Court to try to match the allegedly fraudulent statements to the allegations of wrongdoing.").

---

[12] Def. Br. 11-12.

The *Pontiac Gen. Emps. Ret. Sys. v. Stryker Corp.*[13] case cited in the Response confirms why dismissal is appropriate. There, the court admitted that "[s]etting forth several pages of block quotations followed by a general allegation that the statements are false . . . is deficient under the pleading standards . . . and the Court would be well within its discretion in dismissing the [complaint] . . ." *Stryker*, 2011 U.S. Dist. LEXIS 72362, at *23.[14]

In any event, the AC undoubtedly flunks the second part of the threshold requirement of identifying a materially false or misleading statement: pleading falsity. As demonstrated in Defendants' Brief,[15] the AC clearly falls short of satisfying its burden to identify with specificity the "reason or reasons why [each alleged] statement is misleading." *La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d. 471, 478 (6th Cir. 2010). The Response manages only the most superficial and oblique argument that the AC demonstrates falsity. *See* Resp. 16 (asserting without support that the AC "explains the reason [each misstatement] was false and misleading"); Resp. 17 n.5 (referencing in parenthetical explanations of purported legal authority instances where courts addressed falsity allegations). Failing to address in any meaningful way how the AC satisfies this required pleading requirement,[16] the Response effectively concedes it has not done so. This deficiency alone mandates dismissal. *See* Def. Br. 12-13.

---

[13] No. 1:10-cv-520, 2011 U.S. Dist. LEXIS 72362 (W.D. Mich. July 6, 2011).

[14] The *Stryker* court's exercise of its discretion to ultimately deny the motion to dismiss there should not control what the Court does here because the *Stryker* court found that, unlike the AC, the complaint at issue included "introductory phrase[s] that identifie[d] the subject of the statements" and "cabin[ed] the quoted statements that follow[ed]." *Id.* at *24-25. Moreover, the other cases cited in the Response are inapposite. Resp. 17 n.5.

[15] Def. Br. 12-13.

[16] Even the paragraphs purportedly cited to explain why the statement in AC ¶¶53, 114 that "Hazlehurst has been a good partner" was false and misleading are woefully insufficient. Resp. 16. The first refers to unrelated statements about the **Highland** plant without any mention of Hazlehurst. AC ¶112. The second is nothing more than the standard laundry list repasted after each series of quoted statements that Defendants already demonstrated is insufficient to plead falsity. AC ¶116. *See* Def. Br. 12-13.

## 2. The AC Fails to Identify Any Actionable Omissions.

As explained in Defendants' Brief, while it was not obvious the AC had alleged an omissions theory of liability given the above-described pleading deficiencies, no such claim could be premised on the vague allegations of undisclosed minutiae referenced in the AC. Def. Br. 10. The Response attempts to offer an omissions theory based on the general allegation that the Defendants had a duty to disclose "the plants' significant manufacturing problems or the material effects of those manufacturing problems on Astec's revenue." Resp. 15. The Response sets forth two "examples" of such alleged omissions,[17] but neither supports a claim.

First, the Response curiously suggests the Company's disclosures in July and October 2017 about production issues at the Highland plant were the sort of "positive information" that triggered a duty to also disclose "the fact that the $152 million in revenue it recorded from the Highland contract would need to be refunded if the plant failed to pass the Reliability Run by the longstop date." *Id*. at 15-16. However, "[t]hese [July and October 2017] statements are not the type of misleading statements that give rise to a duty to disclose; they are ***accurate portrayals*** of the status of the company." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 574 (6th Cir. 2008) (emphasis added).

Furthermore, "the potential consequences of these [production issues]"—like the possibility the Highland contract would have to be refunded if the plant failed to pass the Reliability Run— "are the type of predictions and soft information that do not give rise to a duty of disclosure." *Id*.; *see also In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 402 (6th Cir. 1997) (explaining that "predictions not substantially certain to hold . . . do not come within the duty of disclosure."). Such "allegations that defendants should have anticipated future events and made

---

[17] S*ee id.* at 15-16.

certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *In re Huntington Bancshares Sec. Litig.*, 674 F. Supp. 2d 951, 964-65 (S.D. Ohio 2009) (holding plaintiff failed to meet the Reform Act pleading requirement for falsity by alleging what a company "should have known better or should have known earlier") (internal citations omitted)).

