# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

CITY OF TAYLOR GENERAL
EMPLOYEES RETIREMENT SYSTEM,
Individually and on Behalf of All Others
Similarly Situated,

          Plaintiff,

          vs.

ASTEC INDUSTRIES, INC., BENJAMIN G.
BROCK and DAVID C. SILVIOUS,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:19-cv-00024-CEA-CHS

CLASS ACTION

Judge Charles E. Atchley

Magistrate Judge Christopher H. Steger

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
## OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT................................................................................................................................... 1

I.    Johnson Is An Adequate Class Representative .................................................................. 1

   A.   Defendants' Attacks on Johnson's Knowledge and Control Fail .............................. 1

   B.   Johnson Fulfilled His Discovery Obligations ................................................. 5

   C.   Johnson's Post-Class Period Monitoring of his Astec Stock Is Irrelevant ............... 6

II.   Johnson is Typical of the Investors He Seeks To Represent ........................................ 7

III.  Defendants Do Not Credibly Challenge Market Efficiency ......................................... 9

IV.  The *Affiliated Ute* Presumption Of Reliance Applies.................................................... 15

CONCLUSION ............................................................................................................................. 15

Case 1:19-cv-00024-CEA-CHS   Document 110   Filed 02/12/24   Page 2 of 22
PageID #: 2092

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ................................................................................................ 15, 16

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ........................................................................................................ 9

*Bell v. Ascendant Solutions, Inc.*,
2004 U.S. Dist. LEXIS 12321 (N.D. Tex. July 1, 2004) ............................................. 12

*Bond v. Clover Health Invs., Corp.*,
2023 WL 1999859 (M.D. Tenn. Feb. 14, 2023) ............................................. 5, 12, 14

*Burges v. Bancorpsouth, Inc.*,
2017 WL 2772122 (M.D. Tenn. June 26, 2017) .......................................................... 16

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) .............................................................................. 9, 10

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
310 F.R.D. 69 (S.D.N.Y. 2015) ................................................................................... 13

*Cassell v. Vanderbilt Univ.*,
2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) ........................................................... 2

*City of Goodlettsville v. Priceline.com, Inc.*,
267 F.R.D. 523 (M.D. Tenn. 2010) ............................................................................... 2

*City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*,
29 F.4th 802 (6th Cir. 2022) .................................................................................. 15, 16

*Cosby v. KPMG, LLP*,
2020 WL 3548379 (E.D. Tenn. June 29, 2020) .......................................................... 16

*Cosby v. KPMG, LLP*,
2021 WL 1828114 (E.D. Tenn. May 7, 2021) ....................................................... 13, 14

*Davis v. Magna Int'l of Am., Inc.*,
No. 20-11060, 2024 WL 280645 (E.D. Mich. Jan. 25, 2024) ...................................... 4

*Dougherty v. Esperion Therapeutics, Inc.*,
No. 16-10089, 2020 WL 6793326 (E.D. Mich. Nov. 19, 2020) ................................. 14

Case 1:19-cv-00024-CEA-CHS   Document 110   Filed 02/12/24   Page 3 of 22
PageID #: 2093

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)................................................................................................. 14

*Första AP-Fonden v. St. Jude Med., Inc.*,
312 F.R.D. 511 (D. Minn. 2015)............................................................................. 11

*In re Accredo Health, Inc. Sec. Litig.*,
No. 03-2216 DP, 2006 WL 1716910 (W.D. Tenn. Apr. 19, 2006) ......................... 14

*In re Am. Med. Sys., Inc.*,
75 F.3d 1069 (6th Cir. 1996) ................................................................................... 9

*In re CoreCivic, Inc.*,
2019 WL 4197586 (6th Cir. Aug. 23, 2019)........................................................... 12

*In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*,
281 F.R.D. 174 (S.D.N.Y. 2012) ............................................................................ 13

*In re JPMorgan Chase & Co. Sec. Litig.*,
2015 WL 10433433 (S.D.N.Y. Sept. 29, 2015)...................................................... 15

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
571 F. Supp. 2d 1315 (N.D. Ga. 2007) .................................................................. 11

*In re Zoom Sec. Litig.*,
2021 WL 1375854 (N.D. Cal. Apr. 12, 2021) .......................................................... 8

*Jefferson v. Gen. Motors, LLC*,
344 F.R.D. 175 (W.D. Tenn. 2023) .......................................................................... 5

*Kline v. Wolf*,
88 F.R.D. 696 (S.D.N.Y. 1981) ................................................................................ 7

*Krogman v. Sterritt*,
202 F.R.D. 467 (N.D. Tex. 2001) ............................................................................. 9

