Page 1

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

AT CHATTANOOGA

----------------------------X

CITY OF TAYLOR GENERAL        ) No.

EMPLOYEES RETIREMENT SYSTEM, ) 1:19-cv-00024-CEA-CHS

Individually and on Behalf    )

of All Others Similarly       ) CLASS ACTION

Situated,                     )

                              )

              Plaintiff,      )

                              )

   vs.                        )

                              )

ASTEC INDUSTRIES, INC.,       )

BENJAMIN G. BROCK and DAVID   )

C. SILVIOUS,                  )

                              )

              Defendants.     )

----------------------------X

VIDEOTAPED DEPOSITION OF LYNN HARRY JOHNSON

Friday, January 12, 2024; 10:06 a.m. EDT

Reported by:  Cindy L. Sebo, RMR, CRR, CLR, RPR, CCR, CSR, RSA, CA CSR 14409, NJ Certified CR 30XI0024460, NJ Certified RT 30XR00019500, NM CSR 589, NY Realtime Court Reporter, NY Association Certified Reporter, OR CSR 230105, TN CSR 998, TX CSR 12778, WA CSR 23005926, Notary Public

Job No. 6393711

Case 1.19-cv-00024-CEA-CHS     Document 111-1     Filed 02/12/24     Page 1 of 15
PageID #: 2117

A.    Yes.

Q.    Did you meet with anyone to prepare for today's deposition?

A.    Yes.

Q.    Who did you meet with?

A.    My attorneys.

Q.    Is that Mr. Tyre-Karp and Mr. Kim?

A.    Correct.

Q.    And how many times did you meet with them?

A.    Define "meet."

Q.    How many times did you correspond with them in preparation for this deposition?

A.    A couple.

Q.    Was that two?

A.    I'm guessing -- I have to guess.  I don't remember --

Q.    Yeah.

A.    -- exactly, but I think it was two.

Q.    And was one of those times an in-person meeting?

A.    Yes.

Case 1:19-cv-00024-CEA-CHS    Document 111-1    Filed 02/12/24    Page 2 of 15
PageID #: 2118

Counsel, you may proceed.

BY MS. SHEAR:

Q.    Mr. Johnson, what is this lawsuit about?

A.    Astec was -- had gotten into the business of manufacturing wooden -- I'll call them pellets of some sort and building the plants to do so.  And their manufacturing did not go well at either plant, but that information was kept from the public by the people at Astec, including CEO Brock.

And when the information did come out about those two wood plants, the price went down.

Q.    Do you believe this action is meritorious?

A.    "Meritorious"?  Like -- like, we wouldn't be suing if we didn't think so?

Q.    Is that a yes?

A.    I -- I -- yes, that's a yes.

Q.    Why do you believe that this action is meritorious?

Case 1.19-cv-00024-CEA-CHS    Document 111-1    Filed 02/12/24    Page 3 of 15
PageID #: 2119

A.      Because --

MR. TYRE-KARP:  Objection to form.

THE WITNESS:  -- because Astec did not disclose the problems they were having in these two plants.

BY MS. SHEAR:

Q.      Who are the Defendants in this lawsuit?

A.      Astec, the company; Ben Brock, then-, I guess, president or CEO -- I forget which -- and they had Swanson; and the last person is something like -- and I'm going to mispronounce it -- like Silvo.

Q.      What court is this case in?

A.      Federal District Court, Tennessee.

Q.      What claims are alleged in the Complaint?

A.      Fraud.

If you want to be more specific than that, you should ask my attorneys.

Q.      What is the business of Astec, as

800.808.4958                                                        770.343.9696

you understand it?

A.     Well, they make -- they manufacture various products used in construction, like concrete and other road type of material.  But for that short period of time, they were into making these wood pellets.

Q.     Okay.  When you say "that short period of time," what period of time are you referring to?

A.     I would have to speculate, but -- I don't know the beginning date, but, certainly, the ending date, I believe, was maybe 2017, '18.

