# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| CITY OF TAYLOR GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No. 1:19-cv-00024-CEA-CHS |
| | ) | |
| | ) | CLASS ACTION |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Judge Charles E. Atchley, Jr. |
| ASTEC INDUSTRIES, INC., BENJAMIN G. BROCK and DAVID C. SILVIOUS, | ) ) | Magistrate Judge Christopher H. Steger |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ............................................................................. 1

II. SUMMARY OF THE LITIGATION AND SETTLEMENT ............................................ 3

    A.  Plaintiff's Allegations ................................................................. 3

    B.  Procedural History and Settlement ........................................................ 3

III. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS ............... 5

IV. The Court Should Grant Final Approval of the Settlement ................................................ 5

    A.  Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class .. 7

    B.  The Settlement is the Result of Arms'-Length Negotiations Between Informed Counsel with a Mediator ......................................................................... 9

    C.  The Relief Provided to the Settlement Class is Adequate in Light of the Risk, Expense, Complexity, and Likely Duration of Continued Litigation ................... 11

    D.  The Remaining Rule 23(e)(2)(C) Factors Support Approval .............................. 15

        1.  The Methods of Distributing Relief and Processing Claims ........................... 15

        2.  Proposed Attorneys' Fees .................................................................. 16

        3.  Other Agreements ........................................................................... 16

        4.  The Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiff .............................................................................. 17

    E.  The Remaining Sixth Circuit *UAW* Factors Favor Final Approval ...................... 18

        1.  Plaintiff and Lead Counsel Were Sufficiently Informed at This Stage of the Proceedings ................................................................................... 18

        2.  Experienced Counsel's Recommendations .............................................. 19

        3.  The Reaction of the Settlement Class Supports Final Approval ...................... 19

        4.  The Public Interest Supports Final Approval ........................................... 20

V.  The Court Should Approve the Plan of Allocation .......................................................... 21

Case 1:19-cv-00024-CEA-CHS    Document 122    Filed 08/01/24    Page 2 of 34
PageID #: 2376

VI.     THE NOTICE SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA ................ 23

VII.    CONCLUSION ........................................................................................................ 24

ii

Case 1:19-cv-00024-CEA-CHS     Document 122     Filed 08/01/24     Page 3 of 34
PageID #: 2377

<u>**TABLE OF AUTHORITIES**</u>

<div align="right"><u>**Page(s)**</u></div>

<u>**Cases**</u>

*Bert v. AK Steel Corp.*,
   2008 WL 4693747 (S.D. Ohio Oct. 23, 2008)........................................................................ 9, 10

*Bond v. Clover Health Invs., Corp.*,
   2023 WL 1999859 (M.D. Tenn. Feb. 14, 2023) ......................................................................... 13

*Christine Asia Co. v. Yun Ma,*
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................................................... 9, 17

*Connectivity Sys. Inc. v. Nat'l City Bank*,
   2011 WL 292008 (S.D. Ohio Jan 27, 2011) ................................................................................. 14

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005)..................................................................................................................... 22

*Evans v. Jeff D.*,
   475 U.S. 717 (1986)....................................................................................................................... 5

*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) ....................................................................................................... 24

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ....................................................................................................... 15

*Grae v. Corr. Corp. of Am.*,
   326 F.R.D. 482 (M.D. Tenn. 2018) .............................................................................................. 14

*Grae v. Corr. Corp. of Am.*,
   330 F.R.D. 481 (M.D. Tenn. 2019) .............................................................................................. 13

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) .................................................................................................. 6, 12

*Griffin v. Flagstar Bancorp, Inc.*,
   2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ..................................................................... 20, 21

*Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Momenta Pharm., Inc.*,
   2020 WL 3053467 (M.D. Tenn. May 29, 2020)............................................................................ 17

*In re "Agent Orange" Prods.* Liab. Litig.,
   597 F. Supp. 740 (E.D.N.Y. 1984) ............................................................................................... 11

Case 1:19-cv-00024-CEA-CHS    Document 122    Filed 08/01/24    Page 4 of 34
PageID #: 2378

*In re Am. Bank Note Holographics, Inc.*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001)...................................................................................... 21

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)........................................................................ 22

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................................................................... 12

*In re China Sunenergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................................................ 12

*In re Datatec Sys., Inc. Sec. Litig.*,
2007 WL 4225828 (D.N.J. Nov. 28, 2007) ............................................................................ 22

*In re Flint Water Cases*,
571 F. Supp. 3d 746 (E.D. Mich. 2021)............................................................................. 6, 10

*In re Indep. Energy Holdings PLC*,
2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003)...................................................................... 14

*In re Lyft Inc. Sec. Litig.*,
2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ......................................................................... 10

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)............................................................................. 12

*In re Nationwide Fin. Servs. Litig.*,
2009 WL 8747486 (S.D. Ohio Aug. 19, 2009)......................................................................... 6

*In re Polyurethane Foam Antitrust Litig.*,
168 F. Supp. 3d 985 (N.D. Ohio 2016)................................................................................... 11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ........................................................................ 12

*In re S. Co. S'holder Derivative Litig.*,
2022 WL 4545614 (N.D. Ga. June 9, 2022) ........................................................................... 10

*In re Se. Milk Antitrust Litig.*,
2013 WL 2155379 (E.D. Tenn. May 17, 2013).................................................................. 20, 21

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................................... 13

*In re Telectronics Pacing Sys., Inc.*,
 137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................................ 6, 18

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015) ........................................................................ 22

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
 535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................................ 14

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ........................................................................ 18

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,
 497 F.3d 615 (6th Cir. 2007) .............................................................................................. 6, 20

