**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| CITY OF TAYLOR GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | Case No. 1:19-cv-00024-CEA-CHS |
| | ) ) | CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | Judge Charles E. Atchley, Jr. |
| ASTEC INDUSTRIES, INC., BENJAMIN G. BROCK and DAVID C. SILVIOUS, | ) ) ) | Magistrate Judge Christopher H. Steger |
| Defendants. | ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND AWARD TO LEAD PLAINTIFF**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    AWARDING OF ATTORNEYS' FEES............................................................. 3

      A.      Plaintiff's Counsel is Entitled to a Fee from the Common Fund it Obtained......... 3

      B.      The Court Should Award Plaintiff's Counsel a Reasonable Percentage of the Settlement Fund ..................................................................................... 3

      C.      The Requested Attorneys' Fees are Reasonable Under the Percentage of the Fund Method ............................................................................. 5

      D.      The Sixth Circuit Factors Confirm the Requested Fee is Fair and Reasonable...... 8

           1.     The Value of the Benefit Obtained for the Settlement Class, in Light of the Risks Avoided, Supports the Requested Fee.................................................. 8

           2.     Society's Stake in Rewarding Attorneys Who Enforce Securities Laws Supports the Requested Fee............................................................... 11

           3.     The Contingent Nature of the Representation Supports the Requested Fee Award ................................................................................. 13

           4.     A Lodestar Cross-Check Supports the Reasonableness of the Requested Attorneys' Fees.................................................................... 14

           5.     The Complexity of the Litigation Supports the Requested Fee ....................... 18

           6.     The Professional Skill and Standing of Counsel Supports the Requested Fee Award ................................................................................. 19

      E.      The Reaction of the Settlement Class Confirms the Requested Fee is Reasonable ............................................................................. 21

III.   PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED............................................. 22

IV.   THE COURT SHOULD GRANT AN AWARD TO PLAINTIFF................................. 23

V.    CONCLUSION.............................................................................................. 25

Case 1:19-cv-00024-CEA-CHS    Document 124    Filed 08/01/24    Page 2 of 36 PageID #: 2416

<u>**TABLE OF AUTHORITIES**</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) ................................................................................... 9

*Andrews v. State Auto Mut. Ins. Co.*,
  2023 WL 7018839 (S.D. Ohio Oct. 25, 2023)..................................................... 7, 17

*Arp v. Hohla & Wyss Enterprises, LLC*,
  2020 WL 6498956 (S.D. Ohio Nov. 5, 2020)................................................ 6, 14, 17

*Bailey v. AK Steel Corp.*,
  2008 WL 553764 (S.D. Ohio Feb. 28, 2008)......................................................... 17

*Barbee v. Navihealth, Inc.*,
  2020 WL 6365515 (M.D. Tenn. Sept. 21, 2020)..................................................... 7

*Barnes v. City of Cincinnati*,
  401 F.3d 729 (6th Cir. 2005) ............................................................................ 14, 15

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988)............................................................................................... 11

*Bessey v. Packerland Plainwell, Inc.*,
  2007 WL 3173972 (W.D. Mich. Oct. 26, 2007)...................................................... 7

*Blum v. Stenson*,
  465 U.S. 886 (1984)........................................................................................ 3, 7, 15

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)................................................................................................. 3

*Bowling v. Pfizer, Inc.*,
  102 F.3d 777 (6th Cir. 1996) ................................................................................... 8

*Burns v. FalconStor Software, Inc.*,
  2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ...................................................... 18

*Chamberlain v. Reddy Ice Holdings, Inc.*,
  757 F. Supp. 2d 683 (E.D. Mich. 2010)................................................................. 10

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .............................................. 19, 20, 25

ii

*City of Providence v. Aeropostale, Inc.,*
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................................................................... 12, 19

*Cosby v. KPMG LLP*,
2022 WL 4129703 (E.D. Tenn. July 12, 2022) ........................................................ 15, 18, 24

*Dowling v. Litton Loan Servicing LP*,
320 F. App'x 442 (6th Cir. 2009) ........................................................................................ 15

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) .............................................................................................................. 10

*Fox v. Vice*,
563 U.S. 826 (2011) .............................................................................................................. 16

*Ganci v. MBF Inspection Serv., Inc.*,
2019 WL 6485159 (S.D. Ohio Dec. 3, 2019) ................................................................ 3, 6, 13

*Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*,
2015 WL 13647397 (M.D. Tenn. Jan. 16, 2015) ................................................................... 24

*Gascho v. Glob. Fitness Holdings, LLC*,
822 F.3d 269 (6th Cir. 2016) .......................................................................................... 3, 8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ............................................................................................... 11

*Grae v. Corr. Corp. of Am.*,
2021 WL 5234966 (M.D. Tenn. Nov. 8, 2021) ................................................................ 6, 24

*Grae v. Corr. Corp. of Am.*,
330 F.R.D. 481 (M.D. Tenn. 2019) ...................................................................................... 18

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................................... 10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................................ 8

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ....................................................................... 12

*Hogan v. Cleveland Ave Rests. Inc.*,
2019 WL 6715976 (S.D. Ohio Dec. 10, 2019) ..................................................................... 24

iii

*Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*,
2022 WL 826903 (C.D. Cal. Mar. 14, 2022) ................................................................. 16

*Hosp. Authortiy of Metopolitan Gov't of Nashville v. Momenta Pharms., Inc.*,
2020 WL 3053468 (M.D. Tenn. May 29, 2020) .......................................................... 6, 18

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ................................................................ 21

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................................................... 18

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ................................................................. 17

*In re Auto. Partsantitrust Litig.*,
2019 WL 13090127 (E.D. Mich. Dec. 29, 2019) .......................................................... 16

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................... 11

*In re Cardinal Health Inc. Sec. Litigations*,
528 F. Supp. 2d 752 (S.D. Ohio 2007) ................................................................. *passim*

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................ 5

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........................................................................................ 10

*In re Chemed Corp. Sec. Litig.*,
2014 WL 12650642 (S.D. Ohio July 15, 2014) ............................................................. 7

*In re China Sunenergy Sec. Litig.*,
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................................................ 8

*In re Comverse Tech., Inc. Sec. Litig.*,
2010 WL 2653354 (E.D.N.Y. June 24, 2010) .............................................................. 17

