UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| CITY OF TAYLOR GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>ASTEC INDUSTRIES, INC., BENJAMIN G. BROCK and DAVID C. SILVIOUS,<br><br>Defendants. | Case No. 1:19-cv-00024-CEA-CHS<br><br>CLASS ACTION<br><br>Judge Charles E. Atchley, Jr.<br><br>Magistrate Judge Christopher H. Steger |

**DECLARATION OF PHILLIP KIM IN SUPPORT OF LEAD PLAINTIFF'S MOTIONS FOR: (I) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (II) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO LEAD PLAINTIFF**

# TABLE OF EXHIBITS TO DECLARATION

| EXHIBIT | TITLE |
|---|---|
| 1 | Declaration of Sarah Evans Concerning: (A) Mailing of the Postcard Notice and Emailing of Long Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 2 | Declaration of David M. Murphy in Support of Final Approval of Class Action Settlement |
| 3 | Declaration of Lead Plaintiff Lynn Johnson |
| 4 | The Rosen Law Firm, P.A.'s Firm Résumé |
| 5 | Declaration of Paul Kent Bramlett in Support of Application for Attorneys' Fees and Expenses |
| 6 | Declaration of Michael I. Fistel, Jr. in Support of Application for Attorneys' Fees and Expenses |
| 7 | Order dated July 12, 2023 in the action *Stein, et al., v. U.S. Xpress Enterprises, Inc., et al.*, Case No. 1:19-cv-00098-TRM-CHS (E.D. Tenn.) (Dkt. No. 248) |
| 8 | Excerpts from Laarni T. Bulan and Laura E. Simmons, *Securities Class Action Settlements: 2023 Review and Analysis* (Cornerstone Research 2024) |
| 9 | Excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review,* (NERA Economic Consulting, 2024) |

1

Case 1:19-cv-00024-CEA-CHS   Document 125   Filed 08/01/24   Page 2 of 14
PageID #: 2452

I, Phillip Kim, declare the following, to the best of my knowledge, pursuant to 28 U.S.C. §1746.

1. I am a Partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Lead Counsel for Lead Plaintiff Lynn Johnson ("Lead Plaintiff" or "Plaintiff") in the above-captioned Action.[1] I am an attorney duly licensed to practice law in the State of New York and admitted *pro hac vice* in this Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto. I intend nothing in this Declaration to constitute a specific or general waiver of attorney-client privilege or any other applicable privilege or doctrine.

2. I submit this declaration, together with the attached exhibits, in support of Lead Plaintiff's Motions for: (I) Final Approval of Class Action Settlement and Plan of Allocation; and (II) an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Lead Plaintiff. As set forth in the Memorandum of Law in Support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Memorandum"), Lead Plaintiff seeks final approval of the $13,700,000 Settlement for the benefit of the Settlement Class,[2] as well

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement, filed on May 6, 2024 ("Stipulation") (Dkt. No. 114).

[2] The Settlement Class is defined all Persons who purchased publicly-traded Astec common stock during the Class Period between July 26, 2016, and October 22, 2018, both dates inclusive. Excluded from the Settlement Class are: (1) Defendants; (2) the present and former officers and directors of Astec at all relevant times; (3) members of immediate families and their legal representatives, heirs, successors or assigns of any excluded Persons; and (4) any entity in which Defendants or any excluded Persons have or had a controlling interest. Also excluded from the Settlement Class are those Persons who submit a valid and timely request for exclusion in accordance with the Preliminary Approval Order. ("Preliminary Approval Order") (Dkt. No. 118, ¶2).

as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.

3. As set forth in the Memorandum of Law in Support of the Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Award to Lead Plaintiff ("Fee Memorandum"), Plaintiff's Counsel seeks an award of attorneys' fees of one-third of the Settlement Fund ($4,566,666.67), reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $246,104.62, and an award to Plaintiff of $15,000 pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for the time he devoted to his representation of the Settlement Class.

4. The purpose of this Declaration is to set forth pertinent facts which do not otherwise appear in documents filed in this case or other public sources. The reasons why the Settlement, Plan of Allocation, fee and expense requests, and award to Lead Plaintiff should be approved are set out in the memoranda of law in support of the Motions.

5. Plaintiff's Counsel is comprised of: Lead Counsel, Rosen Law; Liaison Counsel, Bramlett Law Offices ("Bramlett Law"); and Johnson Fistel LLP ("Johnson Fistel"). Johnson Fistel served as local counsel for Plaintiff in an action filed in the United States District Court for the Southern District of Georgia to compel a non-party to comply with a subpoena.

