`

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | |
|---|---|
| CITY OF TAYLOR GENERAL EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ASTEC INDUSTRIES, INC., BENJAMIN G. BROCK and DAVID C. SILVIOUS, <br><br> Defendants. | Case No. 1:19-cv-00024-CEA-CHS <br><br> CLASS ACTION <br><br> Judge Charles E. Atchley, Jr. <br><br> Magistrate Judge Christopher H. Steger |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR DISTRIBUTION OF**
**CLASS ACTION SETTLEMENT FUNDS**

Lead Plaintiff Lynn Johnson ("Lead Plaintiff"), through his counsel, respectfully submits this memorandum of law in support of his motion for entry of the [Proposed] Order Granting Distribution of Class Action Settlement Fund (the "Distribution Order") in the above-captioned action (the "Action"). The proposed plan for distributing the Net Settlement Fund (the "Distribution Plan") is set forth in the accompanying Declaration of Sarah Evans Concerning the Results of the Claims Administration Process (the "Evans Declaration"), submitted on behalf of the Court-appointed Claims Administrator, Strategic Claims Services ("SCS" or the "Claims Administrator").

If entered by the Court, the Distribution Order will, among other things: (1) approve SCS's recommendations accepting and rejecting Claims submitted in the Action; (2) direct the distribution of the Net Settlement Fund to Authorized Claimants; and (3) approve SCS's fees and expenses estimated to be incurred in connection with the distribution. [1]

## I. BACKGROUND

On May 16, 2024, this Court entered the Order Preliminarily Approving Class Action Settlement and Providing for Notice ("Preliminary Approval Order") (Dkt. No. 118). Thereafter, the Court-appointed Claims Administrator, SCS, provided Notice to the Settlement Class in the manner set forth in the Preliminary Approval Order, setting, *inter alia*, a claims submission deadline of August 8, 2024. (Dkt. Nos. 125-1 and 126-1).

In accordance with the Preliminary Approval Order, SCS mailed and emailed Postcard Notice and Long Notice to potential Settlement Class Members and their brokers and other nominees. Evans Declaration ¶3. SCS also created and maintained a toll-free helpline for

---

[1] Unless otherwise defined, capitalized terms herein have the same meanings attributed to them in the Stipulation of Settlement, dated May 6, 2024 (the "Stipulation") (Dkt. No. 114).

1

inquiries during the course of the administration as well as a settlement website and posted case-specific documents on it. *Id.*, ¶¶4-5. A total of 22,381 notices were mailed and/or emailed to potential Settlement Class Members or nominees. *Id.* ¶3.

Through June 25, 2025, 7,374 Claim Forms were submitted in connection with this Settlement. ¶6. SCS has advised Lead Counsel that it has completed all analyses and accounting procedures in connection with the Proofs of Claim submitted by those persons who responded to the Notice and has determined which of those persons are Authorized Claimants. *See* Evans Declaration ¶6 and Exhibits A-F thereto. The status and number of Authorized Claimants having been finally established, Lead Plaintiff, by and through Lead Counsel, requests that the Court authorize the distribution of the Net Settlement Fund to the Authorized Claimants.

## II. CLAIMS ADMINISTRATION

The manner by which SCS ascertained the validity of claims submitted, including outreach to Claimants to cure defects in their initial claim submission, is set forth below and in the Evans Declaration.

### A. Properly Documented Claims Submitted

SCS identified 3,753 properly documented claims. Evans Declaration ¶7(a). These valid claims represent total Recognized Losses of $253,481,274.33. *Id.* Of this total, 15 claims, representing losses of $1,777,388.67, were filed late. *Id.* at ¶7(a).

To enable as many Settlement Class Members as possible to participate, Lead Plaintiff respectfully requests that the Court accept these otherwise valid claims that SCS received after August 8, 2024, and on or before June 25, 2025, because none has caused a delay to the distribution