The AC does not allege that, at the time these July and October 2017 statements were made, Defendants knew the (disclosed) production issues would necessarily lead to failure of the Reliability Run, *which in turn* would lead to a termination of the Company's contract with Highland, *which in turn* would lead to subsequent adverse financial consequences for Astec. *See Sofamor*, 123 F.3d at 400. As explained in Defendants' Brief,[18] such attempts to claim individual defendants "should have known" based on allegations about the eventual underperformance of the wood pellet business fail because the technique of pleading "'fraud by hindsight' . . . has been flatly rejected by the Sixth Circuit." *Goodyear*, 436 F. Supp. 2d at 903.

Second, without any citation to the AC whatsoever or any applicable legal authority, the Response appears to take issue with Mr. Brock's October 2, 2017 disclosure that, while the Company had guaranteed four lines at a production rate of 20 tons per hour, instead only one line had met that production rate and only then for a short period of time. Resp. 16. The Response suggests that, in addition to disclosing the four lines not meeting the required production rate for a sustained period of time, Mr. Brock also needed to disclose the one line that briefly met the output was running natural gas rather than wood. *Id.* What the Response does not explain is *why*, as a matter of law, the absence of this one minor detail renders some unidentified statement misleading when it is undisputed the Company affirmatively disclosed both (i) the failure to meet

---

[18] Def. Br. 21-22.

the production specifications, and (ii) the requirement that the four lines run on wood.[19]  In light

of those disclosures, additional clarification about one line that briefly met production goals and

was running on natural gas cannot be "view[ed] as significantly changing the general gist of

available information, and thus, [is] not material . . . ." *In re Ford Motor Co. Sec. Litig.*, 381 F.3d

563, 570 (6th Cir. 2004).

> ### 3.    No Forward-Looking Statements, Puffery, or Opinion Statements Are Actionable.

>> #### a.    *Protected Forward-Looking Statements Are Non-Actionable.*

A forward-looking statement is protected by the Reform Act's safe harbor if ***either*** (i) it

was accompanied by meaningful cautionary language, ***or*** (ii) plaintiff fails to allege the maker of

the statement had actual knowledge that the statement was false or misleading. 15 U.S.C. §

78u5(c)(1)(A)-(B).  Defendants' Brief established that the latter applies here, and the Response's

arguments do not lead to a different conclusion.  Def. Br. 13-16.

The Response summarily asserts that "[m]any of the misstatements identified by

Defendants, when viewed in their original context, are verifiable statements at least partially about

current or past events."  Resp. 18.  The Response cites, without further explanation, four statements

from the AC as examples, but does not make any attempt to address the other ***nine*** examples of

protected forward-looking statements cited in Defendants' Brief.  *See id*.; Def. Br. 14-15.  By its

silence, Plaintiff concedes those nine examples provided in Defendants' Brief are forward-looking

and should be dismissed based on the Reform Act's safe harbor.

---

[19] *See, e.g.,* AC ¶¶132 (quoting Mr. Brock's statements that the Highland plant "need[s] to fire on wood" and "run full production on wood"); 135 (quoting Mr. Brock's statement that "four lines at 20 tons per hour is the guarantee," but the Highland plant only "had one of the lines up to that . . . [and] not for a long period of time.")

With regard to the four statements addressed in the Response,[20] Defendants' Brief clearly demonstrated the "use of linguistic clues like 'we expect' or 'we believe,' when combined with an explanatory description of the company's intention to thereby designate a statement as forward-looking generally should be sufficient to put the reader on notice that the company is making a forward-looking statement." *Slayton v. Am. Express Co.*, 604 F.3d 758, 769 (2d Cir. 2010). As shown in Defendants' Brief and explained in greater detail *infra* at Section II.A.1, the Reform Act safe harbor applies to these statements because the AC fails to plead facts showing the Defendants had actual knowledge their statements were false or misleading when made. *See* Def's Br. 15-16 (collecting cases holding that, where complaint failed to establish scienter, it likewise failed to allege facts showing actual knowledge of falsity of forward-looking statements). The Response leaves the reader in the dark as to what allegations in the AC allegedly support the notion the Defendants had actual knowledge these four statements were false or misleading when made. In conclusory fashion, the Response merely asserts the AC "alleged with particularity that Defendants had actual knowledge that these statements were false or misleading at the time they were made"[21] without specifically explaining what allegations correspond to which alleged forward-looking statements. But none of the cited paragraphs are the ones purportedly explaining the misleading nature of the preceding quoted statements in the AC,[22] nor are they within the portion of the AC purportedly identifying the statements at issue.[23] Consequently, the Response fails to stave off dismissal of the four statements it attempts to defend.