*Martinek v. AmTrust Fin. Servs., Inc.*,
2022 WL 326320 n.9 (S.D.N.Y. Feb. 3, 2022)....................................................... 13

*McDaniel v. Cnty. of Schenectady*,
2005 WL 1745566 (N.D.N.Y. July 21, 2005) .......................................................... 6

*McIntire v. China MediaExpress Holdings, Inc.*,
38 F. Supp. 3d 415 (S.D.N.Y. 2014)....................................................................... 13

Case 1:19-cv-00024-CEA-CHS   Document 110   Filed 02/12/24   Page 4 of 22
PageID #: 2094

*Mell v. Anthem, Inc.*,
   264 F.R.D. 312 (S.D. Ohio 2009) ................................................................. 5

*Monroe Cnty. Employees' Ret. Sys. v. S. Co.*,
   332 F.R.D. 370 (N.D. Ga. 2019) ................................................................ 11

*Ogden v. AmeriCredit Corp.*,
   225 F.R.D. 529 (N.D. Tex. 2005) ................................................................ 6

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
   830 F.3d 376 (6th Cir. 2016) .................................................................... 12

*Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*,
   2018 U.S. Dist. LEXIS 137229 (N.D. Ohio Aug. 14, 2018) ..................................... 12

*Rocco v. Nam Tai Elecs., Inc.*,
   245 F.R.D. 131 (S.D.N.Y. 2007) ................................................................ 6

*Shiring v. Tier Techs., Inc.*,
   244 F.R.D. 307 (E.D. Va. 2007) ................................................................. 6

*St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*,
   2022 WL 4598044 (M.D. Tenn. Sept. 30, 2022) ................................................. 16

*Taylor v. Unumprovident Corp.*,
   2005 WL 3448052 (E.D. Tenn. Dec. 14, 2005) .................................................. 10

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   2016 WL 4138613 (E.D. Pa. Aug. 4, 2016) ..................................................... 11

*Weiner v. Tivity Health, Inc.*,
   334 F.R.D. 123 (M.D. Tenn. 2020) ......................................................... 11, 14

*Willis v. Big Lots, Inc.*,
   242 F. Supp. 3d 634 (S.D. Ohio 2017) ...................................................... 4, 12

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) .................................................................... 2

**Rules**

Fed. R. Civ. P. 23 ..................................................................... 1, 2, 5

Defendants' opposition ("Opposition" or "Opp.", Dkt. No. 106) to Plaintiff's motion for class certification ("Motion" or "Mot.", Dkt. No. 20) all but concedes that the Motion satisfies virtually all of the requirements for class certification of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Defendants do not contest numerosity or commonality, nor do they contest that class certification represents a superior vehicle to resolve investors' claims against Defendants. Plaintiffs do not challenge that the Rosen Law Firm would adequately represent the Class as Class Counsel. Finally, Defendants do not disagree that the Plaintiffs meet four of the five *Cammer* factors or all three *Krogman* factors – the factors courts use to assess market efficiency.

For the reasons set forth herein, Plaintiff respectfully requests that his Motion for Class Certification be granted in its entirety.

**ARGUMENT**

**I.      Johnson Is An Adequate Class Representative**

Plaintiff established in the Opening Brief that proposed Class Representative Lynn Johnson will "fairly and adequately protect the interests of the class," (Fed. R. Civ. P. 23(a)(4)), because he has "common interests with unnamed members of the class" and will "vigorously prosecute the interests of the class through qualified counsel." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012); *see* Mot. at 10-12. Defendants fail to undermine Johnson's adequacy.

**A.      Defendants' Attacks on Johnson's Knowledge and Control Fail**

Defendants cherry-pick portions of Mr. Johnson's testimony out of context in an attempt to show Johnson lacks the requisite knowledge of this litigation to serve as Class Representative. Opp. at 14-16. Defendants ignore Mr. Johnson's testimony demonstrating his understanding of the facts of the case and the role of a class representative. "[I]t is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class

certification unless his ignorance unduly impacts his ability to vigorously prosecute the action," and "the burden in demonstrating that the class representative meets this standard is not difficult." *Cassell v. Vanderbilt Univ.*, 2018 WL 5264640, at \*5–6 (M.D. Tenn. Oct. 23, 2018) (quoting *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 531 (M.D. Tenn. 2010)). Mr. Johnson meets that standard.