Q.     Is this case a class action?

A.     Yes.

Q.     And what is a class action?

A.     Class action is when you've got so many people experiencing wrongdoing, that the Court will permit them to sue as a class if they meet various conditions.

THE VIDEOGRAPHER:  Counsel, your microphone.

Can you raise up a bit, please?

Case 1.19-cv-00024-CEA-CHS    Document 111-1    Filed 02/12/24    Page 5 of 15
PageID #: 2121

MS. SHEAR:  Put it higher?

THE VIDEOGRAPHER:  If you can.

MS. SHEAR:  Yes.  Yeah.

Is that better?

THE VIDEOGRAPHER:  Yes.

MS. SHEAR:  Okay.

BY MS. SHEAR:

Q.    Has the class already been certified in this case?

A.    No.

Q.    What -- do you know what a class period is?

A.    Yes.

Q.    And what is a class period?

A.    In this case, July 26th, I believe, of 2016 until October 21st of 2018.

Q.    Have there been multiple versions of the Complaint filed in this case?

A.    Yes.

Q.    How many?

A.    I'm -- I have to guess, all right, and I'm not supposed to guess.  But I think it's

Case 1:19-cv-00024-CEA-CHS    Document 111-1    Filed 02/12/24    Page 6 of 15
PageID #: 2122

three.

Q.    And have you reviewed all versions of the Complaint?

A.    I think the first Complaint was filed before I got involved by -- well, let me not say who it was, but it wasn't -- it wasn't me.

But then there's an Amended Complaint and maybe another -- and I reviewed those.

Q.    So are you saying you didn't review the first Complaint, but then you reviewed the Amended Complaint and then any other Complaints that have been filed?

A.    That's correct.

Q.    Do you, personally, know anyone who has worked at Astec?

A.    No.

Q.    Do you know anyone who currently works at Astec?

A.    No.

Q.    Do you know anyone who was a source of the allegations in the Amended Complaint?

Case 1.19-cv-00024-CEA-CHS    Document 111-1    Filed 02/12/24    Page 7 of 15
PageID #: 2123

A.    No.

Q.    Do you know anyone who is described in the Amended Complaint as a confidential witness?

A.    No.

Q.    Did you review the Amended Complaint before it was filed?

A.    Yes.

Q.    Did you do anything to ensure that the allegations in the Amended Complaint were accurate before it was filed?

A.    No, I left that to my attorneys.

Q.    Have you had any conversations about this litigation with family members?

A.    My family members?

Q.    Yes.

A.    I don't even have a family, really.

Q.    Have you had any conversations about this litigation with anyone in your life?

A.    Yes.

Q.    Who?

A.    I have a twin brother.

800.808.4958                                            770.343.9696

BY MS. SHEAR:

Q.    What is your role as lead plaintiff in this case?

A.    The role is to represent all of the people or entities that held Astec stock during the time period I had told you about.

Q.    And what are your responsibilities in that role?

A.    To manage this lawsuit and to treat -- make sure that all of the people in the class are treated fairly.

Q.    What does it mean to manage this lawsuit?

A.    It means to stay in contact with my law firm to make sure they're doing their job and to provide any information or testimony that is required by the Court.

Q.    Does the lead plaintiff act as a fiduciary for the class?

A.    Yes.

Q.    What does it mean for lead plaintiff to act as a fiduciary for the class?

Case 1.19-cv-00024-CEA-CHS    Document 111-1    Filed 02/12/24    Page 9 of 15
PageID #: 2125

A.    That means he must put the interest of the class ahead of his own.

Q.    Is it the role of the lead plaintiff to vigorously represent the class?

A.    That's a confusing question.

I don't know what "vigorously" means.

MS. SHEAR:  Exhibit 10.

(Sotto voce discussion between cocounsel.)

MS. SHEAR:  Sorry.  I meant 9.

(Pause.)

MS. SHEAR:  This will be Exhibit Number 7.