*IUE-CWA v. Gen. Motors Corp.*,
 238 F.R.D. 583 (E.D. Mich. 2006) .......................................................................................... 6

*Lonardo v. Travelers Indem. Co.*,
 706 F. Supp. 2d 766 (N.D. Ohio 2010) ................................................................................... 20

*Mild v. PPG Indus., Inc.*,
 2019 WL 3345714 (C.D. Cal. July 25, 2019) ........................................................................... 7

*Motter v. O'Brien*,
 2014 WL 12892732 (S.D. Ohio June 12, 2014) ...................................................................... 21

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
 315 F.R.D. 226 (E.D. Mich. 2016) .......................................................................... 15, 16, 18

*Olden v. Gardner*,
 294 F. App'x 210 (6th Cir. 2008) ........................................................................................... 19

*Olden v. LaFarge Corp.*,
 472 F. Supp. 2d 922 (E.D. Mich. 2007) ................................................................................. 11

*Pace v. Quintanilla*,
 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .......................................................................... 9

*Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corp.*,
 2022 WL 17582004 (E.D. Mich. Dec. 12, 2022) ............................................................... 10, 20

*Pelzer v. Vassalle*,
 655 F. App'x 352 (6th Cir. 2016) ........................................................................................... 23

*Plagens v. Deckard*,
 2023 WL 2711263 (N.D. Ohio Mar. 30, 2023) ........................................................................ 14

*Reeves v. Patenaude & Felix, A.P.C.*,
 2021 WL 1186145 (E.D. Mich. Mar. 26, 2021) ...................................................................... 15

*Robbins v. Koger Props., Inc.*,
 116 F.3d 1441 (11th Cir. 1997) .............................................................................................. 15

*Robinson v. Ford Motor Co.*,
 2005 WL 5253339 (S.D. Ohio June 15, 2005) ....................................................................... 20

*Shane Grp., Inc. v. Blue Cross Blue Shield*,
 2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ...................................................................... 9

*Shapiro v. JPMorgan Chase & Co.*,
 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ....................................................................... 10

*Swigart v. Fifth Third Bank*,
 2014 WL 3447947 (S.D. Ohio July 11, 2014) ........................................................................ 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007) ................................................................................................................ 20

*Thacker v. Chesapeake Appalachia, L.L.C.*,
 695 F. Supp. 2d 521 (E.D. Ky. 2010) ..................................................................................... 21

*UAW v. Gen. Motors Corp.*,
 2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ...................................................................... 19

*Wess v. Storey,*
 2011 WL 1463609 (S.D. Ohio Apr. 14, 2011) ................................................................. *passim*

*White v. NFL*,
 822 F. Supp. 1389 (D. Minn. 1993) ........................................................................................ 21

*Williams v. Vukovich*,
 720 F.2d 909 (6th Cir. 1983) ............................................................................................ 19, 23

**Statutes**

15  U.S.C. § 78u-4(a) ........................................................................................................ 18, 23, 24

28 U.S.C. §1715 .......................................................................................................................... 24

Case 1:19-cv-00024-CEA-CHS   Document 122   Filed 08/01/24   Page 7 of 34
PageID #: 2381

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................... *passim*

Case 1:19-cv-00024-CEA-CHS    Document 122    Filed 08/01/24    Page 8 of 34
PageID #: 2382

Lead Plaintiff Lynn Johnson ("Lead Plaintiff" or "Plaintiff") submits this memorandum of law in support of his motion for final approval of the proposed class action Settlement.[1]

## I.    PRELIMINARY STATEMENT

On March 16, 2024, the Court preliminarily approved the Settlement of this Action as fair, reasonable, and adequate. ("Preliminary Approval Order") (Dkt. No. 118). Through the Court-approved Claims Administrator, Plaintiff timely executed the notice program as the Court ordered. To date, no Settlement Class Members have objected to any aspect of the Settlement or have requested exclusion from the Settlement Class. Kim Decl., ¶29; Evans Decl., ¶¶13-14. Plaintiff now moves for final approval of the Settlement, releasing claims against all Released Parties in exchange for a cash payment of $13,700,000.

The Settlement resolves over five years of hard-fought litigation between Plaintiff and Defendants Astec Industries, Inc. ("Astec") and Benjamin G. Brock ("Brock" and with Astec, "Defendants"). The Settlement is the product of arms-length negotiations ultimately after engaging neutral David M. Murphy, Esq. of Phillips ADR. This negotiation included the exchange of detailed mediation statements and the Parties' participation in a mediation session, eventually resulting in the Parties accepting a mediator's proposal after additional months of negotiations. These arms'-length negotiations among experienced counsel with a neutral mediator, along with the Settlement Class's positive reaction, render the Settlement fair, reasonable, and adequate.

In advance of the Settlement, Lead Counsel thoroughly investigated Plaintiff's claims and zealously represented the Settlement Class by filing a thorough amended complaint, opposing

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement, filed on May 6, 2024 ("Stipulation") (Dkt. No. 114). Citations to "Kim Decl." are to the Declaration of Phillip Kim, filed herewith. Citations to "Evans Decl." are to the Declaration of Sarah Evans, attached as Exhibit 1 to the Kim Decl.