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) ................................................................... 12, 21, 23

*In re DPL Inc., Sec. Litig.*,
307 F. Supp. 2d 947 (S.D. Ohio 2004) ......................................................................... 8

iv

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ................................................................... 6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................................ 12, 13

*In re Glob. Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................. 10, 23

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................................... 19

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ......................................................... 10, 25

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ................................................................. 8

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) .............................................................................................. 4

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) ............................................................... 24

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
2014 WL 2946459 (E.D. Tenn. Jun. 30, 2014) .......................................................... 4, 7

*In re Southeastern Milk Antitrust Litig.*,
2013 WL 2155387 (E.D. Tenn. May 17, 2013) ..................................................... *passim*

*In re Telectronics Pacing Sys., Inc.*,
137 F. Supp. 2d 1029 (S.D. Ohio 2001) ....................................................................... 12

*In re Tupperware Brands Corp. Sec. Litig.*,
2020 WL 3259749 (M.D. Fla. May 27, 2020) ............................................................. 20

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................................... 16

*In re UnumProvident Corp. Derivative Litig.*,
2010 WL 289179 (E.D. Tenn. Jan. 20, 2010) ............................................................... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .............................................................. 16

*Jenson v. First Tr. Corp.*,
2008 WL 11338161 (C.D. Cal. June 9, 2008) ........................................................................ 24

*Katz v. China Century Dragon Media, Inc.*,
2013 WL 11237202 (C.D. Cal. Oct. 10, 2013).......................................................................... 7

*Lindy Bros. Builders of Phila. v. Am. Radiator & Standard Sanitary Corp.*,
487 F.2d 161 (3d Cir. 1973).................................................................................................. 15

*Louisville Black Police Officers Org. v. City of Louisville,*
700 F.2d 268 (6th Cir. 1983) ................................................................................................ 15

*Lowther v. AK Steel Corp.*,
2012 WL 6676131 (S.D. Ohio Dec. 21, 2012) ............................................................ 15, 18, 21

*Maher v. Zapata Corp.*,
714 F.2d 436 (5th Cir. 1983) ................................................................................................ 19

*Manners v. Am. Gen. Life Ins. Co.*,
1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ................................................................... 18

*Matter of Cont'l Illinois Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ................................................................................................ 15

*McHugh v. Olympia Entm't, Inc.*,
37 Fed. App'x 730 (6th Cir. 2002) ........................................................................................ 15

*Missouri v. Jenkins*,
491 U.S. 274 (1989)............................................................................................................. 15

*Moulton v. U.S. Steel Corp.*,
581 F.3d 344 (6th Cir. 2009) .................................................................................................. 8

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
234 F.R.D. 627 (W.D. Ky. 2006)................................................................................ 18, 21, 22

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
315 F.R.D. 226 (E.D. Mich. 2016) ..................................................................................... 4, 18

*Pearlstein v. BlackBerry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)....................................................................... 15

*Pillsbury Co. v. Conboy*,
459 U.S. 248 (1983)............................................................................................................... 3

vi

*Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*,
  732 F. App'x 543 (9th Cir. 2018).................................................................................... 14

*Ramey v. Cincinnati Enquirer, Inc.*,
  508 F.2d 1188 (6th Cir. 1974) ................................................................................. 8, 12

*Rawlings v. Prudential-Bache Properties, Inc.*,
  9 F.3d 513 (6th Cir. 1993) ................................................................................... 3, 4, 5

*Redwen v. Sino Clean Energy, Inc.*,
  2013 WL 12303367 (C.D. Cal. July 9, 2013).......................................................... 10

*Robbins v. Koger Properties, Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ............................................................................... 14

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) .................................................................................... 24

*Rotuna v. W. Customer Mgmt. Grp., LLC*,
  2010 WL 2490989 (N.D. Ohio June 15, 2010).......................................................... 7

*Sawant v. Ramsey*,
  2012 WL 3265020 (D. Conn. Aug. 9, 2012) ............................................................ 14

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
  2015 WL 1498888 (E.D. Mich. Mar. 31, 2015) ......................................................... 4

*Stanley v. U.S. Steel Co.*,
  2009 WL 4646647 (E.D. Mich. Dec. 8, 2009) ......................................................... 13

*Steiner v. Am. Broad. Co.*,
  248 F. App'x 780 (9th Cir. 2007) ............................................................................. 18

*Swigart v. Fifth Third Bank*,
  2014 WL 3447947 (S.D. Ohio July 11, 2014).................................................. 4, 7, 24

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)............................................................................................ 11, 12

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir. 2012) ...................................................................................... 4

*Vinh Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................ 20

Case 1:19-cv-00024-CEA-CHS    Document 124    Filed 08/01/24    Page 8 of 36
PageID #: 2422

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................................... 17

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................................... 5

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
   2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ........................................................... 20

*Yedlowski v. Roka Bioscience, Inc.*,
   2016 WL 6661336 (D.N.J. Nov. 10, 2016) ......................................................... 14, 20

## **Statutes**

15 U.S.C. §78u-4(a) ............................................................................................... 2, 4, 23

## **Other Authorities**

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) .......................................... 23

Lead Plaintiff Lynn Johnson ("Lead Plaintiff" or "Plaintiff") submits this memorandum of law in support of his motion for: (i) an award of attorneys' fees in the amount of one-third of the Settlement; (ii) reimbursement of litigation expenses in the amount of $246,104.62; and (iii) an award to Lead Plaintiff of $15,000.[1]

## I. INTRODUCTION

The proposed $13,700,000 all-cash, non-reversionary Settlement provides a guaranteed benefit for Astec Industries, Inc. ("Astec") investors. The Settlement is the result of Plaintiff's Counsel's[2] vigorous, persistent, and skilled efforts. For over five years of hard-fought litigation, Plaintiff's Counsel has not received any compensation or reimbursement of out-of-pocket expenses, litigating this case on a contingency basis on behalf of Plaintiff and the putative class.