**The Litigation, the Bases for the Settlement and the Plan of Allocation, and the Settlement Class Members' Reaction to the Settlement and Plan of Allocation**

6. For the Amended Complaint, Lead Counsel sought to uncover the reasons for Defendants' allegedly misleading statements about Astec's operations and potential future growth of it wood pellet plant business. To draft the Amended Complaint, Lead Counsel: (a) reviewed and analyzed (i) SEC filings, (ii) public reports, interviews, research reports prepared by securities and financial analysts, and news articles, and (iii) earnings call transcripts; (b) retained a private

3

investigator to interview witnesses; and (c) retained and consulted with an expert concerning damages.

7. After Defendants' Motion to Dismiss was fully briefed and pending, the Parties began discussing possible resolution of the Action, engaging Hunter R. Hughes, III of Hunter ADR as a mediator. Prior to the mediation, the Parties submitted written position statements. On March 19, 2020, the Parties participated in a mediation session with Mr. Hughes. This mediation session was unsuccessful.

8. On February 19, 2021, the Court granted Defendants' Motion to Dismiss and dismissed Lead Plaintiff's claims with prejudice. In response to the Court's ruling, on March 19, 2021, Lead Plaintiff filed a Motion to Alter or Amend the Judgment and for Leave to File the Proposed Amended Complaint ("Motion to Alter"). The Parties fully briefed this motion by April 10, 2021. On May 5, 2021, the Court denied the Motion to Alter saying no grounds justified setting aside the judgment.

9. On June 4, 2021, Lead Plaintiff appealed the orders granting the Motion to Dismiss and denying the Motion to Alter.

10. On July 19, 2021, the Parties engaged in an alternative dispute resolution process mandated by the Court of Appeals for the Sixth Circuit ("Court of Appeals") prior to completing briefing at the Court of Appeals. This session was unsuccessful so the Parties continued to brief the appeal. The Court of Appeals held oral argument on January 28, 2022.

11. On March 31, 2022, the Court of Appeals issued its decision, affirming in part and reversing in part this Court's decision on the Motion to Dismiss. The Court of Appeals reversed the ruling on the Motion to Dismiss as to Defendants and affirmed the dismissal as to David C.

Silvious. Lead Plaintiff did not appeal the dismissal of Defendant Malcolm Swanson. Lead Plaintiff's Exchange Act claims against Defendants were remanded for further proceedings.

12. On July 11, 2022, Defendants filed the Answer to Amended Complaint.

13. On August 8, 2022, the Parties filed a Report on their Federal Rule of Civil Procedure 26(f) conference and a proposed discovery plan. Subsequently, the Parties filed the Joint Motion for Stipulated Protective Order and the Joint Motion for Order Establishing the Protocol for the Production of Documents and Electronically Stored Information, filed on February 9, 2023, and granted March 27, 2023.

14. Beginning in July 2022, the Parties began issuing discovery requests. The Parties issued interrogatories and requests for production of documents. Additionally, Lead Plaintiff served subpoenas for documents on four non-parties. One of these non-parties, Fram Renewable Fuels, LLC ("Fram"), refused to comply with the subpoena. Accordingly, Plaintiff initiated the action *City of Taylor General Employees Retirement System v. Astec Industries, Inc., et al.,* No. 2:23-mc-00001-LGW-BWC in the United States District Court for the Southern District of Georgia ("Subpoena Action") to compel Fram's compliance with the subpoena.

15. After the Action was remanded and discovery was underway, the Parties retained David M. Murphy, Esq. of Phillips ADR to oversee another mediation session.

16. Following the submission of new written position statements, the Parties participated in an in-person, all-day mediation with Mr. Murphy, on November 10, 2023. This session ended without resolution. Over the following months, however, Mr. Murphy guided further negotiations. Eventually, Mr. Murphy proposed, and the Parties accepted, a settlement in principle to resolve the Action on March 20, 2024.

17. During the months of ongoing negotiations, on December 18, 2023, Lead Plaintiff filed the Motion for Class Certification, which was fully briefed on February 12, 2024.

18. Given my firm's experience in litigating securities class actions and with discussions with Lead Plaintiff at each settlement negotiation, Lead Plaintiff and Lead Counsel did not agree to a settlement until we thought it was a fair and reasonable result.

19. With Mr. Murphy's assistance, the Parties engaged in zealous, hard-fought negotiations, with counsel on both sides advocating forcefully for their clients. Defendants are represented by Alston & Bird, skilled and experienced securities practitioners with whom attorneys at Rosen Law are familiar. Defense Counsel was well-informed about the case.