2

of the Net Settlement Fund to the Settlement Class. *Id*. at ¶7(a).[2] It is well settled that a district court has discretion to allow late claims to a settlement fund. *See Lemus v. H & R Block Enters., LLC*, 2013 WL 3831866, at *2 (N.D. Cal. July 23, 2013) (citing *In re Valdez*, 289 Fed. App'x 204, 206 (9th Cir. 2008)) ("We review the district court's disallowance of a late claim to a settlement fund for abuse of discretion."); *see also In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977) ("The scope of appellate review of the district court's disallowance of a late claim is narrow."). Multiple circuits hold that the Court maintains an inherent equitable power to "allow late-filed proofs of claim and late-cured proofs of claim." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195 (3d Cir. 2000); *accord Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985); *Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972); *cf. Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1993) (recognizing that "the district court has discretion to extend a class member's time to opt out" of a class settlement). The Manual for Complex Litigation also recommends that "[t]he court … allow adequate time for late claims before any refund or other disposition of settlement funds occurs and might consider ordering a reserve for late claims." MCL 4th §21.662 (2004) (footnote omitted). Courts regularly permit late-filed claims for "excusable neglect" or "good cause." *See Silber*, 18 F.3d at 1455 & n.4; *Gypsum*, 565 F.2d at 1128; *see also Valdez*, 289 Fed. App'x at 206 (noting that district court permitted late-filed claims by claimants with "plausible excuses for not filing timely"). The excusable neglect analysis involves equitable consideration, and the Court may consider factors including the danger of prejudice, the length of time delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith. *See Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381 (9th Cir. 1997) (citing *Pioneer*

---

[2] To provide relief to as many Settlement Class Members as possible without delaying distribution, June 25, 2025, was selected as Claims the cut-off date, and August 7, 2025, as the cut-off date for any responses to rejections received. Evans Declaration ¶6.

3

*Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); accord 4 Newberg and Rubenstein on Class Actions § 12:23 (6th ed.).

Here, 15 of the Proofs of Claim recommended for approval and distribution were postmarked or received after the Court-approved claims filing deadline, August 8, 2024, and on or before June 25, 2025. Evans Declaration ¶7(a). The total recognized loss amount for these untimely filed, but otherwise valid claims, is $1,777,388.67. *Id*. No Proof of Claim was rejected by SCS solely because it was received after the submission deadline and the Proofs of Claim have not caused significant delay in the processing or distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant or Defendant. *Id*. Indeed, when the equities are balanced, it would be unfair to prevent an otherwise valid Proof of Claim from recovering from the Net Settlement Fund solely because it was submitted after the cutoff date but while claims were still being processed. *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2009 WL 803382, at *6 (E.D.N.Y. March 25, 2009) ("Because there is no showing of delay or prejudice, the late filed claims should be included in the class for settlement disbursement"). Therefore, Lead Plaintiff respectfully requests that the Court approve the 15 untimely but otherwise valid claims listed in Exhibit B-2 of the Evans Declaration.

The Court should also order that no claims received after June 25, 2025, or any responses to deficiency and/or rejection notices received after August 7, 2025, be included in the distribution. SCS has not processed any claims or responses to rejections received after these dates due to extreme lateness and because their inclusion would have delayed the finalization of the administration. Evans Declaration ¶8. To facilitate the efficient and proportional distribution of the Net Settlement Fund, there must be a final cut-off after which no other claims may be accepted. *See In re TASER Int'l, Inc. Sec. Litig.*, 2009 WL 10707825, at *2 (D. Ariz. July 15, 2009) ("[I]n the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point

4

the matter must be terminated.'" (quoting *In re Gypsum Antitrust Cases*, 565 F.2d at 1127 (quoting Reports of the Conference for District Court Judges, 63 F.R.D. 231, 262 (1973)). Accordingly, it is respectfully requested that the distribution order provides that no claim form received after June 25, 2025, or adjusted after August 7, 2025, be eligible for payment.  Evans Declaration ¶8.

For the foregoing reasons, as well as those set forth in the Evans Declaration, Lead Plaintiff respectfully requests that the Court approve the 3,753 properly documented claims as listed in Exhibits B-1 and B-2 of the Evans Declaration.

### B.     Deficient and Ineligible Claims

SCS identified 41 Claimants whose submissions were inadequately documented. Evans Declaration ¶7(b). For each such inadequately documented claim it received, SCS sent the potential claimants inadequacy notices, advising them of the deficiency and affording them the opportunity to cure the deficiency. *Id.* Exhibit C to the Evans Dec (sample inadequacy notice). Of the 41 claims SCS initially identified as deficient, 2 potential claimants have successfully cured the deficiencies. SCS now includes those Settlement Class Members as Authorized Claimants. *Id.* Each of the remaining 39 deficient claimants either failed to respond to the deficiency notice SCS sent or responded with inadequate documentation. *Id.* SCS sent a rejection notice to these inadequate claimants, explaining the reason(s) for their rejection. *Id.* Exhibit D to the Evans Dec. (list of inadequate claims). To date, none of these 39 inadequate claimants has objected to or contested SCS's determination. *Id.*

In addition, SCS identified 3,582 claims that it has recommended for complete rejection. Evans Declaration ¶7(c); Exhibit E to the Evans Dec. (list of ineligible claims). Included in this category are: (i) claims with no Recognized Losses; (ii) claims with Astec Industries, Inc. ("Astec") publicly-traded common stock that were purchased outside of the Class Period; (iii) claims with Astec common stock that were not purchased or otherwise acquired, but were

received, granted by gift, inheritance, or operation of law; (iv) claims with shares sold short; (v) duplicate claims filed; and (vi) claims withdrawn by filing entity. Evans Declaration ¶7(c); Exhibit F  to the Evans Dec. (sample ineligibility notice). To date, none of these 3,582 ineligible claimants has objected to or contested SCS's determination. Evans Declaration ¶7(c).