---

[20] *See* Def. Br. 14-15 (analyzing the four statements cited in AC ¶¶98, 114, 125, and 133, among others).
[21] *See* Resp. 18 (citing AC ¶¶9, 55, 58, 67-72, 162-163).
[22] *See, e.g.*, AC ¶¶104, 107, 116, 119, 123, 128, 139, 143, 151, 158.
[23] The AC section subtitled "Identification of Additional Materially False and Misleading Statements Issued During the Class Period" (pp. 28-61) appears to be the portion of the AC identifying the statements at issue.

Defendants' Brief established that many of the statements within the AC's vast quoted passages are also legally immaterial puffery.  Def. Br. 16-17.  As the *Hess v. Am. Physicians Capital, Inc.* case cited in the Response explains, such "[p]uffery statements are not actionable" because they "lack concrete information upon which investors may rely in making investment decisions."  No. 5:04-CV-31, 2005 U.S. Dist. LEXIS 1162, at *23-24 (W.D. Mich. Jan. 11, 2005) (dismissing statements that were merely generalized statements of corporate optimism).  Though Defendants' Brief cites numerous examples of such non-actionable rosy affirmations in the AC,[24] the Response only attempts to rebut paragraph 131 in the AC, thereby conceding the other puffery statements should be dismissed.  *See* Resp. 19.

Furthermore, even if it is assumed, *arguendo*, the one challenged statement in paragraph 131 was material—which it is not—the two purported "specific claim[s]" the Response alleges can be extracted from that puffing statement are both clearly statements of opinion that cannot support a claim.[25]  As a case cited in the Response confirms, a complaint must adequately plead facts supporting **actual knowledge** that opinion statements were false when made.  *See In re Ford*, 381 F. 3d at 572 (dismissing complaint where plaintiffs "did not allege facts that demonstrate the speaker did not believe the statements they made").  Once again, the Response fails to point to

---

[24] Def. Br. 16 (citing AC ¶¶105, 129, 131, 154).

[25] The Response characterizes that "[Mr.] Brock is making a **specific claim** that . . . [the] Company would not incur and [sic] further costs 'associated with completing [its] commitments to [its] customers with regards to production rates.'"  *Id.* at 19 (emphasis added).  But, Mr. Brock's actual statement is clearly couched as an opinion: "[T]he investment we have announced is the amount that **we believe** will cover the entire cost associated with completing our commitments to our customers with regards to production rates."  AC ¶131 (emphasis modified).  The Response also characterizes that Mr. Brock makes the "**specific claim** that the Company will be able to attract $100 million per year in pellet plant orders."  Resp. 19 (emphasis added).  Again, the actual statement is an opinion: "Including today's announced charge we will have invested approximately $31 million over seven years to get into what **we believe** is a $100 million per year business.  **We believe** that the investment is a good one for our Company."  AC ¶131 (emphasis modified).

anything in the AC where Defendants allegedly knew these statements themselves were false when made. The only statements the Response addresses in paragraph 131 are, therefore, non-actionable and should be dismissed along with the statements the Response failed to address at all (AC ¶¶105, 129, 154).

<blockquote>c.    *Opinion Statements Are Non-Actionable.*</blockquote>

Defendants' Brief demonstrated that the Supreme Court's decision in *Omnicare, Inc. v. Laborers Dist. Council Indus. Pension Fund* ("*Omnicare II*")[26] supports dismissal of claims based on opinions. Def. Br. 17-18. The Response turns the *Omnicare II* decision on its head in its unsuccessful attempt to sustain a claim. *See* Resp. 20-21.