Mr. Johnson's deposition testimony demonstrates he has sufficient knowledge of the litigation to vigorously prosecute this action. Johnson accurately described Plaintiff's theory of the case, stating that Astec "had gotten into the business of manufacturing wooden -- I'll call them pellets of some sort -- and building the plants to do so. And their manufacturing did not go well at either plant, but that information was kept from the public by the people at Astec, including CEO Brock. And when the information did come out about those two wood plants, the price went down." Transcript of January 12, 2024 Deposition of Lynn Johnson ("Johnson Tr."), attached as Exhibit 1 to the Kim Declaration, 64:5-14; *see also id.* 65:4-6 (stating he believes the case is meritorious "because Astec did not disclose the problems they were having in those two plants"). He correctly identified (i) the Defendants as Astec and Ben Brock (*id*. 65:10-14); (ii) the venue as a federal district court in Tennessee (*id*. 65:16); and (iii) the cause of action as fraud (*id*. 65:19). Mr. Johnson defined the Class Period as July 2016 to October 2018 (*id*. 67:15-16) and knew that the class had not yet been certified (*id*. 67:10). Johnson also demonstrated a competent understanding of class actions (Johnson Tr. 66:16-19), his role as Lead Plaintiff (*id*. 76:2-77:2 , and the role of a class representative (*id*. 80:9-81:9). He understood that his fiduciary duty "means that he must put the interest of the class ahead of his own." *Id*. 77:1-2.

Ignoring Johnson's repeated demonstrations of his knowledge, Defendants take snippets of his deposition transcript in a misguided attempt to paint him as hopelessly ignorant. For

example, Defendants claim that Johnson is inadequate because he "incorrectly" said there had been three complaints filed in this action. Opp. at 14. But Mr. Johnson was correct, in a sense, that there have been three complaints filed in this action: the initial complaint (Dkt. No. 1), the amended complaint (Dkt. No. 56), and the proposed second amended complaint (Dtk. No. 82-2). Defendants assert that Johnson did not know the precise date that Astec stopped producing wood pellet plants. Opp. at 14. Defendants omit that Mr. Johnson did respond, stating they stopped in 2017 or 2018. Again, he is not wrong. Astec announced in October 2017 that it would no longer construct pellet plants and would instead supply equipment for the construction of pellet plants. Amended Complaint ¶ 133. Then, in July 2018, Astec announced that it would also no longer act as a "participating lender on wood pellet projects" and would only "offer for sale after-market parts and service support for wood pellet plants." *Id*. ¶ 152.

Defendants also contend – again, based on cherry-picked pieces of testimony – that Mr. Johnson has not demonstrated sufficient control over this action. Opp. at 15. Defendants ignore that Mr. Johnson testified he reviewed the Amended Complaint and the proposed second amended complaint (Johnson Tr. 68:2-14; 69:6-8; 94:10-14); responded to Defendants' 47 requests for production (*id*. 134:10-14); responded to Defendants' twelve interrogatories to Lead Plaintiff (*id*. 146:11-19); and met with counsel twice to prepare for his deposition (*id*. 16:2-17:8). Instead of confronting these facts, Defendants quibble with Mr. Johnson's testimony that he couldn't remember the precise number of times he has met with counsel during the course of this litigation. Opp. at 15. Defendants fail to show that Mr. Johnson has abdicated control of the case to his attorneys. See *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 650–51 (S.D. Ohio 2017) ("[I]n securities cases ... where the class is represented by competent and zealous counsel, class certification should not be denied simply because of a perceived lack of subjective interest on the

3

part of the named plaintiffs unless their participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case.").

Mr. Johnson's deposition testimony, coupled with his sworn declaration describing his continuing commitment to this litigation, demonstrate his adequacy to serve as Class Representative. Courts in this Circuit have repeatedly found proposed class representatives to be adequate in similar situations. *See Davis v. Magna Int'l of Am., Inc.*, No. 20-11060, 2024 WL 280645, at *3 (E.D. Mich. Jan. 25, 2024) (finding adequacy where proposed class representatives (i) were "able to explain the role of a class representative, the interests of the class, and the basis for class claims;" (ii) "identified the class size, definition" and "testified that he was in regular contact with counsel regarding the case and understands the role of class representative;" and (iii) testified to have prepared very little prior to his deposition," but "still accurately identified key elements of the case."); *Mell v. Anthem, Inc.*, 264 F.R.D. 312, 319 (S.D. Ohio 2009) ("The Court further notes that Defendants attacked the ability of the proposed individual representatives to adequately represent the class, in part by taking portions of deposition testimony out of context. The Court accepts Plaintiffs' position that Schenck, Espel, and Matacia have sufficient knowledge about this litigation to satisfy the adequacy requirements of Rule 23(a)(4).");