--oOo--

(Defendants' Deposition Exhibit Number 7, Declaration of Lead Plaintiff Lynn Johnson in Support of Plaintiff's Motion for Class Certification, marked for identification, as of this date.)

--oOo--

beneficial for the Class.

Do you see that?

A.    I don't.  But is it -- is it within the line or --

Q.    It's at the end --

A.    Oh, I'm sorry.

Q.    -- of Paragraph Number 5.

A.    Yes.

Q.    What does it mean to seek recovery that is fair and beneficial for the Class?

A.    Well, first of all, the Court is going to decide that.  But it's my task, as the lead counsel, to exercise my good faith and sound judgment to seek that recovery.

Q.    What does it mean to you for a recovery to be fair and beneficial for the Class?

A.    It would be to recover as much money as possible that they lost from the fraudulent actions by Astec.

Q.    Are you seeking to be appointed Class representative in this action?

A.    Yes.

800.808.4958

770.343.9696

Q.      What is a Class representative?

A.      I would stand in the shoes of all of those people who invested, in that relevant time period, in Astec.

Q.      What are the obligations or duties of a Class representative in a class action?

A.      To represent them fairly and to bring their legal arguments before the Court through counsel.

Q.      Have you been offered any incentive to serve as lead plaintiff in this matter?

A.      No.

Q.      Have you been offered any incentive to serve as Class representative in this matter?

A.      No.

Q.      Do you expect to recover any monetary sum for your -- for serving in the role as lead plaintiff in this matter?

A.      Not really, although I suspect that we can put a claim in for my time.  It's going to be -- you know, it's -- as things go, not a great sum, but I could get paid for my time.

Case 1:19-cv-00024-CEA-CHS    Document 111-1    Filed 02/12/24    Page 12 of 15
PageID #: 2128

We came back at 11:19.

Does that sound good?

MR. TYRE-KARP:  Does that work for you, Mr. Johnson?

THE WITNESS:  Yes.  Yes, it does.

BY MS. SHEAR:

Q.    Do you recognize this document, Mr. Johnson?

A.    Yes.

Q.    And what is this document?

A.    The Amended Complaint.

Q.    Did you review -- you -- did you review this Complaint prior to its filing?

A.    Yes.

Q.    Does the Amended Complaint allege any misrepresentations by Defendants?

A.    I leave it to my law firm to answer that question.

Q.    Are -- are you saying you don't -- you don't know whether the Amended Complaint --

A.    No, I'm saying --

Q.    -- alleges any misrepresentations by

Case 1:19-cv-00024-CEA-CHS    Document 111-1    Filed 02/12/24    Page 13 of 15
PageID #: 2129

17th day of August 2022?

A.    Yes.

Q.    Do you recall if you received this request for documents in August 2022?

A.    No, I don't remember.

Q.    Do you have any sense of whether it was around then?

A.    Well, most likely, it was, but I don't -- I can't -- I could never give you a date.

Q.    Did you respond to these requests?

A.    Yes.

Q.    Did you have any involvement in preparing your response to these requests?

A.    Yes.

Q.    Did you, personally, collect documents in response to these requests?

A.    Now, when you say "personally," like, did I go look for the documents?

Q.    Yes.

        Did you go look for documents in response to these requests?

A.    Yep.

Case 1:19-cv-00024-CEA-CHS    Document 111-1    Filed 02/12/24    Page 14 of 15
PageID #: 2130

A.    "Prepare," you mean, like, type it out?

Q.    Did you -- I can rephrase.

A.    All right.

Q.    Did you draft this document?

MR. TYRE-KARP:  Objection to form.

THE WITNESS:  No, no, no.  I let -- I let The Rosen Law Firm do that.

BY MS. SHEAR:

Q.    Did you have any involvement in preparing this document?

A.    Yes.

Q.    Did you review this document before it was provided to Defendants?

A.    Yes.

Q.    Did you -- are the responses in this document accurate?

A.    Yes.

Q.    Did you discuss your responses in this document with anyone other than your lawyers before this document was served on Defendants in