1

Defendants' motion to dismiss, filing the Motion to Alter or Amend the Judgment and for Leave to File the Proposed Amended Complaint ("Motion to Alter"), successfully appealing the order dismissing the Action to the U.S. Court of Appeals for the Sixth Circuit, reviewing over 150,000 pages of documents, issuing and responding to interrogatories and requests for production of documents, serving several subpoenas and successfully suing in a separate federal court to enforce a subpoena, and deposing Defendants' market efficiency expert. Kim Decl., ¶24.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). Plaintiff believes his case is strong, but he concluded that executing the Settlement was in the best interest of the Settlement Class in light of the risks inherent in this complex litigation. The Settlement avoids expensive, protracted litigation and locks in a substantial recovery for the Settlement Class. While Plaintiff believes that he would be able to prove his claims at trial, Defendants continued to deny liability and damages. Plaintiff faced significant obstacles in obtaining a full recovery on his claims through litigation, such as prevailing on the pending motion for class certification, defeating anticipated motions for summary judgment, and prevailing at trial. Plaintiff also faced notable challenges in establishing loss causation and damages. Absent the Settlement, there is no guarantee the Settlement Class would have recovered as much, or anything at all. This Court should approve the Settlement as fair, reasonable, and adequate.

The Court will also evaluate whether the proposed Plan of Allocation (the "Plan") is fair, reasonable, and adequate. Here, Lead Counsel developed the Plan in consultation with Plaintiff's damages expert and the Claims Administrator. The proposed Plan comports with applicable legal principles and Plaintiff's theory of damages. The Plan in no way favors Plaintiff over other members of the Settlement Class. Accordingly, the Court should approve the Plan.

Finally, the Court should determine that the notice program the Court preliminarily approved and executed by Lead Counsel and the Claims Administrator satisfied the requirements of Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

## II.      SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.      Plaintiff's Allegations

Plaintiff alleges that Defendants misled investors by touting Astec's Highland and Hazlehurst wood pellet plants as models of success that would make Astec a leader in the booming pellet plant industry. Plaintiff alleges that Astec's foray into the wood pellet plan business was a complete disaster: Astec agreed to pay $68 million in cash and forgive approximately $7 million in receivables to exit its obligations related to the Highland Plant in July 2018; recorded a full write-off of $65.7 million related to the Hazlehurst plant in the fourth quarter of 2018; and never received any other orders for pellet plants and ultimately exited the pellet plant business. Plaintiff asserts that Defendants issued a series of misleading partial disclosures downplaying production problems at the plants and omitting that Astec would have to refund the purchase price of the Highland plant if it failed to pass a rigorous "Reliability Run" performance test. Plaintiff alleges that the truth about Astec's pellet plant business emerged through a series of partial corrective disclosures between July 25, 2017 and October 23, 2018, each of which caused the price of Astec's stock to drop and thereby harmed investors.

Defendants deny any wrongdoing.

### B.      Procedural History and Settlement

This Action began on February 1, 2019, asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). After briefing and a hearing on competing motions for appointment of lead plaintiff and approval of counsel, on June 26, 2019,

3

Magistrate Judge Steger appointed Lynn Johnson as Lead Plaintiff and approved The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel and Bramlett Law Offices as Liaison Counsel.

On August 26, 2019, Plaintiff filed the Amended Complaint (the "Complaint"). On October 25, 2019, Defendants moved to dismiss the Complaint (the "Motion to Dismiss"), which was fully briefed by February 14, 2020. The Action was eventually reassigned to Judge Charles E. Atchley, Jr. On February 19, 2021, the Court granted Defendants' Motion to Dismiss, dismissing Plaintiff's claims with prejudice. In response, on March 19, 2021, Plaintiff filed the Motion to Alter, which was fully briefed by April 10, 2021. The Court subsequently denied the Motion to Alter and Plaintiff timely appealed the orders granting the Motion to Dismiss and denying the Motion to Alter. After briefing and oral argument, on March 31, 2022, the Sixth Circuit issued its decision, affirming in part and reversing in part the decision on the Motion to Dismiss and remanded the Action for further proceedings. Defendants then filed the Answer to the Complaint.

Beginning in July 2022, the Parties began issuing discovery requests including interrogatories and requests for production of documents. Additionally, Plaintiff served subpoenas for documents on four non-parties and successfully sued a third-party in a separate federal court to enforce a subpoena. The Parties filed a proposed discovery plan and a joint motion for a protective order. On December 18, 2023, Plaintiff filed the Motion for Class Certification, which was fully briefed on February 12, 2024. In connection with that motion, the Parties deposed each other's experts, and Defendants deposed Plaintiff.

At various stages of the litigation, the Parties engaged in discussions for a potential resolution of the Action. The Parties initially participated in mediation on March 19, 2020 while the Motion to Dismiss was pending with Hunter R. Hughes, III of Hunter ADR. Prior to this session, the Parties exchanged written position statements. This session was unsuccessful. On July

4

19, 2021, the Parties engaged in an alternative dispute resolution process the Sixth Circuit mandated prior to complete briefing of the appeal. This session was also unsuccessful. Following the Sixth Circuit's order remanding the Action, the Parties retained Mr. Murphy. The Parties submitted new written position statements and participated in an in-person, all-day mediation with Mr. Murphy on November 10, 2023. This session ended without resolution, however, over the following months Mr. Murphy guided further negotiations. Eventually, Mr. Murphy proposed, and the Parties accepted, a settlement in principle to resolve the Action on March 20, 2024.

On May 6, 2024, Plaintiff moved for preliminary approval of the Settlement (Dkt. No. 115), which the Court granted on May 16, 2024. (Dkt. No. 118).

## III. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. (Dkt. No. 118, ¶2). As detailed in Plaintiff's brief in support of preliminary approval of the Settlement, (Dkt. No. 116 at 17-22), certification of the Settlement Class for settlement purposes under Rule 23 is merited here. No changes have transpired since the Court issued the Preliminary Approval Order that would upset or alter the Court's findings. Thus, the Court should grant final certification of the Settlement Class for settlement purposes.