Plaintiff's Counsel requests that the Court award attorneys' fees from the common Settlement Fund, in an amount equal to one-third of the Settlement Amount, or $4,566,666.67, (plus interest) for Plaintiff's Counsel's efforts in obtaining this highly favorable result. In zealously representing Plaintiff and the Settlement Class since 2019, Plaintiff's Counsel faced the material risk of non-payment of attorneys' fees and litigation expenses that they advanced. Indeed, the Action was initially dismissed, but through Lead Counsel's efforts was successfully appealed to

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement, filed on May 6, 2024 ("Stipulation") (Dkt. No. 114). Citations to "Kim Decl." are to the Declaration of Phillip Kim, filed herewith. Citations to "Evans Decl." are to the Declaration of Sarah Evans, attached as Exhibit 1 to the Kim Decl. Citations to "Bramlett Fee Decl." are to the Declaration of Paul Kent Bramlett in Support of Application for Attorneys' Fees and Expenses, attached as Exhibit 5 to the Kim Decl. Citations to "Fistel Fee Decl." are to the Declaration of Michael I. Fistel, Jr. in Support of Application for Attorneys' Fees and Expenses, attached as Exhibit 6 to the Kim Decl.

[2] "Plaintiff's Counsel" is comprised: of Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law"); Liaison Counsel, Bramlett Law Offices ("Bramlett Law"); and Johnson Fistel LLP ("Johnson Fistel"). Johnson Fistel served as local counsel for Plaintiff in an action filed in the United States District Court for the Southern District of Georgia to compel a non-party to comply with a subpoena.

the Sixth Circuit and revived. Additionally, in securing this Settlement for Plaintiff and the Settlement Class, Plaintiff's Counsel began engaging in discovery which included exchanging written requests, reviewing over tens of thousands of pages of documents, serving subpoenas and seeking to enforce compliance with a subpoena by initiating an action in another court against a third-party. Plaintiff's Counsel also briefed a motion for class certification which required deposing Defendants' market efficiency expert and defending Plaintiff's and Plaintiff's expert's depositions. The Parties also participated in three mediation sessions at different periods of the litigation. Utilizing their skill and expertise, Plaintiff's Counsel did not agree to a settlement until they believed a fair and reasonable result for Astec investors was reached. Kim Decl. ¶18.

Thus, an award of one-third of the Settlement Amount in attorneys' fees properly reflects the risks counsel assumed and the significant recovery they achieved on behalf of Plaintiff and the Settlement Class. To date, not one Settlement Class Member has objected to the attorneys' fee request or the request for reimbursement of expenses, which were detailed in the notice issued to potential Settlement Class Members. Kim Decl., ¶29; Evans Decl., ¶14. Moreover, the requested fee is reasonable and within the range of attorneys' fees awarded in similar cases.

Plaintiff's Counsel also seeks reimbursement in total of $246,104.62 in out-of-pocket litigation expenses they incurred in prosecuting this Action. These expenses were reasonable and necessary to prosecute and resolve Plaintiff's claims successfully and are the type of litigation expenses that courts regularly reimburse in similar cases.

Finally, Plaintiff expended approximately 72 hours in leading the Action on behalf of the Settlement Class. *See* Declaration of Lead Plaintiff Lynn Johnson ("Johnson Decl." ¶9) Kim Decl., Ex. 3). Plaintiff requests an award of $15,000, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(4), to compensate him for his time spearheading the

litigation. This request is reasonable and in line with awards granted in similar cases.

## II.    AWARDING OF ATTORNEYS' FEES

### A.    Plaintiff's Counsel is Entitled to a Fee from the Common Fund it Obtained

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). [3] Similarly, the Sixth Circuit has held that upon awarding attorney's fees in a class action " a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (citing *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Courts within the Sixth Circuit follow suit. *Ganci v. MBF Inspection Serv., Inc.*, 2019 WL 6485159, at *6 (S.D. Ohio Dec. 3, 2019). "Failing to fully compensate class counsel for the excellent work done and the various substantial risks taken would undermine society's interest in private litigation" to redress securities and antitrust violations. *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *5 (E.D. Tenn. May 17, 2013) (citing *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983)).

Here, Plaintiff's Counsel's efforts have conferred a substantial benefit – $13,700,000 in cash – for the Settlement Class, warranting payment of attorneys' fees from the common fund.

### B.    The Court Should Award Plaintiff's Counsel a Reasonable Percentage of the Settlement Fund

Most courts prefer awarding fees from a common fund by the "percentage of the fund" method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class").

---

[3] Citations and internal quotations are omitted and emphasis is added, unless otherwise noted.

Although courts have discretion to utilize either the lodestar or the percentage of the fund methods when awarding attorney's fees, there is a trend in the Sixth Circuit "towards adoption of a percentage of the fund method" in common fund cases." *Rawlings*, 9 F.3d at 516; *Se. Milk*, 2013 WL 2155387, at *2.  This Court should apply the percentage of the fund method as it eliminates disputes about the reasonableness of rates and hours, conserves judicial resources, and aligns the interests of class counsel and the class members. *See, e.g., Rawlings*, 9 F.3d at 515-17 ("the percentage of the fund method more accurately reflects the results achieved."); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *5 (S.D. Ohio July 11, 2014); *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 2015 WL 1498888, at *15 (E.D. Mich. Mar. 31, 2015). It also "has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or 'churn' cases." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014).

The percentage of the fund method also comports with the PSLRA. *New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 243 (E.D. Mich. 2016), *aff'd sub nom. Marro v. New York State Teachers' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017), citing 15 U.S.C. §78u-4(a)(6) ("[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"). As courts have recognized, "[p]art of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

Conversely, the lodestar method "has been criticized for being too time-consuming of scarce judicial resources," as it requires that courts "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier." *Rawlings*,

9 F.3d at 516–17. Moreover, "[w]ith the emphasis it places on the number of hours expended by counsel rather than the results obtained, it also provides incentives for overbilling and the avoidance of early settlement." *Id.* at 517; *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the lodestar method "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.").

### C. The Requested Attorneys' Fees are Reasonable Under the Percentage of the Fund Method

The standard for a requested award of attorneys' fees in common fund cases in the Sixth Circuit is that they be "reasonable under the circumstances." *Rawlings*, 9 F.3d at 516; *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 531 (E.D. Mich. 2003). Here, Plaintiff's Counsel's zealous prosecution led to achieving this Settlement for Settlement Class Members. Their efforts support the reasonableness of the requested fee award.