20. After the settlement in principle, the Parties negotiated various Settlement and Notice documents, including the Stipulation and exhibits. Plaintiff submitted the Settlement documentation to the Court on May 6, 2024, including a memorandum of law explaining the reasons the Settlement warranted preliminary approval and the provision of Notice to potential Settlement Class Members of a hearing to approve it and enter a final judgment in the Action. In association with the Settlement, Lead Counsel engaged Strategic Claims Services as the Claims Administrator.

21. The $13,700,000 Settlement is a favorable result, representing approximately 8.4% of the Settlement Class's best-case, maximum recoverable damages estimate. Under Lead Plaintiff's best-case scenario – assuming Lead Plaintiff overcame all of the litigation obstacles and Defendants do not prevail on any of their arguments – Lead Plaintiff's expert estimated that maximum potentially recoverable class wide damages are approximately $163.7 million.

6

Case 1:19-cv-00024-CEA-CHS   Document 125   Filed 08/01/24   Page 7 of 14
PageID #: 2457

22. If the Court grants final approval of the Settlement, Lead Plaintiff and all Settlement Class Members who remain in the Settlement Class will forever release their claims that were alleged or could have been alleged against Defendants in this Action.

23. There was much risk if litigation continued as a larger verdict for Settlement Class Members would require that Lead Plaintiff: certify a class; defeat a motion for summary judgment; and succeed at trial in proving to a jury that 100% of Astec's price declines were caused by the revelation of fraud. Each of the pre-trial steps in the litigation posed significant risk that Lead Plaintiff's claims substantially reduced in size and scope. Jury trials are always uncertain as to which side's proof and expert testimony will be credited.

24. After more than five years of litigation Lead Plaintiff and Lead Counsel had become quite knowledgeable about the strengths of the claims as well as the real risks of continued litigation which could potentially result in no recovery for Astec investors. In particular, Lead Counsel:

    a. conducted extensive legal research and investigation of the factual allegations and claims of Lead Plaintiff and the putative class, which included: (a) hiring an investigator to interview witnesses including former Astec employees and other knowledgeable third-parties, (b) reviewing: the Company's SEC filings, press releases, and earnings calls, numerous analyst reports issued about Astec, and a variety of interviews and industry publications, and (c) retaining a damage expert;

    b. drafted and filed the Amended Complaint;

    c. conducted legal and factual research in opposing Defendants' Motion to Dismiss;

7

Case 1:19-cv-00024-CEA-CHS Document 125 Filed 08/01/24 Page 8 of 14
PageID #: 2458

  d. filed the Motion to Alter;

  e. successfully appealed the order dismissing the Action to the Court of Appeals;

  f. negotiated a discovery schedule and document production protocols;

  g. reviewed over 150,000 pages of documents;

  h. issued and responded to document requests and interrogatories;

  i. served subpoenas and successfully commenced the Subpoena Action;

  j. briefed a motion for class certification including deposing Defendants' market efficiency expert and defending Plaintiff's and Plaintiff's market efficiency expert's depositions;

  k. participated in three mediation sessions and extended negotiations after the final mediation;

  l. negotiated and finalized the Settlement;

  m. successfully moved for preliminary approval of the Settlement; and

  n. oversaw the Court-approved notice program

  25. Throughout all stages of the litigation, Lead Counsel gave periodic updates to Lead Plaintiff about the status of the Action and discussed each step of the case with Lead Plaintiff. As set forth in his declaration, by the time the Settlement was reached, Lead Plaintiff was in a position to evaluate the risks and benefits of continued litigation and authorize approval of the Settlement. Declaration of Lead Plaintiff Lynn Johnson ("Johnson Decl.") (Ex. 3), ¶5.

  26. Once a Settlement had been reached, Lead Counsel formulated the Plan of Allocation with the assistance of the Claims Administrator and a damages expert. The Plan of Allocation closely tracks Plaintiff's theory of the case and allocates funds on a *pro rata* basis to claimants based upon the timing of their purchases and sales. The Plan of Allocation does not

8

Case 1:19-cv-00024-CEA-CHS Document 125 Filed 08/01/24 Page 9 of 14
PageID #: 2459

compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the alleged partial or final revelation of the truth. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Settlement Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Lead Plaintiff).

27. In my view, based upon my experience prosecuting securities class actions, the Plan of Allocation provides a fair, reasonable, and rational method of allocating the Settlement Funds to Authorized Claimants.