## III.    DISTRIBUTION OF THE NET SETTLEMENT AMOUNT

Consistent with the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Authorized Claimants on a *pro rata* basis whose distribution payments calculate to $10.00 or more (the "Initial Distribution"). Evans Declaration ¶9(a).  Based on the substantial experience of Lead Counsel and SCS in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Lead Counsel and SCS propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE."  *Id.* ¶9(b).

If, after six (6) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a redistribution if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. During the redistribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of any unpaid fees and expenses incurred in administering the Settlement, including for such re-distribution, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the second distribution. *Id.* ¶9(c).

6

As this is not a claims-made settlement, at such time as it is determined that the redistribution of funds remaining in the Net Settlement Fund is not cost-effective, Lead Plaintiff respectfully requests that the remaining balance shall be contributed to a not-for-profit organization selected by The Rosen Law Firm, P.A. and approved by the Court. Similar distribution plans have been approved by courts in other securities class actions. *See e.g.*, *In re Patriot National, Inc. Sec. Litig,*, 2021 WL 1040462, at *2 (S.D.N.Y. Mar. 18, 2021); *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig*., 2010 WL 11595033 at *2 (S.D.N.Y. Dec. 23, 2010).

## IV. THE COURT SHOULD BAR CLAIMS AGAINST THE SETTLEMENT FUND AND THOSE ADMINISTERING THE SETTLEMENT

To allow for the full and final distribution of the Net Settlement Fund, it is necessary to bar the filing of any further claims against the Net Settlement Fund and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Upon finding that the distribution plan complies with both the terms of the parties' settlement and the Plan of Allocation, courts routinely issue such bar orders in securities class actions. *See, e.g.*, *In re Miva, Inc. Secs. Litig.*, 2015 WL 12834962, at *2 (M.D. Fla. Sept. 23, 2015); *In re Patriot National*, 2021 WL 1040462, at *2; *Merrill Lynch & Co.,* 2010 WL 11595033 at *2; *In re Friedman's, Inc. Sec. Litig.*, 2009 WL 10671836, at *2 (N.D. Ga. July 23, 2009).

Accordingly, Lead Plaintiff respectfully requests that the Court: (1) bar claims received after June 25, 2025, and any responses to deficiency and/or rejection notices received after August 7, 2025; (2) release and discharge all persons involved in the review, verification, calculation,

tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and; (3) bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to the terms of the Distribution Order.

## V.    STORAGE OF INFORMATION

Lead Plaintiff respectfully requests the Court order that: (a) in no less than one (1) year after all distributions of the Net Settlement Fund to the eligible Claimants, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (b) in no less than three (3) years after all distributions of the Net Settlement Fund to the eligible Claimants the Claims Administrator my destroy all electronic copies of the Claims and all supporting documentation. Evans Declaration ¶9(e); s*ee also Miva*, 2015 WL 12834962, at *3.

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests the Court enter the [Proposed] Order for Distribution of Class Action Settlement Funds, submitted herewith, so that Authorized Claimants who submitted valid claims may receive their *pro rata* share of the Net Settlement Fund.


Dated:  October 14, 2025                    Respectfully submitted,

                                                                    **THE ROSEN LAW FIRM, P.A.**

                                                                    By: */s/ Phillip Kim*

8

Phillip Kim
Daniel Tyre-Karp
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: philkim@rosenlegal.com
        dtyrekarp@rosenlegal.com
        lrosen@rosenlegal.com

*Lead Counsel for Lead Plaintiff and the Class*

**BRAMLETT LAW OFFICES**
Paul Kent Bramlett #7387
Robert Preston Bramlett #25895
40 Burton Hills Blvd., Suite 200
P.O. Box 150734
Nashville, TN 37215-0734
Telephone: 615-248-2828
Facsimile: 866-816-4116
Email: pknashlaw@aol.com
        robert@bramlettlawoffices.com

*Liaison Counsel for Lead Plaintiff and the Class*

9

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on October 14, 2025, I served true and correct copies of the foregoing by posting the document electronically to the ECF website of the United States District Court for the Eastern District of Tennessee, for receipt electronically by the parties listed on the Court's Service List.

*/s/ Phillip Kim*
Phillip Kim

10