*Omnicare II* held there could be no liability for opinion statements absent well-plead allegations that the "speaker did not hold the belief [that he or] she professed . . ." 135 S. Ct. at 1327. Because investors are "not allow[ed] to second-guess inherently subjective and uncertain assessments" of management, there can be no liability for "a sincere statement of pure opinion . . . regardless of whether an investor can ultimately prove the belief wrong." *Id*.

The Response nevertheless cites *Omnicare II* because that decision also acknowledged a statement of opinion may be actionable if it "omits material facts about the issuer's inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself . . ." *Id*. at 1329. To plead liability under this theory, a complaint must "identify particular (and material) facts going to the basis for [the] opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person regarding the statement fairly and in context." *Id*. at 1332; *see also* Resp. 21.

---

[26] 135 S. Ct. 1318 (2015).

Here, however, the Response does not identify any such "particular (and material) facts." Instead, the Response alleges in conclusory fashion that Defendants "omitted crucial adverse information that severity of the production issues precluded Astec from receiving future plant order [sic]."[27] *Id*. at 1333. The Response fails to explain what that "crucial adverse information" is or where it is plead in the AC. Neither the AC nor the Response point to any specific, undisclosed information purportedly known to the Defendants that rendered their opinion statements misleading.

At best, the AC offers flimsy CW allegations to suggest there was some indicia Astec would be unable to meet the production specifications at Highland by its contractual deadline.[28] *See, e.g.*, AC ¶¶83, 88. But, the AC does not explicitly allege the CWs held this opinion or disagreed with Defendants' statements on the subject at the time they were made. Even if it did, under *Omnicare II*, a contrary conclusion reached by a single "junior" employee would not render management's opinion statements misleading. 135 S. Ct. at 1329. A reasonable investor understands "opinions sometimes rest on competing facts," and the doubts or skepticism of one individual do not render the statements of others misleading "even if the minority opinion ultimately proved correct." *Id.; see also In re HomeBanc Corp. Sec. Litig*., 706 F. Supp. 2d 1336, 1350 (N.D. Ga. 2010) (no actionable statement where CW disagreed with defendant's statements, but complaint failed to allege that the defendant shared the CW's opinion about the statements);

---

[27] Resp. 21.

[28] The AC offers no CW allegations about the ***Hazlehurst plant***, nor does it describe similar internal reports regarding Hazlehurst that purportedly undermine the opinion statements about Hazlehurst specifically. Thus, the AC is deficient with regard to any statements related to the Hazlehurst plant. *See* AC ¶¶97-98, 101-102, 105, 110-111, 114, 117, 120-121, 125-126, 129-137, 140 -142, 145-148, 150, 154-155, 157.

*Tripp v. Indymac Fin. Inc.*, No. 07-1635, 2007 U.S. Dist. LEXIS 95445, at *9 (C.D. Cal. Nov. 29, 2007) (same).[29]

        4.       <u>Alleged Corporate Mismanagement Does Not State A Claim Under the Federal Securities Laws.</u>

As shown in Defendants' Brief, to the extent the AC's vague and conclusory allegations that the pellet plants suffered from "problems that prevented them from running at their promised operational or production capacity"[30] can be afforded any weight, they amount to nothing more than alleged "corporate mismanagement," which is not actionable under the federal securities laws. Def. Br. 18-19. The Response offers no response whatsoever to this well-established black-letter law and, therefore, concedes that mismanagement is not a viable theory of liability under the securities laws and the AC should be dismissed. *See id.* at 18-19 (collecting cases dismissing complaints based on mismanagement).

**B.     Because the AC Fails to Plead Scienter, The AC Should Be Dismissed.**

The AC fails to allege an actionable misstatement or omission as explained above, and, therefore, the inquiry is complete and the AC should be dismissed. *See id.* at 10-11 (collecting cases dismissed for failure to plead an actionable misstatement or omission). Additionally, however, the AC warrants dismissal for the separate and independent reason that the scienter allegations flunk the Reform Act's heightened pleading requirements.

As established in Defendants' Brief, the Reform Act requires the AC to state with particularity facts giving rise to a strong inference of scienter that is at least as compelling as any opposing inference of non-fraudulent intent. *Id.* at 19-20. Defendants' Brief established the AC

---

[29] Furthermore, for the reasons explained in greater detail *infra* at Section II.B., the existence of certain internal reports related to technical issues at one of the two wood pellet plants does not warrant a different conclusion.