Similarly, courts in this Circuit have repeatedly rejected adequacy arguments made by the defendants based on cherry-picked pieces of testimony. See *Jefferson v. Gen. Motors, LLC*, 344 F.R.D. 175, 193–94 (W.D. Tenn. 2023), *modified on reconsideration,* 2023 WL 5662596 (W.D. Tenn. Aug. 31, 2023) ("Defendant relies on a few select statements from Plaintiff's deposition to argue that she has insufficient memory to demonstrate control of the litigation or has ceded control to her counsel," but "Plaintiff made other statements in her deposition which demonstrate adequate memory and control of the litigation."); *Bond v. Clover Health Invs., Corp.*, 2023 WL 1999859, at

4

*8 (M.D. Tenn. Feb. 14, 2023) ("The defendants' briefing in support of this argument relies on selectively quoted snippets of testimony that do not, in the broader context of the deposition, fairly represent Tremblay's degree of familiarity with this case. In the plaintiffs' Reply, they direct the court to other portions of Tremblay's testimony that make it clear that he did, in fact, understand the basic, significant contours of this litigation to the degree ordinarily required of an active and involved plaintiff.").  Contrary to Defendants' assertions, "securities law is complex, and there is nothing problematic or even surprising about an individual lay party's being clumsy in his discussion of the details of his case during a discovery deposition." *Id.*

Tellingly, Defendants fail to cite even a *single* case from a court in this Circuit finding a proposed class representative inadequate.[1]

### B.      Johnson Fulfilled His Discovery Obligations

Defendants claim that Mr. Johnson is inadequate because his "discovery efforts are not suggestive of an active interest in the litigation. Defendants' claim is baseless. Mr. Johnson timely responded to Defendants' 47 requests for production and 12 interrogatories. Plaintiff's counsel worked with Mr. Johnson to locate likely sources of responsive information, and collected all of Mr. Johnson's work and personal emails. Defendants insisted that Mr. Johnson run 47 different search strings to identify potentially responsive documents. Despite the fact that the vast majority of Defendants' search strings were irrelevant, Mr. Johnson agreed. Plaintiff's counsel uploaded all

---

[1] Apparently unable to find any cases from this Circuit that support their position, Defendants instead rely on decades-old, out-of-circuit cases that are extreme in both their fact patterns and their holdings. Opp. at 15-16. These cases are easily distinguishable. *See, e.g., Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 310, 316-17 (E.D. Va. 2007) (plaintiff filed false certifications, gained non-public knowledge from interviewing with defendant company before purchasing stock, and "opt[ed] not to participate in the drafting of the [complaint]"); *In re Kosmos Energy Ltd. Sec. Litig.*, 299 F.R.D. 133, 141 (N.D. Tex. 2014) (plaintiff "was unable to recognize the names of certain defendants, ... [and] did not know whether the [company's] stock price dropped, or if it did, what might have caused the drop").

of Mr. Johnson's emails to a Relativity review database, ran all 47 search strings to identify potentially responsive documents, and reviewed each and every resulting document for responsiveness.[2]

Unsurprisingly, Mr. Johnson had very few documents about Astec—a company with which he made a single investment in 2016. Mr. Johnson produced all responsive documents to Defendants, and Defendants asked him about each of the documents at his deposition. Defendants never moved to compel discovery from Mr. Johnson, nor did they need to. Accordingly, the decades-old, out-of-circuit cases cited by Defendants are inapposite. *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131, 134 (S.D.N.Y. 2007) (plaintiff refused to produce trading records until compelled by court); *McDaniel v. Cnty. of Schenectady*, 2005 WL 1745566, at *3 (N.D.N.Y. July 21, 2005) (plaintiff failed to appear at any of three court-ordered depositions and could not be located by plaintiff's counsel); *Kline v. Wolf*, 88 F.R.D. 696, 700 (S.D.N.Y. 1981), *aff'd,* 702 F.2d 400 (2d Cir. 1983) (plaintiff refused to answer relevant, non-privileged questions at her deposition).

### C.     Johnson's Post-Class Period Monitoring of his Astec Stock Is Irrelevant

Desperately grasping at straws, Defendants contend that Mr. Johnson is inadequate because he sent an email to his twin brother eleven months after the Class Period stating that he had not recently checked Astec's stock price. Opp. at 16-17. As Defendants know, Astec's stock price eleven months after the Class Period is entirely irrelevant to the claims in this litigation or Mr. Johnson's ability to represent the proposed class. In a desperate attempt to connect this email to this Motion, Defendants make up testimony out of whole cloth by falsely stating that Mr. Johnson "explained to his own twin brother that he had all but forgotten that he even owned Astec stock."