## IV. THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

Rule 23(e) requires judicial approval of any class action settlement, which must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).[2] Rule 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

---

[2] Citations and internal quotations are omitted and emphasis is added, unless otherwise noted.

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "[W]hile courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement." *In re Nationwide Fin. Servs. Litig.*, 2009 WL 8747486, at *2 (S.D. Ohio Aug. 19, 2009).

To determine whether a proposed settlement meets the standard for final approval, courts in the Sixth Circuit look to the following factors, where applicable: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*"); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1009 (S.D. Ohio 2001). These factors are largely coextensive with the factors listed under Rule 23(e)(2), as amended in 2018. *In re Flint Water Cases*, 571 F. Supp. 3d 746, 769 n.20 (E.D. Mich. 2021).

The Court has "wide discretion in assessing the weight and applicability of the relevant factors." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992). The Court "may choose to consider only those factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583,

6

594–95 (E.D. Mich. 2006). Here, the proposed Settlement merits approval under each of the factors under Rule 23(e)(2) and Sixth Circuit precedent.

### A. Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

Plaintiff and Lead Counsel have adequately represented the Settlement Class throughout this Action, vigorously litigating for over five years. *See* Fed. R. Civ. P. 23(e)(2)(A). Plaintiff and Lead Counsel spared no effort pursuing this Action including drafting the detailed Complaint, opposing the Motion to Dismiss, filing the Motion to Alter, successfully appealing to the Sixth Circuit, as well as engaging in discovery including commencing an action to compel compliance with a subpoena and reviewing tens of thousands of documents. Kim Decl., ¶24. Their efforts are echoed by the highly favorable Settlement Amount and that no Settlement Class Members sought exclusion from or objected to the Settlement. *Id.*, ¶29; Evans Decl., ¶¶13-14.

Indeed, the Court previously found for settlement purposes that "Lead Plaintiff fairly and adequately represents the interests of the Settlement Class" (Preliminary Approval Order, ¶3). Lead Plaintiff has no antagonistic interests to other class members, his claims are typical of Settlement Class Members' claims, and he shares an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Wess v. Storey,* 2011 WL 1463609, at *9 (S.D. Ohio Apr. 14, 2011); *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). As demonstrated in his declaration, Plaintiff is an attorney and was actively involved in the litigation. Declaration of Lead Plaintiff Lynn Johnson ("Johnson Decl.") (Exhibit 3 to the Kim Decl.), at ¶3. Throughout the course of his involvement of the Action since 2019, Plaintiff regularly communicated with his

7

counsel including discussing strategy and developments of the Action, reviewing significant filings, reviewing and responding to discovery requests, preparing for and sat for a deposition, and evaluating and approving the Settlement. *Id.*, ¶¶2,4. Plaintiff, worked closely with Lead Counsel throughout the pendency of this Action to achieve a beneficial result for the Settlement Class.

Regarding Lead Counsel's adequacy, the Court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel aggressively litigated the Action including: (i) drafting the Complaint after reviewing publicly available information about Astec as well as retaining investigators to interview former Astec employees; (ii) opposing the Motion to Dismiss; (iii) filing the Motion to Alter; (iv) successfully appealing the orders on the Motion to Dismiss and Motion to Alter to the Sixth Circuit; (v) negotiating discovery protocols; (vi) engaging in discovery by serving requests for production of documents and subpoenas, successfully suing a third-party in a separate federal court to enforce a subpoena, and responding to discovery requests; (vii) reviewing over 150,000 pages of documents Defendants and third-parties produced; (viii) retaining a damages expert to evaluate the case; (ix) fully briefing a motion for class certification, including retaining a market efficiency expert; (x) participating in three mediation sessions including preparing multiple mediation statements; and (xi) formalizing the Settlement. Kim Decl., ¶24. *See Wess*, 2011 WL 1463609, at \*9 (counsel adequate as they were experienced in area of the law and "vigorously and effectively pursued the interests of the Class.").

Lead Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating and navigating complex securities cases such as this one. Courts around the

<div align="center">8</div>

country have consistently found Rosen Law to be well-suited as class counsel in securities class actions. *E.g., Christine Asia Co. v. Yun Ma,* 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (finding in approving the largest ever settlement in a case brought by investors in a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."); *Pace v. Quintanilla*, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action."); *see also* Kim Decl., Ex. 4 (Rosen Law Firm Résumé). Lead Counsel has vigorously prosecuted the Action and will continue to do so through the distribution process. Kim Decl., ¶38.

**B.     The Settlement is the Result of Arms'-Length Negotiations Between Informed Counsel with a Mediator**

Fed. R. Civ. P. 23(e)(2)(B) addresses whether "the [settlement] proposal was negotiated at arm's length." Here, all evidence indicates that settlement negotiations were conducted in good faith and at arms'-length, and thus the Settlement is fair. Lead Counsel has extensive experience litigating these types of securities fraud claims and developed a thorough understanding of the strengths and weaknesses of Plaintiff's claims. Defendants are also represented by experienced and skilled securities practitioners at Alston & Bird LLP who were at least as well-informed regarding the case, and their representation of Defendants was equally vigorous. Kim Decl., ¶19. Under such circumstances, Lead Counsel's opinion that the proposed settlement is fair to the Settlement Class "is entitled to considerable weight." *Bert v. AK Steel Corp.*, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *Shane Grp., Inc. v. Blue Cross Blue Shield*, 2015 WL 1498888, at *12 (E.D. Mich. Mar. 31, 2015) ("Courts should defer to the judgment of experienced counsel who have evaluated the strength of the proofs."). Counsel are "most closely acquainted with the facts of the underlying litigation," and thus courts give "great weight" to counsel's settlement

<div align="center">9</div>

recommendations, especially after arm's-length negotiations. *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*2, \*7 (S.D.N.Y. Mar. 24, 2014).