Through more than five years of litigating this Action, Plaintiff's Counsel: successfully moved for appointment of the Lead Plaintiff; conducted extensive legal research and investigation of the factual allegations and claims of Plaintiff and the putative class, including identifying, locating, and interviewing witnesses and consulting with experts; prepared and filed the Amended Complaint; conducted legal and factual research in opposing Defendants' motion to dismiss the Amended Complaint; filed the Motion to Alter or Amend the Judgment and for Leave to File the Proposed Amended Complaint; successfully appealed the order dismissing the Action to the Sixth Circuit; negotiated a discovery schedule and document production protocols; reviewed over 150,000 pages of documents; issued and responded to document requests and interrogatories; served subpoenas and successfully sued in a separate federal court to enforce a subpoena; briefed a motion for class certification including deposing Defendants' market efficiency expert and

defending Plaintiff's and Plaintiff's market efficiency expert's depositions; participated in three mediation sessions and extended negotiations after the final mediation; negotiated and finalized the Settlement; successfully moved for preliminary approval of the Settlement; and oversaw the Court-approved notice program. Kim Decl. ¶24.

The legal work Lead Counsel performed for the Settlement Class's benefit will not end with the Court's approval of the proposed Settlement. Plaintiff's Counsel will devote additional hours and resources to respond to Settlement Class Members' inquiries, address any concerns the Court may have at the Settlement Fairness Hearing, and conclude the claims process by filing a motion to distribute the Net Settlement Fund to Settlement Class Members. *See Arp v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020) ("Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters."). Plaintiff's Counsel will not seek additional compensation for this work. Kim Decl. ¶38. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (awarding 33% as attorneys' fees, considering time and effort expended already and remaining work to oversee claims process and distribution), *aff'd,* 674 F. App'x 37 (2d Cir. 2016).

A fee of one-third of the common fund for Plaintiff's Counsel's efforts is consistent with awards courts in the Sixth Circuit have granted in similar common fund cases. *See, e.g.*, *Stein, et al., v. U.S. Xpress Enterprises, Inc., et al.,* Case No. 1:19-cv-00098-TRM-CHS (E.D. Tenn, July 12, 2023) (awarding fees of one-third of $13 million settlement) (Kim Decl., Ex. 7); *Grae v. Corr. Corp. of Am.*, 2021 WL 5234966, at *1 (M.D. Tenn. Nov. 8, 2021) (awarding attorneys' fees of one-third of settlement); *Hosp. Authortiy of Metropolitan Gov't of Nashville v. Momenta Pharms., Inc.*, 2020 WL 3053468, at *1 (M.D. Tenn. May 29, 2020) (same); *Ganci*, 2019 WL 6485159, at

6

\*7 (same); *Barbee v. Navihealth, Inc.*, 2020 WL 6365515, at \*1 (M.D. Tenn. Sept. 21, 2020) (same); *Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 WL 2490989, at \*8 (N.D. Ohio June 15, 2010) (same); *Andrews v. State Auto Mut. Ins. Co.*, 2023 WL 7018839, at \*6 (S.D. Ohio Oct. 25, 2023) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are one-third of the total settlement."); *Se. Milk*, 2013 WL 2155387, at \*3 (finding that 33% "is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Swigart*, 2014 WL 3447947, at \*7 ("An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions"); *Bessey v. Packerland Plainwell, Inc.*, 2007 WL 3173972, at \*4 (W.D. Mich. Oct. 26, 2007) (awarding 33%, and noting that "[e]mpirical studies show that . . . fee awards in class actions average around one-third of the recovery"); *In re Chemed Corp. Sec. Litig.*, 2014 WL 12650642, at \*1 (S.D. Ohio July 15, 2014) (awarding 33%); *Skelaxin*, 2014 WL 2946459, at \*1 (awarding one-third of a $73 million settlement fund, which the court found "fair and reasonable and fully justified" and "within the range of fees ordinarily awarded.").

The requested fee is also in line with contingent fees in individual cases, which typically range from 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.20 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202, at \*8 (C.D. Cal. Oct. 10, 2013) ("contingency fee arrangements generally range from 30% to 40% of final recovery.").

Thus, this Court should grant Plaintiff's Counsel's request for an award of attorneys' fees in the amount of one-third of the Settlement Amount because the request is reasonable and consistent with awards granted in similar cases in this Circuit.

7

### D. The Sixth Circuit Factors Confirm the Requested Fee is Fair and Reasonable

In *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194–97 (6th Cir. 1974), the Sixth Circuit identified the following criteria for courts to consider when reviewing a request for attorneys' fees in a common fund case:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

These factors have since become the standard metric in the Sixth Circuit for evaluating the reasonableness of the attorneys' fees requested in a class action. *See Gascho*, 822 F.3d at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). These factors support the requested attorneys' fees.

### 1. The Value of the Benefit Obtained for the Settlement Class, in Light of the Risks Avoided, Supports the Requested Fee

The result achieved for the Settlement Class is one of the primary factors courts consider in gauging the reasonableness of a requested fee award. *In re DPL Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 951 (S.D. Ohio 2004); *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (finding the "most critical factor is the degree of success obtained"). Here, the $13,700,000 Settlement Amount represents approximately 8.4% of the maximum estimated damages of $163.7 million under Plaintiff's best-case scenario, as estimated by Plaintiff's damages expert.

The Settlement recovery is well within the range of other securities class action settlements. *See, e.g., In re China Sunenergy Sec. Litig.*, 2011 WL 1899715, at *15 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions ranges from 3% to 7% of total estimated losses); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery). Indeed, according to Cornerstone Research, the

8

median recovery in cases like this one alleging Rule 10b-5 claims with $150-249 million in maximum estimated damages was approximately 3.5% of estimated damages in 2023, and 4% between 2014-2022. (Kim Decl., Ex. 8, Fig. 5). Between 2019-2023, securities class actions that settled after a ruling on a motion to dismiss, but before the ruling on a pending class certification motion, recovered a median of 4.3% of estimated damages. *Id*. at Fig. 13. Further, according to NERA Economic Consulting, for cases with losses between $100-$199 million, the median settlement value as a percentage of losses was 2.9%. (Kim Decl., Ex. 9).