28. As set forth in the Declaration of Sarah Evans (Ex. 1 hereto), in addition to the electronic and print publication of Summary Notice, individual Notice by mailed Postcard Notice and/or emailed links to the Long Notice and Claim Form was sent to 22,381 potential Settlement Class Members. Evans Decl., ¶¶6-8.

29. Objections to and requests for exclusion from the Settlement must be received by August 8, 2024. Neither Lead Counsel nor the Claims Administrator have received any objections to any aspect of the Settlement nor are there any objections on the Court's docket. Neither Lead Counsel nor the Claims Administrator have received any requests exclusion. *Id*. at ¶¶13-14.

30. The Long Notice, which the Court approved in the Preliminary Approval Order, describes the Plan of Allocation in full detail. Evans Decl., Ex. A at 4-6.

## Attorneys' Fees Request and Expenses

31. Plaintiff's Counsel requests a fee of one-third of the Settlement Amount, or $4,566,666.67, and reimbursement of out-of-pocket litigation expenses of $246,104.62.

32. The chart below is a summary of time expended by the attorneys at Rosen Law on the Action as of August 1, 2024, and the lodestar calculation based on their current billing rates.

9

The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm:

| ROSEN LAW'S HOURS AND LODESTAR | | | |
|---|---|---|---|
| **Name and Position*** | **Total Hours** | **Hourly Rate** | **Total Lodestar** |
| Laurence Rosen (P) | $1,250 | 2.5 | $3,125.00 |
| Jacob Goldberg (P) | $1,150 | 3.6 | $4,140.00 |
| Phillip Kim (P) | $1,150 | 273.2 | $314,180.00 |
| Daniel Tyre-Karp (C) | $850 | 1,559.9 | $1,325,915.00 |
| Brent LaPointe (C) | $850 | 28.3 | $24,055.00 |
| Erica L. Stone (C) | $850 | 72.1 | $61,285.00 |
| Mary Jane Fait (C) | $850 | 13.3 | $11,305.00 |
| Michael Cohen (A) | $800 | 27.6 | $22,080.00 |
| Ryan Hedrick (A) | $600 | 41.75 | $25,050.00 |
| Ian McDowell (A) | $500 | 4.1 | $2,050.00 |
| Henry Bloxenheim (A) | $450 | 7.3 | $3,285.00 |
| James Steinwinder (SA) | $450 | 256.0 | $115,200.00 |
| Ryan Heffner (SA) | $450 | 484.25 | $217,912.50 |
| Christopher Crase (SA) | $450 | 42.3 | $19,035.00 |
| Lindsay Hall (SA) | $450 | 169.25 | $76,162.50 |
| Zachary Stanco (Pl) | $300 | 5.5 | $1,650.00 |
| **Total:** | | **2,990.95** | **$2,226,430.00** |

*(P) – Partner; (C) – Counsel; (A) – Associate; (SA) – Staff Attorney; (Pl) – Paralegal

33. From early 2019 to August 1, 2024, my firm performed 2,990.95 professional work hours. The lodestar amount for my firm is $2,226,430.00. I am the attorney who oversaw or conducted the day-to-day activities in the Action and I reviewed these daily time records in connection with the preparation of this declaration. The purpose of this review was to confirm both the accuracy of the records as well as the necessity for, and reasonableness of, the time committed to the litigation. Based on this review, I believe that the time of Rosen Law attorneys and staff was reasonable and necessary for the effective and efficient prosecution and resolution of the Action.

34. Rosen Law expended a total of $244,914.34 in un-reimbursed expenses in connection with the prosecution of the Action broken down as follows:

10

Case 1:19-cv-00024-CEA-CHS   Document 125   Filed 08/01/24   Page 11 of 14
PageID #: 2461

| ROSEN LAW'S EXPENSES | |
|---|---|
| **Category** | **Amount** |
| Financial Expert Fees | $153,258.00 |
| Investigator Fees | $10,057.00 |
| Online Legal Research and Document Retrieval | $2,340.98 |
| Discovery Database Hosting Fees | $16,595.25 |
| Court Filing, Courtesy Copy, and Court Messenger Fees | $1,278.71 |
| *Pro Hac Vice* and Certificate of Good Standing Fees | $536.00 |
| Court Reporter, Deposition, Videographer, and Transcript Fees | $9,701.15 |
| Mediation Fees | $39,200.00 |
| FedEx and Postage Fees | $141.48 |
| Service of Process Fees | $661.40 |
| Press Releases and Notice to Class Members Fees | $2,450.83 |
| Travel, Transportation, Hotels, and Meals Fees** | $8,548.04 |
| Printing, Photocopying, and Scanning | $145.50 |
| **TOTAL EXPENSES** | **$244,914.34** |

**Includes anticipated expenses associated with attending the Settlement Fairness Hearing.

35. The expenses set forth above are reflected in Rosen Law's books and records. These books and records are prepared from expense vouchers, check records, and financial statements prepared in the normal course of business for my firm and are an accurate record of the expenses incurred in the prosecution of the Action.