[30] Resp. 2.

falls short of this steep hurdle to plead the requisite strong inference of scienter because (1) the allegations viewed holistically fail to allege a strong inference of scienter that is as compelling as the opposing inference of non-fraudulent intent; and (2) the AC fails to plead anything in support of the nine *Helwig*[31] factors identified by the Sixth Circuit as being "usually relevant to scienter." Def. Br. 20-25. The Response's tepid arguments cannot save the AC from dismissal.

First, the Response primarily bases its scienter argument on the allegation that "Brock and Swanson received internal reports detailing the extensive manufacturing problems at the Highland plant" that allegedly "contradicted Defendants' optimistic statements." Resp. 22-23. This allegation does not support a strong inference of scienter.

As an initial matter, there are no allegations in the AC (or, for that matter, in the Response) that **Mr. Silvious** received such reports, which is further support that Plaintiffs have abandoned their claims as to Mr. Silvious and he should be dismissed. *See supra* p. 3.

The allegation about internal reports also fails to support a strong inference of scienter as to **Mr. Swanson**. The only alleged misstatement in the AC attributed to Mr. Swanson is one from a magazine article wherein Mr. Swanson makes a general statement explaining why Astec chose to design its equipment on a modular basis, and states that Astec is working on wood pellet proposals. *See* AC ¶118. As explained in Defendants' Brief, the AC falls short of pleading with particularity why those statements were false or misleading when made. Def. Br. 13. In any event, the allegation about purported internal reports with respect to manufacturing issues at the Highland plant adds nothing to the scienter analysis related to Mr. Swanson's challenged statements on wholly different subjects (*i.e.*, equipment design and work on wood pellet proposals).

---

[31] These factors are set forth in *Helwig v. Vencor, Inc.*, 251 F.3d 540 (6th Cir. 2001).

Accordingly, the references to Mr. Swanson's knowledge about alleged manufacturing issues at the Highland plant fail to bolster the AC's claim against him and he should be dismissed.

In addition, the AC's allegation concerning internal reports about manufacturing issues at the Highland plant does not support scienter as to the alleged misstatements or omissions by Mr. Brock regarding the **Hazlehurst** plant.[32] Even if the AC included allegations that these reports were received by Mr. Brock **and** the reports indisputably contradicted his public statements— which they do not—this allegation would have no bearing on Mr. Brock's scienter as to his statements about the wholly different Hazlehurst wood pellet plant.

As to Mr. Brock's knowledge of issues at Highland, parsing through all the conclusory (and uncited) allegations in the Response, it is clear the only allegations in the Response are based on an unnamed confidential source employed as a consultant at Highland for just four months, which are properly discounted.[33] This CW alleges Mr. Brock: (1) joined meetings with Highland personnel to discuss production targets a few times a week;[34] (2) visited the Highland plant for a tour in April 2018;[35] and (3) was given the Material Leakage Memo.[36]

These allegations are insufficient to plead the requisite strong inference of scienter. The AC cannot sustain claims against Mr. Brock based on allegations from this CW, who was not an Astec or even a Highland employee. The AC fails to identify specifically what Mr. Brock purportedly knew based on these meetings, the tour, and his receipt of the Material Leakage Memo. "Courts have rejected such general allegations that the receipt of reports or the access to

---

[32] *See, e.g.,* AC ¶¶97-98, 101-102, 105, 110-111, 114, 117, 120-121, 125-126, 129-137, 140 -142, 145-148, 150, 154-155, 157.

[33] *See* Def. Br. 22. Any allegations related to statements before or after the CWs' tenure should be afforded no weight. *Id.*

[34] Resp. 22; AC ¶70.

[35] Resp. 23; AC ¶91.