---

[2] Plaintiff agreed to run more search strings than Defendants agreed to run, which is extremely unusual for a securities class action.

Mr. Johnson's email said no such thing, nor did he testify to that. Further, contrary to Defendants' assertions, Mr. Johnson's frequency in monitoring the price of Astec's stock eleven months after the Class Period is irrelevant to the materiality of Mr. Johnson's losses due to Astec's fraud during the Class Period.

## II.    <u>Johnson is Typical of the Investors He Seeks To Represent</u>

Defendants assert that Mr. Johnson does not satisfy the typicality requirement because his interests are not aligned with the class's interests. Opp. at 19-22. Specifically, Defendants contend that Dr. Werner's proposed damages methodology chose to apply the PSLRA's 90-day lookback provision in a way that benefits Mr. Johnson at the expense of other class members, and that this conflict defeats typicality. Defendants misunderstand the law, and the "scenarios" they list demonstrate the opposite of the point they attempt to make.

Defendants' typicality argument is based on three assumptions, all of which are wrong. First, Defendants contend that *plaintiffs* can choose whether to apply the PSLRA's 90-day lookback to (i) only the final corrective disclosure; or (ii) each corrective disclosure, including partially corrective disclosures. Opp. at 20-21. Neither Dr. Werner nor Ms. Allen is aware of any federal court ever applying the PSLRA's 90-day lookback to partially corrective disclosures at the class certification stage, at the summary judgment stage, at trial, or in approving a plan of allocation as part of a settlement. Defendants do not cite any such case, nor can Plaintiff's counsel locate one. However, even assuming that PSLRA's lookback provision can be read to apply to partially corrective disclosures, any such determination would be made by the ***Court***—not by Plaintiff. Indeed, the only case upon which Defendants rely explicitly states that "the PSLRA leaves it entirely to 'the determination of the court,' and the Court has broad discretion to 'select accounting methods' for making this determination." *In re Zoom Sec. Litig.*, 2021 WL 1375854,

at *1 (N.D. Cal. Apr. 12, 2021) (denying motion to reconsider appointment of lead plaintiff). The proper statutory interpretation of the PSLRA is a legal issue for the Court – not for plaintiffs – and thus cannot represent a conflict of interest for the class.

Second, Defendants contend that Dr. Werner decided to apply the PSLRA's lookback provision only to the final corrective disclosure to benefit Mr. Johnson at the expense of other class members. Opp. at 20 ("In Plaintiff's view, each class member's damages are limited to the difference between the price at which they purchased their Astec stock and the mean trading price during the 90-day period following the final alleged corrective disclosure date on October 23, 2018."). Defendants refer to this application of the 90-day lookback as "Scenario 1" and the theoretical application of the lookback provision to each corrective disclosure as "Scenario 2." In each of the two scenarios, Class Member A is intended to represent Mr. Johnson, who purchased his Astec shares in November 2016 and sold them after the end of the Class Period. Defendants' contention is non-sensical. Defendants claim that Mr. Johnson "would prefer and have a larger economic interest in Scenario 2," but Defendants also claim that Plaintiff's damages methodology chose Scenario 1, not Scenario 2. Further, Mr. Johnson's damages would be exactly the same in either Scenario 1 or Scenario 2.

Third, and most importantly, the proposed damages model is not a typicality issue. The claims and defenses of the proposed class representatives are typical if they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). Plaintiff's claims and legal theories are typical of the Class: he purchased Astec common stock during the Class Period and suffered losses when the truth about Astec's wood pellet plant business was disclosed. The Court's decision of how to apply the PSLRA's

8

lookback period would apply to all class members and would not conflict with Plaintiff's theory of liability. Accordingly, the damages model satisfies *Comcast's* modest requirements.

### III. Defendants Do Not Credibly Challenge Market Efficiency

Plaintiff's Opening Brief demonstrated that Astec's stock traded in an efficient market during the Class Period, which entitles Plaintiff to a presumption of reliance under the "fraud-on-the-market" theory espoused in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Mot. at 13. To determine whether a market is efficient, courts in the Sixth Circuit and around the country look to the five factors derived from *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) (the "*Cammer* factors") and the three additional factors described in three other factors identified in *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001) (the "*Krogman* factors"). Mot. at 14, 19. Plaintiff showed that each of the five *Cammer* factors is met: (1) high average trading volume for Astec's securities; (2) a substantial number of analysts that follow Clover; (3) Astec's listing on the NASDAQ exchange and the existence of market makers for Astec securities; (4) Astec's ability to file SEC Form S-3 Registration Statements; and (5) a "cause and effect" relationship between news and movement in the price of Astec's securities. Mot. at 14-18. Additionally, Plaintiff demonstrated that each of the Krogman factors is met: (1) the company's market capitalization; (2) the stock's bid-ask spread; and (3) the stock's float. Mot. at 19-20.