Moreover, "settlement negotiations that employ third-party mediators or a Special Master may be viewed as evidence of an arm's length negotiation." *Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corp.*, 2022 WL 17582004, at \*4 (E.D. Mich. Dec. 12, 2022); *Flint Water*, 571 F. Supp. 3d at 780 ("[T]here appears to be no better evidence of [a truly adversarial bargaining process] than the presence of a neutral third party mediator[.]"); *Bert*, 2008 WL 4693747, at \*2 ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at \*2 (S.D. Ohio July 11, 2014) ("It is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator.").

The proposed Settlement followed hard-fought, non-collusive negotiations. The Parties participated in three settlement negotiations that took place at different procedural postures of the litigation. The Parties first retained Mr. Hughes for a mediation in March 2020 when the Motion to Dismiss was pending. Then, in July 2021, the Parties engaged in the alternative dispute resolution process mandated by the Sixth Circuit prior to completing briefing of the appeal. After the Action was remanded, the Parties retained Mr. Murphy, a very experienced neutral in similar securities actions. *See e.g. In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at \*10 (N.D. Cal. Aug. 7, 2023) (approving settlement and noting Mr. Murphy's involvement as a third-party neutral); *In re S. Co. S'holder Derivative Litig.*, 2022 WL 4545614, at \*10 (N.D. Ga. June 9, 2022) (same). The mediation process with Mr. Murphy ultimately resulted in the Settlement. The Parties exchanged

10

detailed mediation statements, presenting, among other things, their respective views on the merits of the Action, including Defendants' defenses and critical issues relating to loss causation and damages. In his declaration (Exhibit 2 to Kim Decl.), Mr. Murphy attests to the integrity of the mediation process finding that the negotiations were at all times adversarial and conducted at arm's length. *Id.*, ¶8. With Mr. Murphy's guidance over the mediation process, the Parties accepted a mediator's proposal after extensive negotiations spanning several months. *Id.*, ¶10. Although the Court will determine whether the Settlement should be approved, Mr. Murphy recommends that the Settlement serves the best interests of the Settlement Class. *Id.*, ¶11.

Thus, the arm's-length settlement negotiations support final approval.

### C. The Relief Provided to the Settlement Class is Adequate in Light of the Risk, Expense, Complexity, and Likely Duration of Continued Litigation

When evaluating the reasonableness and adequacy of a settlement the Court must consider whether "the relief provided for the class is adequate, taking into account … the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The determination of an adequate settlement amount is "not susceptible of a mathematical equation yielding a particularized sum." *Wess*, 2011 WL 1463609, at *3 (noting that the court "need not decide the amount of a potential recovery at trial" because settlement approval "should not involve a trial on the merits"). The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 933 (E.D. Mich. 2007) (quoting *In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). In evaluating a settlement, courts recognize that parties must compromise to reach an agreement. *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 1001 (N.D. Ohio 2016) (a "[s]ettlement is the offspring of compromise; the

11

question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). The possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada*, 962 F.2d at 1206.

The $13,700,000 Settlement Amount is a highly favorable result that warrants final approval. The Settlement is a guaranteed result for Astec investors after years of uncertain litigation. The Settlement recovers approximately 8.4% of the maximum estimated damages of $163.7 million under Plaintiff's best-case scenario, as estimated by Plaintiff's damages expert.[3] This best-case scenario assumes that: (i) Plaintiff is able to succeed at summary judgment and at trial; (ii) the Court certifies the same class period as the Settlement Class Period; (iii) Plaintiff is able to prove that the *entirety* of each of the stock declines alleged in the Complaint were caused by Defendants' misrepresentations and not confounding factors; and (iv) the Court and jury accepted Plaintiff's damages theory, including proof of loss causation. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages.

Here, the Settlement recovers more for investors than comparable securities class actions settlements. *See, e.g., In re China Sunenergy Sec. Litig.*, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 WL 313474, at *10

---

[3] Defendants dispute that Plaintiff or investors were damaged, contest Plaintiff's class-wide damages estimate, and believe that Plaintiff and investors would not be entitled to recover damages should this Action continue.

(S.D.N.Y. Feb. 1, 2007) (recovery of approximately 6.25% was "at the higher end of the range of reasonableness of recovery in class action[ ] securities litigation"). According to Cornerstone Research, the median recovery in cases such as this one alleging Rule 10b-5 claims with $150-249 million in maximum estimated damages was approximately 3.5% of estimated damages in 2023, and 4% between 2014-2022. (Ex. 8 to Kim Decl., Fig. 5). Between 2019-2023, securities class actions that settled after a ruling on a motion to dismiss but before the ruling on a pending class certification motion recovered a median of 4.3% of estimated damages. *Id.* at Fig. 13. Additionally, NERA Economic Consulting concluded that for cases with losses between $100-$199 million, the median settlement value as a percentage of losses was 2.9%. (Ex. 9 to Kim Decl.). Considering the extent of the recovery as well as risks of continued litigation and the time and expense that would be required to prosecute the Action through a trial, the $13,7000,000 Settlement is a reasonable and adequate recovery for the Settlement Class.