The Settlement Amount is even more favorable than those raw numbers indicate because the $163.7 million maximum damages theoretically available under Plaintiff's best-case scenario assumes that: (i) Plaintiff is able to succeed at summary judgment and at trial; (ii) the Court certifies the same class period as the Settlement Class Period; (iii) Plaintiff is able to prove that Defendants' alleged misrepresentations caused the *entirety* of each of the stock declines alleged in the Complaint; and (iv) the Court and jury accept Plaintiff's damages theory, including proof of loss causation. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages. Thus, the Settlement represents a highly favorable result for the Settlement Class.

Moreover, the value of the amount recovered for the Settlement Class must also be weighed against the risks the Settlements avoids. While Plaintiff's Counsel believes that Plaintiff's claims that were revived on appeal are meritorious and remain confident in their ability to prevail at class certification, summary judgment, and trial, there remain substantial risks in the litigation. Without the Settlement, Plaintiff's ability to obtain and collect a substantial judgment, much less a larger one than the Settlement Amount, is far from certain. *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("to be successful, a securities class-action plaintiff must

thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.").

Even if Plaintiff overcame each of the impending procedural obstacles and successfully established liability, he would still face considerable challenges in establishing loss causation and damages. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"); *Chamberlain v. Reddy Ice Holdings, Inc.*, 757 F. Supp. 2d 683, 714 (E.D. Mich. 2010) ("a plaintiff must show that an economic loss occurred after the truth behind the misrepresentation or omission became known to the market."). Proving damages presents a significant risk in securities class actions. "Calculation of damages is a complicated and uncertain process, typically involving conflicting expert opinion ..." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004). "There is the undeniable risk that a jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses." *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). As explained herein, proving damages in this case presented a particularly large risk.

Further, if Plaintiff defeated these risks and a jury awarded the full measure of damages, he would still face the risk of an adverse decision on post-trial motions, or reversal on appeal. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict of $2.46 billion on loss causation and damages grounds, remanding for a new trial on these issues); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following jury verdict in plaintiffs' favor), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

Accordingly, the value of the benefit of the Settlement, weighed against the risks Plaintiff's Counsel overcame in litigating the case and the risks Plaintiff still faces, supports awarding the requested amount of attorneys' fees.

### 2. Society's Stake in Rewarding Attorneys Who Enforce Securities Laws Supports the Requested Fee

Adequate compensation is a necessary component of encouraging attorneys to assume the risk of litigation in the public interest. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits. *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988); *see also In re Cardinal Health Inc. Sec. Litigations*, 528 F. Supp. 2d 752, 766 (S.D. Ohio 2007).

Indeed, without adequate compensation it would be difficult to retain the caliber of lawyers necessary, willing, and able to properly prosecute, to a favorable conclusion, such complex, risky, and expensive securities class actions such as this one. *Se. Milk*, 2013 WL 2155387, at *5 ("If

11

counsel are not rewarded for this risk, few attorneys will undertake the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing."). As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence v. Aeropostale, Inc.,* 2014 WL 1883494, at \*18 (S.D.N.Y. May 9, 2014); *see also Hicks v. Stanley*, 2005 WL 2757792, at \*9 (S.D.N.Y. Oct. 24, 2005) (private securities actions promote securities laws' objectives, but "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class."). Thus, "[i]n evaluating the reasonableness of a fee request, the court also must consider society's stake in rewarding attorneys who produce a common benefit for class members in order to maintain an incentive to others." *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 503 (E.D. Mich. 2008); *Ramey*, 508 F.2d at 1196. If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*29 (S.D.N.Y. Nov. 8, 2010)

Society also benefits from fair and efficient capital markets, and private enforcement of the securities laws is necessary to maintain those markets. *See Tellabs*, 551 U.S. at 313. Moreover, class actions are often the only way economically feasible way for investors – both large and small – to obtain compensation when they are victims of securities fraud. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling such small claimants to pool their claims and resources" to achieve a result "they could not obtain alone"); *Cardinal Health*,

12

528 F. Supp. 2d at 765 ("absent class actions, most individual claimants would lack the resources to litigate a case of this magnitude, and individual recoveries are often too small to justify the burden and expense of litigation."). Here, the able prosecution and favorable resolution of a class action involving private enforcement of the securities laws weighs in favor of the requested award.

The integrity of the markets depends on companies and their executives complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here.

### 3. The Contingent Nature of the Representation Supports the Requested Fee Award

Plaintiff's Counsel in undertaking the responsibility of prosecuting this complex Action on a fully contingent basis "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery." *Ganci*, 2019 WL 6485159, at *7. The financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. *Flag Telecom*, 2010 WL 4537550, at *27 ("[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Plaintiff's Counsel] have not been compensated for any time or expenses since this case began…."). As such, courts consistently recognize that the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees. *Se. Milk*, 2013 WL 2155387, at *5 ("This Court finds that the fee awarded should fully reflect the risk taken by these lawyers and is a very substantial factor in this case which weighs in favor of the requested fee."); *Stanley v. U.S. Steel Co.*, 2009 WL 4646647, at *3 (E.D. Mich. Dec. 8, 2009) ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees."). Plaintiff's Counsel's commitments of time and expenses were significant and would have gone unreimbursed had they failed to obtain a recovery.

13

Contingency fee risk is not illusory. "The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain." *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at \*21 (D.N.J. Nov. 10, 2016). There are numerous class actions in which plaintiffs' counsel expend thousands of hours, and yet receive no remuneration whatsoever despite their diligence and expertise. For example, in *Sawant v. Ramsey*, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen Law spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment. *See also, Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs reversed on appeal and judgment entered for defendant); *Pompano Beach Police & Firefighters' Ret. Sys. v. Las Vegas Sands Corp.*, 732 F. App'x 543 (9th Cir. 2018) (summary judgment granted in favor of defendants in securities fraud action after seven years of litigation).

As discuss *infra,* Section III, Plaintiff's Counsel also have incurred $246,104.62 in total out-of-pocket expenses litigating for the benefit of the Settlement Class. Plaintiff's Counsel has not received any compensation during the more than five years this Action has been pending and were never guaranteed reimbursement of these costs or the payment of any fee.