36. As set forth herein and in the attached declarations of Paul Kent Bramlett and Michael I. Fistel, Jr. (Exs. 5, 6), Plaintiff's Counsel have incurred the following fees and expenses in prosecuting the Action on a fully contingent basis:

| **Firm** | **Hours** | **Lodestar** | **Expenses** |
|---|---|---|---|
| The Rosen Law Firm, P.A. | 2,990.95 | $2,226,430.00 | $244,914.34 |
| Bramlett Law Offices | 144.6 | $123,790.00 | $318.70 |
| Johnson Fistel, LLP | 72.0 | $40,992.50 | $871.58 |
| **Total:** | **3,207.55** | **$2,391,212.50** | **$246,104.62** |

11

37. Plaintiff's Counsel has worked diligently to achieve the Settlement, expending 3,207.55 hours in total for a combined lodestar value of $2,391,212.50. Ex. 5 at ¶5; Ex. 6 at ¶5. The $4,566,666.67 in attorneys' fees that Plaintiff's Counsel requests represent a 1.91 multiplier of Plaintiff's Counsel's lodestar.

38. Plaintiff's Counsel's work will not end with final approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing replies in support of its motions for final approval and for attorneys' fees, preparing for and appearing at the Settlement Fairness Hearing, overseeing the claims process, filing a motion for distribution of the Net Settlement Fund, and overseeing the distribution of the Net Settlement Fund to eligible Settlement Class Members. Plaintiff's Counsel will not seek additional compensation for these tasks.

39. Additionally, Plaintiff's Counsel have spent a total of $246,104.62 in unreimbursed expenses in connection with the prosecution of this Action. ¶34; Ex. 5 at ¶6; Ex. 6 at ¶6. Plaintiff's Counsel seeks reimbursement of those reasonable and necessary expenses incurred in prosecuting this Action. To date, Plaintiff's Counsel have received neither compensation for their efforts nor reimbursement of necessary out-of-pocket expenses on behalf of Plaintiff and the Settlement Class.

40. From the outset, Plaintiff's Counsel embarked on a difficult, expensive, and likely lengthy litigation with no guarantee of being compensated for the investment of time and resources on behalf of Plaintiff and the Settlement Class. In undertaking that responsibility, Plaintiff's Counsel dedicated sufficient resources to the Action, making funds available to compensate staff and to cover the expenses the Action required.

### The Requested Award to Lead Plaintiff is Justified

41. For over five years, Lead Plaintiff has led the Action on behalf of the Settlement Class, communicating with Lead Counsel regarding the litigation and the Settlement. Lead

12

Case 1:19-cv-00024-CEA-CHS  Document 125  Filed 08/01/24  Page 13 of 14
PageID #: 2463

Plaintiff is an attorney himself and spent approximately 72 hours on this litigation for the Settlement Class's benefit. *See* Johnson Decl., at ¶¶3, 9. As demonstrated in his declaration, Mr. Johnson: (a) communicated with Lead Counsel regarding the case, as well as strategy; (b) learned about the role of the lead plaintiff by discussing it with attorneys at Rosen Law; (c) reviewed information about Astec as well as the case and discussed his findings with Lead Counsel; (d) produced documents; (e) reviewed significant filings in the Action; (f) discussed developments and strategy of the Action with Lead Counsel including the filing of an appeal; (g) reviewed and responded to Defendants' discovery requests; (h) prepared for and sat for a deposition; (i) consulted with Lead Counsel regarding the settlement negotiations at each stage of negotiations; and (j) evaluated and approved the proposed Settlement. *Id*., at ¶4.

42. Mr. Johnson evaluated the Settlement and believes it is fair and reasonable, representing a very favorable result for Astec investors. *Id*., at ¶5.

43. For his considerable time and effort, Lead Plaintiff requests an award of $15,000. This award would represent approximately 0.1% of the Settlement Amount.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 1st day of August, 2024.

*/s/Phillip Kim*

13

Case 1:19-cv-00024-CEA-CHS   Document 125   Filed 08/01/24   Page 14 of 14
PageID #: 2464