[36] Resp. 23; AC ¶85.

information establishes a strong inference of scienter." *Huntington*, 674 F. Supp. 2d at 971; *see also Gruhn v. Tween Brands, Inc*., No. 2:07-cv-852, 2009 U.S. Dist. LEXIS 47853, at *23-24 (S.D. Ohio June 2, 2009) (allegations that Defendants "could regularly track sales data contradicting the targeted forecasts, accompanied by a general assertion about what plaintiffs think the data showed, [were] insufficient to plead scienter without hard numbers or other specific information"); *In re Kindred Healthcare, Inc. Sec. Litig*., 299 F. Supp. 2d 724, 740 (W.D. Ky. 2004) (access to financial data through sophisticated information technology did not permit an inference that defendants knew that their financial reserves were insufficient). "Mere access to contradictory information . . . is not enough to show deliberate recklessness." *In re Wet Seal, Inc. Sec. Litig*., 518 F. Supp. 2d 1148, 1175-76 (CD. Cal. 2007) (finding allegations that defendants had access to real time reports allegedly showing the company's deteriorating financial condition were insufficient where the complaint did not allege specifically what the defendants learned from the reports that was inconsistent with their public statements).

Second, without citing any legal authority, the Response attempts to resuscitate its scienter allegations based on Mr. Brock's stock sales. The lack of sales by Messrs. Silvious and Swanson, as well as the percentage of total stock sold by Mr. Brock, negate any inference of scienter. *See* Def. Br. 23-24. The Response does not attempt to distinguish any of the apposite legal authority cited in Defendants' Brief—or cite a single contrary case—in support of its flawed position. Merely repeating the assertion that Mr. Brock's sale of inherited stock supports scienter does not make it so.

Finally, the Response baldly asserts the AC "pleads three other Helwig factors." Resp. 24-25.[37] As explained in Defendants' Brief and in greater detail *supra* Section II.A., in light of the AC's failure to identify specific misstatements/omissions, Factor 3 regarding temporal proximity between purported misstatements and the disclosure of inconsistent information has not been plead. Def. Br. 25. The Response does not specifically address Factor 6 ("disregard of the most current factual information before making statements") by identifying any alleged current factual information that was purportedly disregarded. *See* Resp. 24-25. Nevertheless, Factor 6 cuts against any scienter because, as explained *supra* Section II.A. and in Defendants' Brief, adverse information affecting the wood pellet business was timely disclosed as such issues arose. Def. Br. 25. In support of its argument regarding Factor 9 ("the self-interested motivation of defendants in the form of saving their salaries or jobs"), the Response raises for the first time the allegation that "Brock was forced out of his job shortly after the Company finally acknowledge [sic] the collapse of its pellet plant business." Resp. 25. However, this allegation is notably absent from the AC, and thus is not properly considered on the motion to dismiss. *See, e.g.*, *Laporte*, 2019 U.S. Dist. LEXIS 27679, at *8-9; *Orea Energy Grp.*, 2009 U.S. Dist. LEXIS 93256, at *8-9.[38]

The Response cites no additional allegations in the AC or legal authority supporting the remaining *Helwig* factors (*i.e.*, Factors 4, 5, 7, and 8). The dearth of allegations going to any of

---

[37] The Response claims to have addressed five of the nine *Helwig* factors. Two of these—Factor 1 (insider trading at a suspicious time or in an unusual amount) and Factor 2 (divergence between internal reports and external statements on the same subject)—have already been addressed herein *supra* at pp. 15-18. The arguments in the "Other Helwig Factors" section of the Response appear to correspond to *Helwig* Factors 3, 6, and 9. Resp. 24-25.

[38] Given that Mr. Brock's resignation was announced in January 2019, months before the AC was filed in August 2019, there was ample time for allegations about Mr. Brock's departure to be incorporated into the AC. Presumably, for his own strategic reasons, Plaintiff chose not to do so. Because a "motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint, not additional facts that are set forth in response to a motion to dismiss" the Court "cannot consider th[is] new 'fact[]' for purposes of Defendants' motion." *El-Hallani v. Huntington Nat'l Bank*, No. 13-cv-12983, 2014 U.S. Dist. LEXIS 72887, at *19-20 (E.D. Mich. May 29, 2014), *rev'd on other grounds*, 623 F. App'x 730 (6th Cir. 2015).

the *Helwig* factors further supports dismissal. *Goodyear*, 436 F. Supp. 2d. at 900 (explaining that "the absence of these factors indicates the absence of scienter").

### C.     The Section 20(a) Claim Warrants Dismissal.

Because the AC fails to allege a primary predicate violation of Section 10(b) or Rule 10b-5 adequately, the Section 20(a) claim for control-person liability must also be dismissed.  Def. Br. 4, n.10.