Defendants do not even mention – much less dispute – that Plaintiff meets all three *Krogman* factors or the first four *Cammer* factors. Those factors should be deemed met. *See, e.g.*, *Taylor v. Unumprovident Corp.*, 2005 WL 3448052, at *2 (E.D. Tenn. Dec. 14, 2005) ("A responding party waives any opposition to an opponent's argument in one of two ways: either by expressly conceding a point or by failing to respond to opponent's argument.").

9

Defendants only dispute Plaintiffs' showing of the fifth *Cammer* factor: whether empirical evidence demonstrates "a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price." *Cammer*, 711 F. Supp. at 1287; see Opp. at. 4-11. Defendants claim that Plaintiff fails to meet the fifth *Cammer* factor and that a failure to meet the fifth Cammer factor means that Plaintiff has failed to demonstrate market efficiency—regardless of whether the other *Cammer* factors and *Krogman* factors weigh towards market efficiency. *See* Opp. at 11. Defendants do not state – and Ms. Allen does not opine – that the market for Astec securities was *inefficient*. Nor did Ms. Allen conduct her own event study to determine market efficiency.

Instead, Defendants urge the Court to disregard the two event studies Dr. Werner conducted demonstrating market efficiency: (i) an event study focusing on allegation-related information events during the Class Period (the "Allegation Study"); and (ii) a series of collective event studies comparing the frequency of stock price reactions between news days and lesser or non-news days (the "News Studies"). *See* Mot. at 18; Werner Report, at ¶¶42-104. Generally, there "is no reason to burden the court with review of an event study and the opposing expert's attack of it," unless "defendants present evidence of lack of price impact or that the market was inefficient. *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 134 (M.D. Tenn. 2020).[3] Regardless, Defendants' attacks on Dr. Werner's event studies are without merit, and their attempt to refute market efficiency fails.

---

[3] *See also In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1340 (N.D. Ga. 2007) (Where a defendant's expert "does not opine that the market **. . .** was not efficient **. . .** , the Court affords his affidavit little weight."); *Monroe Cnty. Employees' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 387 (N.D. Ga. 2019); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2016 WL 4138613, at *13 (E.D. Pa. Aug. 4, 2016) (expert did not "tr[y] to show that the market for DFC Global stock was inefficient."); *cf. Första AP-Fonden v. St. Jude Med., Inc.*, 312 F.R.D. 511, 521 (D. Minn. 2015) ("Notably, Defendants' expert did not opine that Dr. Tabak's analyses proved inefficiency").

First, Defendants argue the Allegation Study is "unscientific" because it tests whether the market responded efficiently to the alleged corrective disclosures. Opp. at 5-7. To the contrary, the dates Dr. Werner selected are important and valuation-relevant news days that are ideal candidates for a market efficiency event study. *See* Rebuttal Declaration of Dr. Adam Werner, dated February 12, 2024, attached as Exhibit 2 to the Kim Decl. ("Werner Rebuttal"), at ¶18. These are dates on which Astec disseminated information directly related to its wood pellet plant business that changed the total mix of information for market participants when it was disclosed—an efficient market should be expected to react to this information. *Id.*[4]

Second, Defendants assert that the Allegation Study should have instead only looked at days on which Defendants are alleged to have made material misstatements or omissions. Opp. at 6-7. But it would be illogical to expect an efficient market to respond significantly to Defendants' statements that allegedly omitted important information about the pellet plants from investors. Werner Rebuttal, at ¶¶30-31. A misrepresentation that the Company's business is continuing to perform as anticipated should not be expected to cause any observable price reaction because it merely maintains the price at an inflated level rather than raises the price. *Id.*[5] The "'price maintenance' theory of securities fraud [] is premised on the common-sense—if not outright undeniable—fact that 'a misrepresentation can have a price impact not only by raising a stock's

---

[4] Ms. Allen's statement that looking at corrective disclosures "appears to be an example of data snooping" is baseless. Opp. at 6-7. An alleged corrective disclosure does not necessarily correspond to a statistically significant price movement. Werner Rebuttal, attached as Exhibit 2 to the Kim declaration, at ¶¶17-20.