The Settlement is also reasonable and adequate when balanced against the continuing risks of securities litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation. "Courts recognize that [s]ecurities class actions are generally complex and expensive to prosecute." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020); *Bond v. Clover Health Invs., Corp.*, 2023 WL 1999859, at *8, 12-13 (M.D. Tenn. Feb. 14, 2023) (court observing that "securities law is complex" and specifically noting the "complexities associated" with price impact); *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 498 (M.D. Tenn. 2019) (recognizing case law surrounding loss causation, materiality, and price impact, "confusing," and the reasoning of recent relevant Supreme Court precedent "difficult to reconcile"). Although Plaintiff and Lead Counsel believe that the Action has merit, they acknowledge the significant risk and expense of continued litigation with no

13

guarantee of a recovery for Astec investors. For instance, Proving loss causation and damages would also be risky, complicated, and uncertain, involving conflicting expert testimony. *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult."). Scienter is also a particularly difficult element to prove. *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 488 (M.D. Tenn. 2018) ("Scienter can be difficult to establish in any setting—even after discovery or at trial"); *Plagens v. Deckard*, 2023 WL 2711263, at *26 (N.D. Ohio Mar. 30, 2023) ("scienter remains difficult to plead and hard to prove"). Even if Plaintiff successfully proved Defendants' liability at trial, the jury might reduce damages significantly. *See e.g., In re Tyco Int'l*, 535 F. Supp. 2d at 260 ("even if the jury agreed to impose liability, the trial would likely involve a confusing battle of the experts over damages."); *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed); *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *2 (S.D. Ohio Jan 27, 2011) ("Acceptance of expert testimony is always far from certain, no matter how qualified the expert, inevitably leading to a battle of the experts. The Settlement Agreement … avoids the risks attendant to this battle of the experts, which could result in a ruling against Named Plaintiffs and the Settlement Class."). Defendants deny any wrongdoing and would continue to present a multi-pronged defense.

Further litigation would likely require more extensive document discovery, depositions of numerous witnesses, additional expert reports and testimony, overcoming motions for summary judgment, and an expensive and risky trial. Any favorable judgment for the Settlement Class would be subject to post-trial motions and appeal, which could prolong the case for years without

certainty of the outcome.[4] By contrast, the Settlement provides a significant, immediate recovery and eliminates the risk, delay, and expense of continued litigation. While a greater recovery might be a theoretical possibility, evaluating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all parties. *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, No. 16-1821, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) (approving settlement noting that securities class actions "raise many complex issues" and continued litigation would require "substantial additional time and expense" for discovery, class certification, summary judgment, trial, and appeals); *Reeves v. Patenaude & Felix, A.P.C.*, 2021 WL 1186145, at \*2 (E.D. Mich. Mar. 26, 2021) ("settlement provides immediate cash compensation to Class Members while avoiding the complexity, expense, and risk of further litigation.").

Despite the substantial risks inherent in this litigation, Plaintiff and Lead Counsel were able to achieve a $13,700,000 Settlement. This is a highly favorable result for the Settlement Class in light of the aforementioned risks and, as such, weighs heavily in favor of final approval of the Settlement.

**D.     The Remaining Rule 23(e)(2)(C) Factors Support Approval**

**1.     The Methods of Distributing Relief and Processing Claims**

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently

---

[4] *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015), *reh'g denied* (July 1, 2015) (reversing jury verdict awarding investors $2.46 billion and remanding for a new trial); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant).

15

distributing the Net Settlement Fund. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Court appointed Strategic Claims Services ("SCS") as the Claims Administrator to administer the Settlement. (Preliminary Approval Order, ¶11). Under Lead Counsel's guidance, SCS has begun to process claims, allowing claimants an opportunity to cure any deficiencies or request the Court to review a denial of their claim, and will distribute to Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan, as set forth in the Long Notice. This method of distributing relief – issuing notice and soliciting claims – is both effective and necessary, as the Parties do not possess the individual investor trading data required to distribute the Net Settlement Fund. *GMC*, 315 F.R.D. at 242 (finding similar notice program "satisfied Rule 23's notice requirement").

### 2. Proposed Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in Plaintiff's Memorandum in Support of Motion for an Award of Attorneys' fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff ("Fee Brief"), filed concurrently herewith, Lead Counsel seeks an award of attorneys' fees of one-third of the Settlement and reimbursement for expenses incurred in litigating this Action. The notice program, which this Court approved and Lead Counsel and the Claims Administrator duly executed, fully disclosed the maximum amount of fees and costs that Lead Counsel and Plaintiff would seek. *See, e.g.,* Evans Decl., Exs. A (Long Notice), C (Postcard Notice). Not one Settlement Class Member has objected. As such, the Settlement satisfies Rule 23(e)(2)(C)(iii).

### 3. Other Agreements

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties executed a standard supplemental agreement in which Defendants may terminate the Settlement if the number of shares held by Settlement Class Members who elect to opt out reaches a certain threshold.

16

Stipulation ¶2.12. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms of the supplemental agreement are kept confidential to avoid incentivizing Settlement Class Members to opt out solely to leverage the threshold to exact an individual settlement. *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cnty., Tenn. v. Momenta Pharm., Inc.*, 2020 WL 3053467, at *2 (M.D. Tenn. May 29, 2020) (granting final approval after noting that "supplemental agreements that set forth confidential terms of termination in the event exclusions reached a certain threshold … may appropriately be kept confidential and not filed on the public docket"). This does not detract from the fairness of the Settlement. *Christine Asia Co.*, 2019 WL 5257534, at *15 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").