### 4. A Lodestar Cross-Check Supports the Reasonableness of the Requested Attorneys' Fees

When applying the percentage of the fund method, courts sometimes look at the hours counsel expended, either as a factor in the fee analysis, or as an independent cross-check to prevent counsel from receiving a windfall. *See Cardinal Health*, 528 F. Supp. 2d at 764. While a lodestar cross-check is not required, *Arp*, 2020 WL 6498956, at \*7, most courts conduct them to confirm the reasonableness of a fee. Counsel's lodestar is determined by multiplying "the number of hours reasonably expended on the case by a reasonable hourly rate." *Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005). For this calculation, current billing rates are used to "compensate

14

for the delay in payment during the pendency of the litigation." *Cosby v. KPMG LLP*, 2022 WL 4129703, at \*2 (E.D. Tenn. July 12, 2022); *Dowling v. Litton Loan Servicing LP*, 320 F. App'x 442, 447 (6th Cir. 2009) ("the court was within its discretion in awarding fees at 2008 rates for work performed prior to 2008 to compensate for the delay in payment"); *Barnes*, 401 F.3d at 745 ("The district court used the current market rate in calculating plaintiff's attorneys' reasonable hourly rate because the litigation had been ongoing for nearly six years.") (citing *Missouri v. Jenkins*, 491 U.S. 274 (1989)).

Moreover, billing rates used in a lodestar calculation should utilize rates from the markets where the attorneys primarily practice. In this complex litigation with attorneys mainly New York-based, reasonable hourly rates may be determined with reference "to national markets, an area of specialization, or any other market [the court believes] is appropriate to fully compensate attorneys in individual cases." *McHugh v. Olympia Entm't, Inc.*, 37 Fed. App'x 730, 740 (6th Cir. 2002) citing *Louisville Black Police Officers Org. v. City of Louisville,* 700 F.2d 268, 278 (6th Cir. 1983).[4] Plaintiff's Counsel rates have been approved by courts throughout the country and are consistent with those of other attorneys engaged in similar class action litigation.[5] The rates are

---

[4] *See, also, Lowther v. AK Steel Corp.*, 2012 WL 6676131, at \*4 (S.D. Ohio Dec. 21, 2012) (market rates must consider "experience, specialization, effort, and performance, and setting rates sufficient to ensure that class counsel are fairly compensated for the amount of work done and the results achieved"); *Blum*, 465 U.S. at 895; *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("[I]t is not the function of judges in fee litigation to determine the equivalent of the medieval just price. It is to determine what the lawyer would receive if he were selling his services in the market…," holding that district court committed legal error in placing "a ceiling of $175 on the hourly rates of all lawyers for the class, including lawyers whose regular billing rates were almost twice as high"); *Lindy Bros. Builders of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973) ("value of an attorney's time generally is reflected in his normal billing rate").

[5] *See, e.g., Pearlstein v. BlackBerry Ltd.*, 2022 WL 4554858, at \*10 (S.D.N.Y. Sept. 29, 2022) (finding hourly rates which "ranged from $500 (associates) to $1,200 (senior partners)… are comparable to peer plaintiffs and defense firms litigating matters of similar magnitude and

particularly reasonable when compared to rates of out-of-town counsel representing Defendants not charged on a contingency basis. *In re UnumProvident Corp. Derivative Litig.*, 2010 WL 289179, at *6 (E.D. Tenn. Jan. 20, 2010) (in complex cases, approving rates charged by plaintiff's out-of-town counsel where defendants were also represented by large out-of-town firms).

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, as it should be here, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *Cardinal Health*, 528 F. Supp. 2d at 767-68 (applying percentage approach and noting that the "lodestar cross check is but one of several factors it must consider; it should not unilaterally control the Court's analysis"). "Unlike the situation when the Court employs the lodestar method in full, the hours documented by counsel need not be exhaustively scrutinized by the district court where a lodestar cross-check is used." *Se. Milk,,* 2013 WL 2155387, at *2 n. 3. Thus, "an itemized statement of legal services

---

complexity"); *In re Auto. Partsantitrust Litig.*, 2019 WL 13090127, at *3 (E.D. Mich. Dec. 29, 2019) ("In national markets, partners routinely charge between $1,200 and $1,300 an hour, with top rates at several large law firms exceeding $1,400. In specialties such as antitrust and high-stakes litigation and appeals ... [f]or lawyers at the very top of those fields, hourly rates can hit $1,800 or even $1,950.") (quoting Sara Randazzo & Jacqueline Palank, *Legal Fees Cross New Mark: $1,500 an Hour*, The Wall Street Journal (Feb. 16, 2016), https://www.wsj.com/articles/legal-fees-reach-new-pinnacle-1-500-an-hour-1454960708); *Hope Med. Enters., Inc. v. Fagrgon Compounding Serv., LLC*, 2022 WL 826903, at *3 (C.D. Cal. Mar. 14, 2022) (finding "rates of $895 to $1,295 per hour for partners and counsel, and between $565 and $985 for associates" to be reasonable); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following a lodestar cross-check with "billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").

is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012). Here, an informal lodestar cross-check on the requested fee award further supports its reasonableness.

In awarding a fee under the lodestar method or conducting a cross-check in complex class actions, courts have found it appropriate to apply a multiplier to counsel's lodestar to reflect factors such as the contingency risks of the litigation and the quality of the work performed. *See, e.g., Andrews*, 2023 WL 7018839, at *6 ("a contingent fee risk is considered by many courts to be the most significant factor in awarding a multiplier"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051–52 (9th Cir. 2002) (approving a 3.65 lodestar multiplier and noting that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

Plaintiff's Counsel devoted a total of 3,207.55 hours to the prosecution of this Action, resulting in a lodestar of $2,391,212.50. Kim Decl. ¶¶36-37. This is comprised of 2,990.95 hours from Rosen Law (Kim Decl. ¶¶32-33), 144.6 hours from Bramlett Law (Bramlett Fee Decl. ¶5), and 72 hours from Johnson Fistel (Fistel Fee Decl., ¶5). The $4,566,666.67 fee request represents a multiplier on Plaintiff's Counsel's lodestar of approximately 1.91. Kim Decl. ¶37.