### D.     The Court Should Dismiss The AC With Prejudice.

In cursory fashion, the Response relegates to a footnote its vague "request for leave to amend the [AC] to cure any pleading defect" in the event the Court "conclude[s] that any of the allegations . . . are not sufficient to support a claim."  Resp. 25 n.9.  Plaintiff's request to amend should be denied.  As the Sixth Circuit held, "the purpose of the [Reform Act] would be frustrated if district courts were required to allow repeated amendments to complaints filed under the [Reform Act]."  *Miller*, 346 F.3d at 692.  A court within this Circuit further explained:

> If the Reform Act is read to mean that when a complaint is filed under the Reform Act, a judge must scrutinize the complaint and advise the pleader where the complaint is deficient, and then give the pleader an opportunity to amend the complaint, and when that is done, the judge must again, perhaps like a law school professor, advise the pleader that he or she has not passed the test, and if not, give the pleader another opportunity to meet the heightened pleading requirements . . . then the Reform Act is meaningless . . . and what Congress did when it passed th[e Reform Act] over a presidential veto, means nothing.

*In re Champion Enters.*, 145 F. Supp. 2d at 872 (refusing to grant leave to amend complaint alleging securities fraud).

Moreover, this "request for leave to amend [made] almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss" is not a proper motion to amend.  *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (affirming the district court's refusal to allow amendment where plaintiffs did not present an adequate motion to

amend attaching the proposed amended complaint) (internal citations and quotations omitted); *Ernst & Young, LLP*, 622 F.3d at 486 (same); *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 700 (6th Cir. 2004) (same). The Sixth Circuit has rejected bare requests in opposition to motions to dismiss like the throwaway footnote in the Response because plaintiffs are "not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 784 (6th Cir. 2000), *cert. denied*, 531 U.S. 1145, 148 L. Ed. 2d 958, 121 S. Ct. 1082 (2001).[39]

The only case the Response cites in support of its half-hearted request for leave to amend is *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). *See* Resp. 25 n.9. But, as the *Miller* court made clear, *Morse* is inapposite because "there was no discussion of the heightened pleading requirements of the [Reform Act], or even of the [Reform Act] generally." 346 F. 3d at 692. Accordingly, "[i]n light of those requirements . . . it is correct to interpret the [Reform Act] as restricting the ability of plaintiffs to amend their complaint, and thus as limiting the scope of Rule 15(a) of the Federal Rules of Civil Procedure." *Id.* The Court should dismiss the AC with prejudice and not grant leave to amend.

## III. CONCLUSION

For the foregoing reasons, and for the reasons explained further in Defendants' Brief, Defendants respectfully request that their Motion to Dismiss be granted and that the AC be dismissed with prejudice.

---

[39] Additionally, "[m]any courts have denied leave to amend" where, as here, a complaint alleges "nothing more than 'fraud by hindsight.'" *Albert Fadem Tr. v. Am. Elec. Power Co.*, 334 F. Supp. 2d 985, 1029 (S.D. Ohio 2004); *see also supra* Section II.A.2; Def. Br. 21-22.

This 14th day of February, 2020.

**ALSTON & BIRD**

/s/ John A. Jordak, Jr.
John A. Jordak, Jr. *(admitted pro hac vice)*
john.jordak@alston.com
Elizabeth Gingold Clark *(admitted pro hac vice)*
elizabeth.clark@alston.com
Courtney E. Quirós *(admitted pro hac vice)*
courtney.quiros@alston.com
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

**CHAMBLISS, BAHNER & STOPHEL, P.C.**

Richard W. Bethea
rbethea@chamblisslaw.com
John G. Jackson
jjackson@chamblisslaw.com
605 Chestnut Street, Suite 1700
Chattanooga, Tennessee 37450
Telephone: (423) 756-3000

*Attorneys for Defendants Astec Industries, Inc., Benjamin G. Brock, David C. Silvious, and Malcolm Swanson*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2020, I electronically filed the foregoing **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing upon all Counsel of Record.

**ALSTON & BIRD**


By: /s/ John A. Jordak, Jr.

John A. Jordak, Jr. (*admitted pro hac vice*)
Georgia Bar Number 404250