[5] In her deposition, Ms. Allen conceded "you might not see any reaction" if a company represents that there was "*no risk*" of a negative outcome "and it turns out something bad has happened, and you don't tell anyone about it." Allen Tr. 124:4-125:15. Here, the Amended Complaint alleges Complaint alleges that, on the first day of the Class Period, Defendant Brock told investors "there is *no risk*" that Hazlehurst would be unable to repay Astec's $60 million loan. Amended Complaint ¶¶ 49, 102. Accordingly, one would not expect the price of Astec stock to rise on the days Defendants made material omissions about the pellet plants.

price but also by maintaining a stock's already ... inflated price ...." *Bond v. Clover Health Invs., Corp.*, 2023 WL 1999859, at \*12 (M.D. Tenn. Feb. 14, 2023) (quoting *Willis v. Big Lots, Inc.*, 242 F. Supp. 3d 634, 656–57 (S.D. Ohio 2017)). "The Sixth Circuit has held, on more than one occasion, that price maintenance is a permissible theory of price impact in the securities fraud setting." *Id.* (citing *In re CoreCivic, Inc.*, 2019 WL 4197586, at \*1 (6th Cir. Aug. 23, 2019) and *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 830 F.3d 376, 385 (6th Cir. 2016)).[6]

Third, Defendants' argument that "a company's stock price must exhibit statistically significant movements on most news days," (Opp. at 10-11), is based on an outdated line of out-of-circuit cases that have are contrary to the case law in this Circuit. Defendants' heavily reliance on *In re Fed. Home Loan Mortg. Corp. (Freddie Mac) Sec. Litig.*, 281 F.R.D. 174, 180 (S.D.N.Y. 2012) is misplaced. The security at issue in *Freddie Mac* was "a limited series of preferred shares, which are traded in patterns significantly different from the trading patterns typical of common shares." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 310 F.R.D. 69, 82 (S.D.N.Y. 2015) ("While defendants have managed to find one case that states that *Cammer* 5 is dispositive—the *Freddie Mac* case involving preferred shares—the court's reasoning for adopting such a rule is tethered to its factual context."). As Judge Varlan observed in *Cosby v. KPMG, LLP*, 2021 WL 1828114, at \*3 (E.D. Tenn. May 7, 2021), "the strength of defendant's argument and

---

[6] The cases Defendants cite for the proposition that the Allegation Study is unreliable are inapposite and easily distinguishable. *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Corp.*, 2018 U.S. Dist. LEXIS 137229, at \*8 (N.D. Ohio Aug. 14, 2018) (expert tested only a single event, the final day of the class period, over a 330-day class period); *Bell v. Ascendant Solutions, Inc.*, 2004 U.S. Dist. LEXIS 12321, at \*9 n.2 (N.D. Tex. July 1, 2004) (expert tested the date of the initial public offering – which is neither an open, efficient market nor capable of showing a price change given the lack of prior price data); *see also* Werner Rebuttal, at ¶¶21-24.

reliance on *In re Freddie Mac* is weakened as the court's emphasis on the fifth *Cammer* factor as direct evidence is not required based on later case law from its respective Court of Appeals."

Dr. Werner's News Study showed statistically significant market reaction using his 10% and 25% filters. As Dr. Werner explained, it is not surprising that the 50% filter only showed a price reaction at the 90% significance level: one would expect the less important news days to have less price movement. Werner Rebuttal, at ¶¶41-50. "To require a stock to change on at least 50 percent of potentially material news days ignores that, in many circumstances, the absence of a price change on a potentially material news day is not inconsistent with an efficient market." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 430 (S.D.N.Y. 2014). Further, Defendants' assertion that Dr. Werner only examined a "nine day sample" (Opp. at 11 & n.5) ignores the fact that he looked at both news days and non-news days. Werner Rebuttal, at ¶¶41-50 *Martinek v. AmTrust Fin. Servs., Inc.*, 2022 WL 326320, at *16 n.9 (S.D.N.Y. Feb. 3, 2022) (rejecting assertion that event study only analyzed three event days because the study also analyzed non-news days).

Fourth, Defendants argue that Dr. Werner failed to disaggregate non-fraud confounding information (Opp. at 7), but Plaintiff does not need to disaggregate confounding information at the class certification stage. *See Dougherty v. Esperion Therapeutics, Inc.*, No. 16-10089, 2020 WL 6793326, at *7 (E.D. Mich. Nov. 19, 2020) (disaggregation "is really a merits inquiry into loss causation. . . Such an inquiry is not required for class certification.") (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011)). At this stage, Plaintiff need only present a damages model that is capable of disaggregating confounding information, which Plaintiff has done. Werner Rebuttal, at ¶¶34-35.