### 4. The Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiff

Fed. R. Civ. P. 23(e)(2)(D) requires courts to evaluate whether a settlement treats class members equitably relative to one another. The Settlement does not offer preferential treatment to Plaintiff or any Settlement Class Member. The Plan ensures that the Settlement treats all Settlement Class Members equitably relative to one another. The Plan provides for distribution of the Net Settlement Fund to Authorized Claimants who suffered losses on their transactions in Astec common stock during the Settlement Class Period, based on when each investor purchased, acquired, and/or sold Astec common stock. Lead Counsel developed the Plan in consultation with the Claims Administrator and Plaintiff's damages expert. All Settlement Class Members' recoveries will be based upon the relative losses they sustained. Plaintiff will receive a *pro rata* distribution from the Net Settlement Fund per the Plan, just like all other Settlement Class Members.

17

As discussed in the Fee Brief, Plaintiff also seeks an award of $15,000 as reimbursement for his time and costs spent representing the Settlement Class, as authorized by the PSLRA. 15 U.S.C. § 78u-4(a)(4).

### E. The Remaining Sixth Circuit *UAW* Factors Favor Final Approval

Most of the *UAW* factors courts in the Sixth Circuit consider are coextensive with the factors courts must consider under Rule 23(e)(2). To the extent the *UAW* factors go beyond the requirements of the Federal Rules of Civil Procedure, those factors weigh in favor of final approval of the Settlement.

#### 1. Plaintiff and Lead Counsel Were Sufficiently Informed at This Stage of the Proceedings

Courts are mindful that parties should be fully informed about the case and claims prior to reaching a class action settlement. This factor ensures "that the Parties have been able to perform a realistic assessment of the factual and legal strengths and weaknesses of the claims and defenses arising from this case." *Telectronics*, 137 F. Supp. 2d at 1015; *GMC*, 315 F.R.D. at 237 (settlement was supported by the fact that parties had "sufficient information to evaluate the strengths and weaknesses of the case and the merits of the Settlement."); *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at \*13-\*14 (N.D. Cal. Oct. 25, 2016) (discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").

Lead Counsel conducted an extensive investigation of the claims asserted in this Action, including: (i) reviewing Astec's SEC filings, press releases, conference calls, and other public statements; (ii) reviewing public documents, reports, and news articles concerning Astec including research reports by securities and financial analysts; and (iii) retaining an investigator to independently interview former Astec employees and other knowledgeable third-parties. In

18

discovery, Lead Counsel served written discovery requests, including subpoenas, and reviewed over 150,000 pages of documents produced by Defendants and third-parties. Moreover, reviewing Defendants' mediation statements and participating in negotiations during the three settlement sessions further informed Plaintiff and Lead Counsel about the strengths and weaknesses of the case. Kim Decl. ¶24. As a result, Plaintiff and Lead Counsel had a full understanding to assess the Settlement thoroughly before accepting it.

### 2. Experienced Counsel's Recommendations

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See Wess*, 2011 WL 1463609, at *5 ("It is well settled that, in approving a class action settlement, the court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.") (quoting *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)); *UAW v. Gen. Motors Corp.*, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (observing that "[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement"). Lead Counsel has extensive securities litigation experience and obtained a thorough understanding of the merits and risks of the Action. Defendants are represented skilled securities practitioners at Alston & Bird who are experts in the field, were knowledgeable about the case, and represented Defendants vigorously. Kim Dec., ¶19. That Lead Counsel recommends the Settlement supports final approval.

### 3. The Reaction of the Settlement Class Supports Final Approval

In considering approval of a class action settlement, the Court should look to the reaction of the class members. *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008). To date, there are no objections to or requests for exclusion from the Settlement. Kim Decl., ¶29; Evans Decl., ¶¶13-14. "The lack of objections to the Settlement or Plan of Allocation provides convincing evidence

Case 1:19-cv-00024-CEA-CHS   Document 122   Filed 08/01/24   Page 27 of 34 PageID #: 2401

that the settlement is fair, reasonable and adequate." *Palm Tran*, 2022 WL 17582004, at *4. *See also In re Se. Milk Antitrust Litig.*, 2013 WL 2155379, at *6 (E.D. Tenn. May 17, 2013) ("The lack of objections by class members in relation to the size of the class highlights the fairness of the settlements to unnamed class members and supports approval of the settlements."); *Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *5 (E.D. Mich. Dec. 12, 2013) ("Such unanimous approval is entitled to great weight and favors final approval, particularly where the Notice is known to have been mailed to each of the class members."); *Robinson v. Ford Motor Co.,* 2005 WL 5253339, at *5 (S.D. Ohio June 15, 2005) ("a relatively small number of class members who object is an indication of a settlement's fairness"). Settlement Class Members who wish to be excluded from, or object to, the Settlement must do so by August 8, 2024, pursuant to the Court's detailed instructions in the Preliminary Approval Order. The absence of any objections or requests for exclusion strongly supports final approval of the Settlement. In his reply, Plaintiff will address any exclusion requests or objections that postdate this motion after the deadlines have passed.

### 4. The Public Interest Supports Final Approval

The public interest also supports final approval of the Settlement of this complex class action. *UAW*, 497 F.3d at 632 (noting "the federal policy favoring settlement of class actions"); *Griffin*, 2013 WL 6511860, at *2 (similar). The Supreme Court has recognized that private securities actions such as this one are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

This Settlement furthers this public policy by providing a substantial recovery to a large Settlement Class of shareholders. *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 782 (N.D. Ohio 2010) (the public interest is served by a class-wide recovery for a class that otherwise

20

"would almost certainly have gone uncompensated"). The settlement of complex cases conserves scarce judicial resources. It resolves the claims of the entire Settlement Class of aggrieved shareholders and ends this protracted and contentious Action, avoiding further years of litigation. *See Se. Milk,* 2013 WL 2155379, at \*7 ("The proposed settlement ends potentially long and protracted litigation among these parties and frees the Court's valuable judicial resources); *Motter v. O'Brien*, 2014 WL 12892732, at \*1 (S.D. Ohio June 12, 2014) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."). Thus, public policy favors final approval of this Settlement.