Courts within the Sixth Circuit have awarded fees with much higher multipliers than what Plaintiff's Counsel seek here. *See e.g., Cardinal Health*, 528 F. Supp. 2d at 768 (approving multiplier of 6, and observing that "[m]ost courts agree that the typical lodestar multiplier" on a large class action "ranges from 1.3 to 4.5"); *Arp*, 2020 WL 6498956, at *7 (awarding 5.29 multiplier); *Bailey v. AK Steel Corp.*, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) (awarding

multiplier of 3.04, noting that "[c]ourts typically … increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"); *Manners v. Am. Gen. Life Ins. Co.*, 1999 WL 33581944, at *31 (M.D. Tenn. Aug. 11, 1999) (3.8 multiplier); *Hosp. Authoritiy,* 2020 WL 3053468, at *1 (3.12 multiplier); *Lowther*, 2012 WL 6676131, at *4 (3.09 multiplier) (collecting cases); *Cosby*, 2022 WL 4129703, at *2 (2.86 multiplier). So too have other courts. *E.g., Burns v. FalconStor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 11, 2014) (33.3% award was "reasonable" based on cross-check multiplier of 4.75); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed").

The fee award Plaintiff's Counsel request is well within the range of what courts in this Circuit regularly award counsel for helping to secure settlements of complex class actions such as this one, under a percentage of the fund or lodestar multiplier method. The lodestar cross-check supports awarding Plaintiff's Counsel attorneys' fees of one-third of the common fund.

**5.      The Complexity of the Litigation Supports the Requested Fee**

Courts recognize that securities class actions are "notorious[ly] complex[]" *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006), a factor that further supports an award of attorneys' fees. *See also New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 634 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ("Consideration of the possible expense, duration, and complexity of this [securities] litigation also weighs in favor of the proposed settlements."); *GMC*, 315 F.R.D. at 244 (court finding that fee request support as "[s]ecurities litigation class actions are inherently complex"); *Grae v. Corr. Corp. of Am.*, 330 F.R.D. 481, 498 (M.D. Tenn. 2019) (recognizing case law surrounding loss causation, materiality and price impact, "confusing," and the reasoning of recent relevant Supreme Court precedent "difficult to reconcile"). In securities cases, the legal and

factual issues are complicated and highly uncertain in outcome. "[I]n evaluating the settlement of a securities class action, federal courts, including this court, have long noted that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983) (securities litigation is "notoriously difficult and unpredictable").

This case was no exception. This case raised difficult questions concerning liability and damages. The Settlement was reached after five years of hard-fought litigation. Even so, Plaintiff would still have to prevail at class certification, defeat anticipated motions for summary judgment, and prevail at trial and then through post-verdict motions and appeals on Defendants' arguments concerning falsity, scienter, and loss causation, and the proper measure of damages. The litigation also raised complex factual questions related to loss causation and damages, all of which would require development of a substantial factual record and extensive consultation with experts.

Similarly, the magnitude of the Action is unquestionable. Tens of millions of dollars in damages are at stake, and the case required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the requested fee. *See Aeropostale*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 6. The Professional Skill and Standing of Counsel Supports the Requested Fee Award

"The quality of Securities Lead Counsel's representation is evidenced by the recovery obtained for the Securities Class...." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019). Here, the Settlement provides the Settlement Class with a guaranteed cash payment of $13,700,000. The result achieved here is even more impressive when juxtaposed against the significant hurdles that, on behalf of Plaintiff and the Settlement Class, Lead Counsel

has already overcome in this Action – included a partial reversal on appeal. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, 2017 WL 3579892, at *4 (S.D.N.Y. Aug. 18, 2017) (requested fee award warranted where counsel prevailed against motion to dismiss, and prosecuted through highly contested discovery process, against well-represented opponent).

The quality of Lead Counsel's efforts and commitment to providing Plaintiff and the Settlement Class with the best possible representation, together with their substantial experience in securities class actions, provided leverage necessary to negotiate the Settlement. *See* Kim Decl. Ex. 4 (Rosen Law's Firm Résumé).[6] Courts around the country have recognized Rosen Law's respected reputation in securities litigation. *See e.g., Christine Asia Co.*, 2019 WL 5257534, at *19 (in recovering a $250 million settlement against Alibaba, the largest securities class action settlement with a Chinese issuer, the court recognized that "[t]he quality of representation by [Rosen Law] and Defendants' counsel was high in this case . . ."); *Roka Bioscience*, 2016 WL 6661336, at *21 ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *In re Tupperware Brands Corp. Sec. Litig.*, 2020 WL 3259749, at *2–3 (M.D. Fla. May 27, 2020), *report and recommendation adopted sub nom. In Re Tupperware Brands Corp. Sec. Litig.*, 2020 WL 3259086 (M.D. Fla. June 16, 2020) (recognizing that Rosen Law is "well-credentialed" with "significant securities litigation experience"); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (The Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation").

Courts have also recognized that the quality of opposing counsel should be taken into consideration in assessing the quality of the counsel's performance. "The ability of [Plaintiffs']

---

[6] The firm résumés of Bramlett Law and Johnson Fistel are attached as Exhibit A to Exhibits 5 and 6 to the Kim Decl. The time and expenses contributed by additional and liaison counsel are detailed in the Bramlett Fee Decl. and Fistel Fee Decl.

Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee requested." *Delphi*, 248 F.R.D. at 504; *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by formidable opposing counsel from some of the best defense firms in the country also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by accomplished attorneys from Alston & Bird LLP, skilled securities practitioners who vigorously represented the interests of their clients. Kim Decl. ¶19.

Notwithstanding formidable opposition, Lead Counsel skillfully prosecuted the Action, enabling them to achieve the favorable Settlement for the benefit of the Settlement Class and supporting the attorneys' fees they have requested.

### E. The Reaction of the Settlement Class Confirms the Requested Fee is Reasonable

The notice disseminated to potential Settlement Class Members advised them that Plaintiff's Counsel would apply for a fee award of one-third of the Settlement Amount and provided detailed instructions as to how and when Settlement Class Members could object to the fee application, per the Court's Preliminary Approval Order. Evans Decl., Exs. A (Long Notice) and C (Postcard Notice). After an extensive notice program comprised of sending 22,381 Postcards and/or emails (Evans Decl., ¶¶6-9), to date there have been no objections to the fee request. Kim Decl., ¶29; Evans Decl., ¶14. "The Class's reaction to the requested fee award is . . . important evidence of the fairness and reasonableness of the fee request." *Delphi*, 248 F.R.D. at 504; *Fruit of the Loom*, 234 F.R.D. at 634; *Lowther*, 2012 WL 6676131, at *4 ("lack of objections is strong evidence of the acceptability of a fee request.").