Fifth, Defendants wrongly state that it is appropriate to deny class certification solely based on a challenge to the fifth *Cammer* factor. Opp. at 11. Courts in this Circuit and elsewhere have repeatedly rejected Defendants' claim. *Bond v. Clover Health Invs., Corp.*, 2023 WL 1999859, at *11 (M.D. Tenn. Feb. 14, 2023) ("the multi-pronged nature of the *Cammer* inquiry makes clear that an empirical showing of a stock price's responsiveness to new information is less important for a stock that, like Clover's, traded in large volume between numerous investors on high-profile institutional exchanges"); *KPMG*, 2021 WL 1828114, at *4 ("The weight of authority indicates that the fifth Cammer factor is not necessary"); *Dougherty v. Esperion Therapeutics, Inc.*, No. 16-10089, 2020 WL 6793326, at *4 (E.D. Mich. Nov. 19, 2020) ("even if Plaintiffs lacked direct evidence of cause and effect under the fifth *Cammer* factor, they would have, at this point, presented sufficient evidence of efficiency to invoke the fraud-on-the-market presumption"); *Weiner v. Tivity Health, Inc.*, 334 F.R.D. 123, 134 (M.D. Tenn. 2020) ("while '[t]here is no doubt that empirical evidence of a cause-and-effect relationship is helpful' for a finding of market efficiency, ... 'helpful' does not mean 'determinative.'"); *In re Accredo Health, Inc. Sec. Litig.*, No. 03-2216 DP, 2006 WL 1716910, at *10 (W.D. Tenn. Apr. 19, 2006) ("Moreover, even assuming, *arguendo,* that the court accepts Statman's opinion that there was no cause and effect relationship between news of Accredo's financial condition and its stock price, the court submits that this alone would not negate the efficiency of the market. In order for the court to conclude that a market is efficient, "it is not necessary that a stock satisfy all five factors."")

Where "Defendants' expert offers no opinion on market efficiency through an event study of his own, the fifth *Cammer* factor can only weigh against Defendants or be neutral." *In re JPMorgan Chase & Co. Sec. Litig.*, 2015 WL 10433433, at *6 (S.D.N.Y. Sept. 29, 2015). Even if the Court accepts Defendants' attacks on Dr. Werner's event studies, the Court should still find

market efficiency given the uncontested fact that *Cammer* factors 1-4 and *Krogman* factors 1-3 are met.

## IV.   The *Affiliated Ute* Presumption Of Reliance Applies

In a footnote, Defendants state that the Affiliated Ute presumption of reliance does not apply in this action "[b]ecause Plaintiff bases his case on Defendants' allegedly misleading statements" rather than on alleged omissions. Opp. at 11-12 & n.6. Defendants ignore the Sixth Circuit's description of Plaintiff's claims in this action: "the complaint's theory of liability is clear: Defendants painted a rosy picture of Astec's performance without disclosing the plants' problems and without providing a fair disclosure of the financial consequences of the plaints' failure to meet contractual obligations." *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 812 (6th Cir. 2022). Plaintiff is thus entitled the *Affiliated Ute* presumption of reliance. *See St. Clair Cnty. Employees' Ret. Sys. v. Acadia Healthcare Co., Inc.*, 2022 WL 4598044, at *8 (M.D. Tenn. Sept. 30, 2022), *leave to appeal denied sub nom. In re Acadia Healthcare Co., Inc.*, 2023 WL 3620955 (6th Cir. May 23, 2023) (finding *Affiliated Ute* presumption applicable because "Plaintiffs allege situations where Defendants' failure to disclose certain information is what makes the alleged misrepresentations misleading or false").

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion in its entirety.

Dated: February 12, 2024                  Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Phillip Kim*
Phillip Kim
Daniel Tyre-Karp

Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        dtyrekarp@rosenlegal.com
        lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

**BRAMLETT LAW OFFICES**
Paul Kent Bramlett #7387
Robert Preston Bramlett #25895
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215-0734
Telephone: 615-248-2828
Facsimile: 866-816-4116
Email: pknashlaw@aol.com
        Robert@BramlettLawOffices.com

*Liaison Counsel for Lead Plaintiff*

16

**CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on February 12, 2024, I served true and correct copies of the foregoing by posting the document electronically to the ECF website of the United States District Court for the Eastern District of Tennessee, for receipt electronically by the parties listed on the Court's Service List.

*/s/ Phillip Kim*
Phillip Kim

17