## V. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

The Court preliminarily approved the Plan of Allocation in the Preliminary Approval Order. The Plan was detailed in the Long Notice disseminated to Settlement Class Members. Evans Decl., Ex. A at 4-6. Plaintiff now seeks final approval of the Plan for the purposes of administering the Settlement. "Approval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole; the distribution plan must be fair, reasonable and adequate." *Griffin*, 2013 WL 6511860, at \*7. "[A] court must ensure that the distribution of the settlement proceeds is equitable." *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 534 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429–30 (S.D.N.Y. 2001). Courts should look to counsel's opinion when evaluating a plan of allocation. *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993) (stating that "[t]he court ... affords considerable weight

21

to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of settlement proceeds).

The Plan is fair, reasonable, and adequate because it does not treat Plaintiff or any other Settlement Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part*, 699 F. App'x 8 (2d Cir. 2017). Lead Counsel developed the Plan after consulting with the Claims Administrator and Plaintiff's damages expert. Kim Decl. ¶26. The Plan distributes the Net Settlement Fund equitably among Settlement Class Members who were injured by Defendants' alleged misconduct and who submit valid Claim Forms. *Id.* Each eligible Settlement Class Member who submits a valid Claim Form will receive a *pro rata* distribution pursuant to the Plan. The Plan calculates a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on when and at what prices the claimant purchased and/or sold Astec common stock. The Plan does not compensate losses from "in and out" transactions, *i.e.* when shares are sold prior to revelation of the truth, comporting with binding legal precedent governing securities fraud actions. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").

The Plan closely tracks the form of plans of allocation commonly approved in similar securities class action settlements. In securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common" because they tend to mirror the complaint's allegations. *In re Datatec Sys., Inc. Sec. Litig.*, 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awarded a *pro rata* share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds").

To date, no Settlement Class Member has objected to the Plan of Allocation. Kim Decl., ¶29; Evans Decl. ¶14. Therefore, the Court should approve the proposed Plan of Allocation.

## VI. THE NOTICE SATISFIED RULE 23, DUE PROCESS, AND THE PSLRA

The Court previously reviewed and approved the form and contents of the Notice and Claim Form, (Preliminary Approval Order, ¶¶9, 14-20), finding that it "constitute[d] the best notice practicable under the circumstances; and constitute[d] due and sufficient notice to all persons and entities entitled thereto." *Id.*, ¶20. The notice program, alerted the Settlement Class to their rights to file a claim, request exclusion from, or object to any aspect of the Settlement or application for attorneys' fees, including detailed instructions of how to take action and the consequences of any particular choice. This complied with this Court's Preliminary Approval Order and satisfies the requirements of Rules 23(c)(2) and (e)(1), the PSLRA (15 U.S.C. §78u-4(a)(7)), and due process.

Courts evaluate a notice program's compliance with Rule 23 and due process in terms of its reasonableness. Fed. R. Civ. P. 23(e)(1). Notice is reasonable where it comprises "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(2)(C)(ii); *Williams*, 720 F.2d at 921. "Due process … means that the notice must fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Pelzer v. Vassalle*, 655 F. App'x 352, 368 (6th Cir. 2016).

Under Lead Counsel's direction, SCS executed the notice program as directed in the Preliminary Approval Order. To date, 22,381 notices were mailed and/or emailed to potential Settlement Class Members either by SCS or nominees. Evans Decl., ¶¶6-9. SCS also published the Court-approved Summary Notice online in *GlobeNewswire* and in print in *Investor's Business*

*Daily*. *Id.*, ¶10. SCS also added all important documents and dates regarding the Settlement online on the Settlement website. *Id.*, ¶12. Additionally, Defendants independently provided notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1715 *et seq.* (Dkt. No. 120) (Declaration of CAFA compliance). The proposed notice program satisfies due process because it included both individual notice and general publication. *See Fidel v. Farley*, 534 F.3d 508, 515 (6th Cir. 2008).

The Notice disseminated to the Settlement Class also provided all necessary information for Settlement Class Members to make an informed decision regarding the proposed Settlement. The Notice gave Settlement Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the Parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Lead Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for important Settlement-related events. *See* PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Settlement Class Members who submit valid and timely claim forms under the Plan as described in the Long Notice.

In sum, the Notice fairly apprised Settlement Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.

## VII. CONCLUSION

For the forgoing reasons, the Court should grant final approval of the proposed Settlement, the Plan, and notice program. With his reply brief, Plaintiff will submit the [Proposed] Final Order

and Judgment, previously filed as Exhibit B to the Stipulation (Dkt. No. 114-6), after the deadline for the submission of claims, objections to the Settlement, and exclusions from the Settlement has passed.

Dated: August 1, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Phillip Kim*
Phillip Kim
Daniel Tyre-Karp
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
        dtyrekarp@rosenlegal.com
        lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

**BRAMLETT LAW OFFICES**
Paul Kent Bramlett #7387
Robert Preston Bramlett #25895
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215-0734
Telephone: 615-248-2828
Facsimile: 866-816-4116
Email: pknashlaw@aol.com
        Robert@BramlettLawOffices.com

*Liaison Counsel for Lead Plaintiff*

25

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 1, 2024, I served true and correct copies of the foregoing by posting the document electronically to the ECF website of the United States District Court for the Eastern District of Tennessee, for receipt electronically by the parties listed on the Court's Service List.

<div align="center" style="margin-left:50%">

*/s/ Phillip Kim*
Phillip Kim

</div>

26