In sum, the requested one-third attorneys' fees should be granted.

### III. PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Plaintiff's Counsel also requests reimbursement of $246,104.62 in expenses incurred while prosecuting the Action. "Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and settlement, including expenses incurred in connection with document production, consulting with experts and consultants, travel and other litigation-related expenses." *Fruit of the Loom*, 234 F.R.D. at 634-35; *see Se. Milk*, 2013 WL 2155387, at *7 ("Expense awards are customary" in common fund cases).

Plaintiff's Counsel incurred total litigation expenses of $246,104.62. Kim Decl. ¶¶34, 36, 39; Bramlett Fee Decl. ¶6; Fistel Fee Decl. ¶6. This amount is well-below the $330,000 maximum amount disclosed in the Notice. Evans Decl., Exs. A, C. No Settlement Class Member has objected to the reimbursement. Kim Decl. ¶29; Evans Decl. ¶14.

In determining which expenses are reasonable and compensable the question is whether such costs are of the variety typically billed by attorneys to paying clients in similar litigation. *See Fruit of the Loom*, 234 F.R.D. at 635. Most of the expenses Plaintiff's Counsel advanced were for professional services rendered by Plaintiff's experts and investigators, including a market efficiency and damages expert, as well as mediation fees, appeal fees and for an action to compel with a subpoena, as well as travel expenses for the various hearings and depositions over several years of litigation. The remaining expenses are attributable to document hosting fees, deposition and transcript fees, legal and factual research, service of process, issuing notice to class members, and other expenses incurred during the litigation. Kim Decl. ¶34; Bramlett Fee Decl. ¶6; Fistel Fee Decl. ¶6. These expenses were essential to Plaintiff's success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex

securities action. *Delphi*, 248 F.R.D. at 504-05 (approving reimbursement of $1.3 million in costs and expenses for "such items as accounting and damages expert and consultant fees, management and photocopying of documents, on-line research, messenger service, postage, express mail and overnight delivery, long distance and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this action."); *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which the paying, arms' length market reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."). As such, the Court should permit Plaintiff's Counsel reimbursement of these expenses. *Se. Milk*, 2013 WL 2155387, at *8 ("Although the declarations submitted by class counsel are not itemizations of all of the expenses incurred, but rather an aggregate listing of the expenses for each category, the Court finds the declarations submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case," approving reimbursement of nearly $800,000 in litigation expenses); *U.S. Xpress* (reimbursing $1,368,163.51 in expenses on a $13 million settlement) (Kim Decl., Ex. 7).

Accordingly, the Court should award Lead Counsel $246,104.62 from the common fund for unreimbursed litigation expenses.

## IV. THE COURT SHOULD GRANT AN AWARD TO PLAINTIFF

Plaintiff also requests an awards of $15,000 as compensation for his time and effort spent prosecuting the Action and securing the Settlement for the Settlement Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); *see also* H.R. Conf. Rep. No. 369, 104th

23

Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). This award is "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–9 (9th Cir. 2009); *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008) (awarding $20,000 to lead plaintiff, noting that "Courts across the country embrace incentive awards in light of the enormous benefits created by the class representatives.").

Courts routinely grant similar awards to representative plaintiffs in class actions for their service in litigating a class action and securing a benefit for class members. *See, e.g., U.S. Xpress* (awarding up to $15,000 for plaintiffs) (Kim Decl., Ex. 7); *Cosby*, 2022 WL 4129703, at *3 (awarding plaintiff awards of $25,000, $10,000 and $10,000); *Grae*, 2021 WL 5234966, at *1 (awarding $17,525 to lead plaintiff); *Garden City Employees' Ret. Sys. v. Psychiatric Sols., Inc.*, 2015 WL 13647397, at *1 (M.D. Tenn. Jan. 16, 2015) (awarding lead plaintiff over $20,000 for payment of its time spent and costs incurred in representing the class); *Hogan v. Cleveland Ave Rests. Inc.*, 2019 WL 6715976, at *6 (S.D. Ohio Dec. 10, 2019) ("Courts recognize and grant 'incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class," awarding incentive awards of $15,000 and $10,000 to named plaintiffs); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (awarding $25,410 to lead plaintiff).

As detailed in the Johnson Declaration, Lead Plaintiff devoted approximately 72 hours to the Action. Johnson Decl., ¶9. Plaintiff, as an attorney himself (*Id.*, ¶3), took an active role in the

litigation. Since 2019, Plaintiff regularly communicated with his counsel including discussing strategy and developments of the Action, reviewed significant filings, reviewed and responded to discovery requests, prepared for and sat for a deposition, and evaluated and approved the Settlement. *Id.*, ¶¶2,4. Plaintiff, worked closely with Lead Counsel throughout the pendency of this Action to achieve a beneficial result for the Settlement Class and believes the Settlement is good result for Astec investors. *Id.*, ¶5. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Marsh & McLennan*, 2009 WL 5178546, at *21; *Christine Asia Co.*, 2019 WL 5257534, at *20 (approving award to lead plaintiffs who reviewed pleadings and briefs, assisted with discovery responses, and evaluated and approved settlement).

The requested award of $15,000 amounts to approximately 0.1% of the Settlement Fund. The Court should grant the requested award to Plaintiff because it is reasonable to compensate his significant efforts over five years of litigation representing the Settlement Class.

## V.      CONCLUSION

For the foregoing reasons, Plaintiff's Counsel respectfully requests that the Court approve their motion for an award of attorneys' fees and expenses and an award for Plaintiff in connection with his representation of the Class.

Dated: August 1, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Phillip Kim*
Phillip Kim
Daniel Tyre-Karp
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827

25

Email: philkim@rosenlegal.com
dtyrekarp@rosenlegal.com
lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff*

**BRAMLETT LAW OFFICES**
Paul Kent Bramlett #7387
Robert Preston Bramlett #25895
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215-0734
Telephone: 615-248-2828
Facsimile: 866-816-4116
Email: pknashlaw@aol.com
Robert@BramlettLawOffices.com

*Liaison Counsel for Lead Plaintiff*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on August 1, 2024, I served true and correct copies of the foregoing by posting the document electronically to the ECF website of the United States District Court for the Eastern District of Tennessee, for receipt electronically by the parties listed on the Court's Service List.

*/s/ Phillip Kim*
Phillip Kim

27